**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

ANGIODYNAMICS, INC.,          )
                                     )
                 Plaintiff,     )
                                     )     Civ. Action No._____
            v.               )
                                     )
DIOMED HOLDINGS, INC      )
                                     )     JURY TRIAL DEMANDED
                                     )
               Defendant.    )

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, AngioDynamics, Inc. ("AngioDynamics"), by and through its attorneys, Reed Smith LLP, hereby states the following for its Complaint for Declaratory Judgment against Diomed Holdings, Inc. ("Diomed"):

**<u>Nature of the Action</u>**

1.    This Complaint is an action arising under the Declaratory Judgment Act 28 U.S.C. § 2201, *et seq*. and the patent laws of the United States, 35 U.S.C. § 1, *et seq*. for a judgment declaring that the claims of United States Patent No. 6,981,971, entitled "Medical Laser Device" ("the '971 Patent") are invalid, unenforceable and not infringed by AngioDynamics.  A true and correct copy of the '971 Patent is attached hereto as Exhibit A.

**<u>The Parties</u>**

2.    AngioDynamics is a publicly traded corporation organized and existing under the laws of the State of Delaware with a principal place of business in Queensbury, New York.

3.    Diomed is a publicly traded corporation organized and existing under the laws of the State of Delaware with a principal place of business in Andover, Massachusetts.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ §§ 1331, 1338(a), 2201 and 2202, and 35 U.S.C. §271.

5.      This Court has personal jurisdiction over the parties due to their being Delaware corporations.

6.      Venue is proper in this judicial jurisdiction pursuant to 28 U.S.C. § 1391(b) and (c).

### Acts Giving Rise to the Complaint

7.      Diomed manufactures and distributes medical devices for use in medical procedures, including devices for endovascular treatment of varicose veins using application of laser energy.

8.      AngioDynamics competes with Diomed in the manufacture and sale of endovascular laser treatment systems for varicose veins.

9.      On January 6, 2004 Diomed filed an action in the United States District Court For The District of Massachusetts against AngioDynamics alleging infringement of patent Number 6,398,777 ("the '777 patent"), which relates to endovascular laser treatment systems for varicose veins, which is the area of competition between the parties.

10.     The Massachusetts action is currently being vigorously litigated by the parties.

11.     On June 14, 2002 Diomed caused two related patent applications to be filed at the United States Patent and Trademark Office, which were granted application serial numbers 10/172,633, entitled "Medical Laser Device" ("the '633 application"), and 10/172,636, entitled "Method of Endovenous Laser Treatment", ("the '636 application").

12.     The '633 application was allowed on July 26, 2005 and was issued as the '971 Patent on January 3, 2006.

13.     The '971 patent contains only product claims directed to certain product features of a system for delivering laser energy to the walls of a vein.

14.     The features to which the '971 patent relate includes markings along an introducer sheath.

15.     The '636 application was first allowed on June 9, 2005, and then after further prosecution at the United States Patent and Trademark Office, was again allowed on September 19, 2005.

16.     To date the '636 application has not been issued as a granted patent[1].

17.     Upon information and belief, Diomed is the sole and exclusive owner of the '971 patent through assignment.

18.     Upon information and belief, Diomed is the sole and exclusive owner of the '636 application through assignment.

19.     Upon information and belief, on or about July 28,2005, Diomed held one of its regular quarterly telephonic conferences to announce and discuss its financial results for the second quarter of 2005.

20.     Upon information and belief, numerous members of the financial community, including stock analysts, dialed in to the call.

---

[1] Plaintiff expects that upon the issuance of the '636 application it may move this court to permit amendment of this Complaint to add a second Count, substantially similar to Count I below, but directed to the patent that will issue from the '636 application.

21.     Subsequent to the call, Diomed posted a recording of the conference on its website (www.diomedinc.com).

22.     During the conference, Mr. James Wylie, President and Chief Executive Officer of Diomed, made the following statement:

> "It is important to note that on July 26, Diomed announced that it had received a Notice of Allowance from the U.S. Patent and Trademark Office for a patent on Diomed's proprietary technique of using a marked introducer sheath to control the rate of withdrawal of an optical fiber during an intravenous laser procedure. Diomed introduced a marked introducing sheath especially configured for use in the proprietary methodology in the fourth quarter of 2003. Currently, all EVLT procedure kits sold by Diomed contain a marked introducer sheath for use in the method covered by the allowed patent. Notably, both AngioDynamics and Vascular Solutions are offering marked introducer sheaths particularly for use in a technique embraced by the now allowed Diomed patent. Further, it is important to point out that this case is not connected to the U.S. Patent 6,398,777 infringement lawsuits for which I will now provide an update."

23.     A copy of the announcement of July 26, 2005 referred to by Mr. Wylie is attached hereto as Exhibit B.

24.     The attached announcement states that "The new patent, *which includes both product and method claims*, covers *use* of an introducer sheath that has graduated markings to aid a physician in moving the laser fiber through the vein at a desired rate during the procedure." (Emphasis added.)

25.     Issued patent '971 includes only product claims.

26.     Pending, but allowed, '636 application includes only method claims.

27.     It is reasonable to understand that the allowed patent, referred to by Mr. Wylie in his statement and referred to in the announcement of July 26, 2005, relates to both the product claims in the '971 patent and the method claims in the '636 application.

28.    The issued claims of the '971 patent is so related to the allowed claims of the '636 application that it is reasonable to view both the issued claims of the '971 patent and the allowed claims of the '636 application as the product and method counterparts, respectively, of the same system.

29.    It is reasonable for Diomed to have expected that the recording containing Mr. Wylie's statement would either be heard by AngioDynamics, or that AngioDynamics would otherwise become informed of the statement.

30.    AngioDynamics has listened to the recording and heard Mr. Wylie's statement.

31.    Given the current litigation between the parties, the July 26 announcement and Mr. Wylie's public statement on July 28, 2005 identifying AngioDynamics as an infringer of the allowed patent has given AngioDynamics a reasonable apprehension that Diomed would sue AngioDynamics for patent infringement under the '971 patent.

32.    Given the current litigation between the parties, the July 26 announcement, Mr. Wylie's public statement on July 28, 2005 identifying AngioDynamics as an infringer of the allowed patent and given that the '971 patent and allowed '636 application are so related has given AngioDynamics a reasonable apprehension that Diomed would sue AngioDynamics for patent infringement under a patent that will eventually issue on the '636 application.

33.    Accordingly, the aforesaid actions and statement by Diomed have given rise to an actual and justiciable controversy within the jurisdiction of this Court concerning the

non-infringement, invalidity and unenforceability of the '971 Patent[2] pursuant to 28 U.S.C. § 2201 and 2202.

34.    A judicial declaration is necessary and appropriate in order to resolve this controversy.

**COUNT I**

35.    AngioDynamics incorporates herein by reference Paragraphs 1 through 34 of this Complaint as if set forth in full.

36.    Upon information and belief, by reason of the proceedings in the United States Patent and Trademark Office ("USPTO") during the prosecution of the '971 Patent, as shown by the contents of the prosecution history of this patent application, and by virtue of the admissions, representations and concessions made by or on behalf of the named inventors and their representatives, Diomed is estopped from asserting any construction of the claims of the '971 Patent that would cause any valid or enforceable claim of the patent to cover or include, directly or indirectly, any product, process or system made, used, sold or offered for sale by AngioDynamics.

37.    Upon information and belief, each claim of the '971 Patent is invalid and of no legal effect against AngioDynamics because of its failure to meet the conditions of patentability set forth in the Patent Statute, including, but not limited to failure to comply with the requirements of Title 35 of the United States Code 35 U.S.C. §§ 101, 102, 103, and/or 112.

38.    Upon information and belief, the '971 Patent is void and unenforceable against AngioDynamics due to the acts and/or omissions of Diomed and/or its predecessors in interest, including the named inventors of the '971 Patent and/or their representatives.

_____

[2] A similar justiciable controversy shall arise upon the issuance of a patent on the '636 application.

## PRAYER FOR RELIEF.

WHEREFORE, AngioDynamics, Inc., prays for the entry of judgment:

a.      Declaring that each claim of the United States Patent No. 6,981,971 is invalid and/or unenforceable;

b.      Declaring that AngioDynamics, Inc. has not and does not infringe any valid and enforceable claims of United States Patent 6,981,971;

c.      Declaring that United States Patent No. 6,981,971 is unenforceable due to inequitable conduct;

d.      Declaring that this case is exceptional pursuant to 35 U.S.C. § 285 and awarding AngioDynamics, Inc. its reasonable attorneys' fees, expenses and costs incurred in this action; and

e.      Awarding to AngioDynamics, Inc. such other and further relief as may be just and proper.

Date: <u>January 3, 2006</u>

By: _____
John G. Harris, Esq. (No. 4017)
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Tel. (302) 778-7500
Fax (302) 778-7557

OF COUNSEL:
Arthur M. Dresner
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
Fax: (212) 521-5450

# EXHIBIT A

US006981971B2

(12) **United States Patent**
     Caldera et al.

(10) Patent No.: **US 6,981,971 B2**
(45) Date of Patent: **\*Jan. 3, 2006**

(54) **MEDICAL LASER DEVICE**

(75) Inventors: **Tiziano Caldera**, Cambs (GB); **Robert Min**, New York, NY (US); **Peter Klein**, West Newbury, MA (US)

(73) Assignee: **Diomed Inc.**, Andover, MA (US)

(\*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1 day.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/172,633**

(22) Filed: **Jun. 14, 2002**

(65) **Prior Publication Data**

US 2003/0078568 A1 Apr. 24, 2003

**Related U.S. Application Data**

(60) Provisional application No. 60/369,256, filed on Mar. 27, 2002.

(30) **Foreign Application Priority Data**

Jun. 15, 2001   (GB) ............................................. 0114687

(51) **Int. Cl.**
     *A61B 18/18* (2006.01)

(52) **U.S. Cl.** ............................... 606/15; 606/7; 607/88; 604/21

(58) **Field of Classification Search** ................. 606/3–6, 606/13–17, 78; 607/88, 89; 604/19–21
     See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,444,185 A | | 4/1984 | Shugar |
| 4,616,656 A | | 10/1986 | Nicholson et al. |
| 5,239,982 A | * | 8/1993 | Trauthen .................... 600/117 |
| 5,445,608 A | * | 8/1995 | Chen et al. .................. 604/20 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0266858 | 5/1988 |
| EP | 0891157 B1 | 1/1999 |
| FR | 2793565 | 11/2000 |
| WO | WO00/19919 | 4/2000 |

OTHER PUBLICATIONS

Endovenous Laser: A New Minimally Invasive Method of Treatment for Varicose Veins—Preliminary Observations Using an 810 nm Diode Laser, Navarro, MD, et al., Dermatol Surg 27:2, Feb. 2001.

This Document (Declaration of Todd R. Trumpold) Contains Confidential Information And Is Being Submitted Under Seal Pursuant To A Protective Order Entered By The Court On Jan. 26, 2005. The Parties Designating The Information As Confidential Are Diomed, Inc., Diomed Holdings Inc. And Diomed Limited.

This Document (Defendant's Local Rule 56.1 Statement) Contains Confidential Information And Is Being Submitted Under Seal Pursuant To A Protective Order Entered By The Court on Jan. 26, 2005. The Parties Designating The Information As Confidential Are Diomed, Inc., Diomed Holdings Inc. and Diomed Limited.

Defendants' Memorandum Of Law In Support Of Motion For Summary Judgment.

Declaration of Howard Root In Support of Defendants' Motion For Summary Judgment.

(Continued)

*Primary Examiner*—A. Farah

(74) *Attorney, Agent, or Firm*—Wolf, Greenfield & Sacks, P.C.

(57)          **ABSTRACT**

A medical laser device is disclosed comprising an optical fiber **12** having markings **45, 46** which enable the optical fiber **12** to be accurately positioned relative to an introducer sheath **40**. The introducer sheath **40** may also have graduated markings to enable the sheath **40** to be withdrawn at a controlled rate. A pulsed or continuous laser source may be provided.

**20 Claims, 4 Drawing Sheets**



US 6,981,971 B2

Page 2

## U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,456,680 | A | * | 10/1995 | Taylor et al. | 606/2 |
| 5,469,524 | A | * | 11/1995 | Esch et al. | 385/118 |
| 5,603,710 | A | * | 2/1997 | Easley et al. | 606/15 |
| 5,651,785 | A | * | 7/1997 | Abela et al. | 606/15 |
| 5,688,246 | A | | 11/1997 | Waitz et al. | |
| 5,766,164 | A | * | 6/1998 | Mueller et al. | 606/15 |
| 5,796,905 | A | * | 8/1998 | Hoffart et al. | 385/128 |
| 5,855,577 | A | * | 1/1999 | Murphy-Chutorian et al. | 606/7 |
| 5,993,072 | A | * | 11/1999 | de Juan et al. | 385/78 |
| RE36,473 | E | | 12/1999 | Esch et al. | 385/118 |
| 6,095,149 | A | | 8/2000 | Sharkey et al. | 128/898 |
| 6,143,019 | A | | 11/2000 | Motamedi et al. | 607/89 |
| 6,283,958 | B1 | * | 9/2001 | Vogl et al. | 606/15 |
| 6,572,608 | B1 | * | 6/2003 | Lee et al. | 606/15 |
| 6,607,525 | B2 | * | 8/2003 | Franco | 606/14 |
| 2004/0116912 | A1 | | 6/2004 | Appling | |

## OTHER PUBLICATIONS

Declaration of Tony Jakubowski.
The Closure® Procedure Physician Self Study Course.
Min et al., "Endovenous Laser Treatment of Saphenous Vein Reflux: Long–Term Results," Aug. 2003, JVIR.
Deposition of Anthony Jakubowski, May 25, 2005.
Endovenous Laser: A New Minimally Invasive Method of Treatment for Varicose Veins –Preliminary Observations Using an 810 nm Diode Laser, Navarro, MD, et al. Dermatol Surg 27:2, Feb. 2001.

* cited by examiner



Fig. 1



Fig. 2



**Fig. 3(a)**



**Fig. 3(b)**



Fig. 4

US 6,981,971 B2

**1**

# MEDICAL LASER DEVICE

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims priority from U.S. Provisional Patent Application Ser. No. 60/369,256, filed Mar. 27, 2002 and from UK Patent Application Serial No. GB-0114687, filed Jun. 15, 2001, the entire contents of each application being hereby incorporated herein by reference.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a medical laser device.

2. Description of the Related Art

In certain invasive medical procedures thermal or other energy is administered to a patient with beneficial effects. For example, energy can be used to detect a tumour or a region of the body, or to destroy or denature diseased or malfunctioning body tissue. One example of this type of treatment is disclosed in U.S. Pat. No. 6,095,149 which describes the treatment of invertebral disc abnormalities with thermal energy. Other types of medical treatment utilise laser energy, for example endovenous laser treatment (EVLT), wherein laser energy is delivered to the inner wall of a vein.

Laser energy may be delivered to an area of the body by means of an optical fiber such as a bare-tipped optical fiber. However, the tips of such optical fibers could cause trauma to soft tissues. Therefore, for some invasive applications it is not desirable to insert the optical fiber directly into the body tissue. Instead, the optical fiber is typically inserted into a flexible introducer sheath which acts to guide and protect the optical fiber (and also the surrounding tissue) whilst it is being inserted into the region of the body to be treated. An introducer sheath is frequently inserted into body tissue over a guide wire and then the optical fiber can be inserted once the introducer sheath is in place in the body.

In use the introducer sheath is often positioned so that the optical fiber protrudes a few millimeters or centimeters from the end of the introducer sheath so as to deliver laser energy efficiently from the tip of the fiber to the surrounding tissue.

It is known to detect the protrusion of the optical fiber from the introducer sheath using ultrasound and/or direct visualization of a red aiming laser beam from the optical fiber through the skin. However, these methods are unsatisfactory for a number of reasons. The use of ultrasound requires additional equipment which is expensive and complicates the procedure. Visualization of the laser beam is imprecise and at best only a guide and then only in regions of the body which are sufficiently close to the surface of the skin. Therefore, conventional techniques are not suitable for use in a wide range of applications.

Furthermore, as a result of it being difficult for an operator or surgeon to determine when the distal end of the optical fiber is approaching the distal end of the introducer sheath, damage can readily occur to the soft tissues if the optical fiber is initially accidentally extended beyond the introducer sheath. As a result an operator must insert the optical fiber very slowly into the introducer sheath and must proceed cautiously at all times which makes the procedure slow.

It is therefore desired to provide an improved medical laser device.

## SUMMARY OF THE INVENTION

According to a first aspect of the present invention, there is provided a medical laser device comprising:

a laser source for emitting laser radiation;

**2**

an introducer sheath having a proximal end and a distal end; and

an optical fiber having a proximal end and a distal end, the optical fiber in communication with the laser source for transmitting the laser radiation and for emitting the laser radiation from a distal end thereof;

wherein the optical fiber comprises a first marker for positioning the optical fiber so that the distal end of the optical fiber is substantially in alignment with the distal end of the introducer sheath and wherein the optical fiber comprises a second marker for indicating how far the introducer sheath should be withdrawn relative to the optical fiber so that the optical fiber projects a predetermined distance beyond the introducer sheath.

In use, laser radiation is delivered to the inner wall of a vein where it is absorbed, thermally re-structuring the vein.

The first and second markings allow an operator or surgeon to know when the distal end of the optical fiber is aligned with the end of the introducer sheath and when the distal end of the optical fiber extends beyond the introducer sheath by a predetermined amount. This enables the operator or surgeon to quickly insert the optical fiber into the introducer sheath and enables the optical fiber to be positioned in the optimum position relative to the introducer sheath without risk of damage to either the optical fiber or surrounding tissue.

The markings may comprise at least one band which extends around at least a portion of the circumference of the optical fiber.

Preferably, the two markings are separated by a distance of either about 4 cm, about −3.5 cm, about 3 cm, about 2.5 cm or about 2 cm so that in use the optical fiber will extend preferably between 2–4 cm from the end of the introducer sheath. A separation of approximately 3 cm is particularly preferred.

The minimum preferred separation (2 cm) is so as to prevent thermal damage to the introducer sheath during treatment. The maximum preferred separation (4 cm) is so as to minimize the length of the optical fiber remaining within the body once the introducer sheath has been removed from the patient's body.

The two markings or markers may differ in shape and color to aid the operator or surgeon using the device. This can make it easier to refer to the markings, for example, when teaching or explaining how to use the device to another operator or surgeon.

The markings may be engraved or embossed an the optical fiber. This enables the operator to have tactile feedback as to the position of the markings, without having to look at the optical fiber. This allows the operator to concentrate on other equipment. Furthermore, if the markings are embossed then there may be sufficient co-operation between the marking and a friction seal of the introducer sheath so as to secure them temporarily together when the introducer sheath is retracted.

The laser radiation may be delivered either in a pulsed, continuous or quasi-continuous manner.

According to one embodiment, the introducer sheath may comprise graduated markings for assisting a user to withdraw the introducer sheath at a desired rate. This rate may be defined as a distance per unit time or a distance per laser pulse. A visual and/or audible indicator may be provided to give an indication of how fast the introducer sheath should be withdrawn.

The optical fiber is preferably secured to the introducer sheath, which is preferably flexible, at a position wherein the

US 6,981,971 B2

3

first marking is substantially in alignment with the proximal end of the introducer sheath. The optical fiber and the introducer sheath may then be positioned at a desired location using ultrasound. The introducer sheath can then be released from the optical fiber and the introducer sheath withdrawn relative to the fiber optic device until the second marking is substantially in alignment with the proximal end of the introducer sheath, enabling the distal end of the optical fiber to protrude a known distance from the distal end of the introducer sheath in order to administer laser energy. The optical fiber may then be secured to the introducer sheath substantially at the position where the second marking is substantially in alignment with the proximal end of the introducer sheath, and energy from a laser energy source may then be provided to the distal end of the optical fiber. The optical fiber and the introducer sheath may be withdrawn whilst laser energy is emitted from the distal end of the optical fiber. This is an advantageous way of administering laser energy invasively.

According to a second aspect of the present invention, there is provided a medical laser device comprising:

a continuous laser source for emitting laser radiation;

an introducer sheath having a proximal end and a distal end, the introducer 5 sheath having graduations; and

an optical fiber having a proximal end and a distal end, the optical fiber in communication with the laser source for transmitting the laser radiation and for emitting the laser radiation from a distal end thereof;

wherein the optical fiber comprises a first marker for positioning the optical fiber so that the distal end of the optical fiber is substantially in alignment with the distal end of the introducer sheath and wherein the optical fiber comprises a second marker for indicating how far the introducer sheath should be withdrawn relative to the optical fiber so that the optical fiber projects a predetermined distance beyond the introducer sheath.

According to a third aspect of the present invention, there is provided a medical laser device comprising:

a pulsed laser source for emitting laser radiation;

an introducer sheath having a proximal end and a distal end; and

an optical fiber having a proximal end and a distal end, the optical fiber in communication with the laser source for transmitting the laser radiation and for emitting the laser radiation from a distal end thereof;

wherein the optical fiber comprises a first marker for positioning the optical fiber so that the distal end of the optical fiber is substantially in alignment with the distal end of the introducer sheath and wherein the optical fiber comprises a second marker for indicating how far the introducer sheath should be withdrawn relative to the optical fiber so that the optical fiber projects a predetermined distance beyond the introducer sheath.

According to a fourth aspect of the present invention, there is provided a medical laser device comprising:

a laser source for emitting laser radiation;

a flexible introducer sheath having a proximal end and a distal end, wherein the proximal and of the introducer sheath is provided with a friction seal for forming a seal with the optical fiber; and

an optical fiber having a proximal end and a distal end, the optical fiber in communication with the laser source for transmitting the laser radiation and for emitting the laser radiation from a distal end thereof;

wherein the optical fiber comprises a first marker for positioning the optical fiber so that the distal end of the

4

optical fiber is substantially in alignment with the distal end of the introducer sheath and wherein the optical fiber comprises a second marker for indicating how far the introducer sheath should be withdrawn relative to the optical fiber so that the optical fiber projects a predetermined distance beyond the introducer sheath.

BRIEF DESCRIPTION OF THE DRAWINGS

Various embodiments of the present invention will now be described, by way of example only, and with reference to the accompanying drawings in which:

FIG. 1 shows a medical laser device according to the preferred embodiment;

FIG. 2 shows in greater detail the distal end section of the optical fiber shown FIG. 1;

FIG. 3(a) shows an optical fiber having been initially inserted into an introducer sheath and FIG. 3(b) shows the introducer sheath having been subsequently withdrawn relative to the optical fiber; and

FIG. 4 shows the optical fiber and introducer sheath used for endovenous laser treatment.

DETAILED DESCRIPTION OF THE DRAWINGS

With reference to FIGS. 1 and 2, an optical fiber having a distal end 13 and a proximal end 15 is shown which is coupled to a laser energy source 14 via a connector 22. According to one embodiment the optical fiber 12 has a length of 3.5 ±0.1 m and is preferably provided with a protective buffer layer 18. One or more markings or other form of indicator 45, 46 are arranged on the optical fiber 12 at a predetermined distance from distal end 13. Preferably, the markings 45, 46 are provided around substantially the whole circumference of the protective buffer layer 18 of the optical fiber 12. According to the preferred embodiment, the laser energy source 14 is an 810 nm diode laser manufactured by DIOMED, Ltd., United Kingdom. The connector 22 may be any suitable connector/fiber terminator such as a standard sub-miniature A (SMA) connector (as shown) or other proprietary connector.

The distal end 13 of the optical fiber 12 is shown in more detail in FIG. 2. The optical fiber 12 is preferably capable of withstanding enviromental temperatures of 20 –10° C. to 120° C. and comprises a glass core 32 with a fiber tip 34, a cladding layer 30 surrounding the core 32, and an outer protective buffer layer 18. The core 32 has a higher refractive index than the cladding 30 and thus laser energy is guided along the core 32 by total internal reflection. According to the preferred embodiment the optical fiber 12 has a 600 $\mu$m diameter glass core, for example Type FT600 URT, Spectram 25 (SLT), No. BF05900 available from 3M, USA. The buffer layer 18 is preferably partially stripped back a short distance (e.g., approx. 1 cm) from the fiber tip 34 so that the diameter of the optical fiber 12 in the region around the fiber tip 34 is approximately 0.6 mm. For efficient operation of the device the surface quality of the fiber tip 34 is high. The fiber tip 34 is preferably substantially free from defects within a central aperature of 88% of the diameter of the fiber optic core 32 with all sharp edges having been 5 previously removed from the fiber tip 34. Preferably, other defects (if present) do not scatter light outside a 0.37 numerical aperature (NA), and do not cause localized heating when illuminated with 60 W of laser light at 810 nm evenly distributed over a 0.37 NA. The optical fiber 12 is preferably capable of withstanding a force of 2 kg, applied between the connector/terminator (SMA) 22, and the distal end 13, without damage.

US 6,981,971 B2

5

The relationship between the position of the markings or indicators 45, 46 and an introducer sheath 40 or the like will now be described in more detail with reference to FIGS. 3(a) and (b).

FIG. 3(a) shows the optical fiber 12 having been initially inserted within an introducer sheath 40 so that the distal end 13 of the optical fiber 12 is substantially flush or otherwise aligned with the distal end 60 of the introducer sheath 40. Marking 45 is shown substantially aligned with the proximal end 50 of the introducer sheath 40. The introducer sheath 40 is then withdrawn relative to the optical fiber 12 until marking 45 is substantially aligned with the proximal end 50 of the introducer sheath 40. As shown in FIG. 3(b), the distal end 13 of the optical fiber 12 then protrudes beyond the distal end 60 of the introducer sheath 40 by a predetermined amount, preferably approx. 3 cm.

The introducer sheath 40 comprises a hollow tube 70 with a friction seal 42 at the proximal end 50 to prevent blood loss during insertion into blood vessels. The placement of the introducer sheath 40 through skin and tissue provides access into an area to be treated, and acts as a guide for introducing instrumentation and other apparatus. The introducer sheath 40 is preferably a five French introducer sheath, such as RCF-50-35-45-J-RB available from Cook, Inc., Bloomington, Ind.

Markings or indicators 45, 46 are preferably optically visual markings which are preferably provided around the whole circumference of the protective buffer layer 18 of the optical fiber 12, and are provided at predetermined distances from the distal end 13 of the optical fiber 12. The predetermined distances are arranged to correspond to predetermined positions of the distal end 13 of the optical fiber 12 relative to the distal end 60 of the introducer 40. The predetermined positions represent both alignment of the respective distal ends 13, 60 as shown in FIG. 3(a) and also protrusion of the distal end 13 of the optical fiber 12 beyond the distal end 60 of the introducer 40 as shown in FIG. 3(b).

In one embodiment the markings or indicators 45, 46 may be engraved or embossed onto the protective buffer layer 18 of the optical fiber 12 surface. Advantageously, this enables an operator to have tactile feedback as to the position of the markings 45, 46 and thus have an indication as to the position of the optical fiber 12 within the introducer sheath 40, without necessarily having a look at the optical fiber 12.

The markings 45, 46 preferably comprise one or more bands provided at a number of predetermined locations and may preferably be provided by heat shrinking material onto the optical fiber 12. The bands are preferably 1 mm wide with ±0.5 mm tolerance. The bands are preferably colored in order to contrast with the color of the buffer layer 18. The number of bands can give information about the location. For example, one band may be provided as a first marker 45, and two bands for a second marker 46 etc.

The location of the first marker 45 preferably corresponds to the depth of insertion of the optical fiber 12 into the introducer sheath 40 such that the distal end 13 of the optical fiber 12 (i.e. fiber tip 34) is very closely aligned or is substantially flush with the distal end 60 of the introducer sheath 40. The introducer sheath 40 is preferably 35 cm or 45 cm long and may be provided with a 2.1 cm friction seal 42 marking a total length 37.1 cm or 47.1 cm. Accordingly, the first marking 45 may be provided at 371 mm±1 mm or 471 mm±1 mm from the distal end 13 of the optical fiber 12.

The location of the second marking 46 preferably corresponds to a position where the distal end 13 of the optical fiber 12 extends or projects 30 mm±1 mm beyond the distal

6

end 60 of the introducer sheath 40. Accordingly, the second marking is preferably provided at 401 mm±1 mm or 501 mm±1 mm from the distal end 13 of the optical fiber 12.

The markings 45, 46 may comprise any number of bands, colors, or forms for ease of recognition during a medical procedure, or be provided at other locations along the optical fiber 12 depending upon the length of the introducer sheath 40 and any friction seal that the optical fiber 12 is required to cooperate with.

An example of a use of the medical laser device is for use in endovenous laser treatment (EVLT) in human leg 100. This will now be described in more detail with reference to FIG. 4. Local anesthesia such as 0.3% or otherwise dilute lidocaine administered perivenously along the Greater Saphenous Vein (GSV) 200 and ultrasound guidance, are preferably used. Percutaneous entry into the Greater Saphenous Vein 200 is made with a needle at point 150, 25–45 cm below the Saphenofemoral Junction (SFJ) 300. A 0.035" (0.089 cm) J-tip guide wire is passed into the Greater Saphenous Vein 200 and a five French introducer sheath 40 is passed over the guide wire and up to the Saphenofemoral Junction 300. The guide wire is removed and a sterile 600 μm diameter core, bare-tipped optical fiber 12 is introduced into the vein 200 through the introducer sheath 40 until the first markings 45 is aligned with the proximal end 50 of the introducer sheath 40 (which corresponds with the portion of the friction seal furthermost from distal end 60). The optical fiber 12 and the proximal end 50 of the introducer sheath 40 are the fixed or held together. They are then moved together and positioned using ultrasound guidance at a location about 1–2 cm below the Saphenofemoral Junction 300 within the Greater Saphenous Vein 200. Once positioned, the introducer sheath 40 is then released from the optical fiber 12 and the introducer sheath 40 is withdrawn relative to the optical fiber 12 until the proximal end 50 of the introducer sheath 40 is aligned with the second mark 46 on the optical fiber 12. When the introducer sheath 40 and the optical fiber 12 are in this position then the distal end 13 of the optical fiber 12 will extend approximately 30 mm beyond the distal end 60 of the introducer sheath 40. This position has been found to be an effective position for administering laser energy in EVLT treatment. An extension of 20 mm of the optical fiber 12 beyond the end of the introducer sheath 40 has been found to be the minimum suitable distance for administering laser energy in EVLT treatment without causing thermal damage to the introducer sheath 40. The optical fiber 12 and the proximal end 50 of the introducer sheath 40 are then secured together with non-permanent means. Alternatively, if marking 45 is embossed then there may be sufficient co-operation between the marking 45 and the friction seal 42 of the introducer sheath 40 to secure them temporarily together. Pulsed 810 nm wavelength laser radiation from a laser energy source (not shown) is administered with a power of 10–12 Watts, in pulses of 0.8–1.0 second duration at 1 second pulse intervals to treat the Greater Saphenous Vein 200. The introducer sheath 40 together with the optical fiber 12 are then slowly withdrawn in preferably 2–5 mm increments whilst administering the laser radiation, and manual compression is applied over a red aiming beam in order to achieve vein wall apposition around the laser fiber tip 34.

In an embodiment, the cycle is activated and deactivated by a foot switch or hand switch. The clinician is instructed to withdraw the introducer sheath 40 2–3 mm between 1 second laser pulses. This process continues until the desired length of the vein has been treated.

In other embodiments the optical fiber 12 may be made of materials of comprise material combinations other than glass

US 6,981,971 B2

7

so long as the guiding properties of the core **32** of the optical fiber **12** are maintained i.e. providing the core **32** has a higher refractive index than the cladding **30**, and so long as the materials can operate in the temperature range −10° C. to 120° C. For, example any glass, plastic or hollow waveguide material could be used.

It will also be appreciated that the indicators of markings **45, 46** may be ink markings and the color of the markings **45, 46** may give information about their location. For example the first marker **45** may be colored differently to the second marker **46**. Alternatively, according to less preferred embodiments, the markings **45, 46** may be radio opaque and hence be capable of observation by non-optical means.

Furthermore, it will be appreciated that other introducer sheaths commonly used in the art in interventional cardiology and electrophysiology procedures including angiography, angioplasty, stenting, atherectomy, temporary pacing, endomyocardial biopsies, transseptal catheterizations, electrophysiology studies, and RF ablations could be used.

Another embodiment of the present invention is contemplated, wherein the laser provides a continous rather than pulsed output. The laser may be activated by a foot or hand switch. Graduated markings are provided on the external surface of the introducer sheath **40** to provide control for withdrawing the introducer sheath **40** at a prescribed rate and to indicate how far the introducer sheath **40** has been withdrawn from the patient's body. A visable and/or audible indicator may be provided so as to assist an operator to remove the introducer sheath **40** and optical fiber **12** at a controlled speed. In one embodiment the visable and/or audible indicator may form part of the laser system coupled to the optical fiber **12**. As an example, if the markings on the external surface of the introducer sheath **40** were placed at 1 cm intervals, then the audible and/or visual indicator might be activated once per second thereby assisting a user to withdraw the introducer sheath **40** and the optical fiber **12** at a controlled speed of 1 cm/sec. An additional graduation on the introducer sheath **40** would therefore be revealed every time the indicator bleeped and/or flashed.

This embodiment has the benefit of potentially providing bio-feedback to control the rate at which the introducer sheath **40** is withdrawn. Furthermore, the continuous withdrawl results in a more uniform illumination of the internal surface of the blood vessel. According to the previously described embodiment using a pulsed laser source, the introducer sheath **40** and optical fiber **12** are withdrawn in a stepped manner which may in some circumstances cause relatively high intensity regions of illumination at, for example, 2–3 mm intervals along the blood vessel. Any such potential problem is therefore avoided by using a continuous laser source, providing graduations on the introducer sheath **40** and withdrawing the introducer sheath **40** in a controlled manner.

According to a further embodiment a visual and/or audible indicator may also be used in conjunction with the previously described embodiment which uses a pulsed laser as an aid to withdrawing the introducer sheath **40**. This allows a hybrid approach wherein the optical fiber **12** is withdrawn a longer distance e.g. 1–3 cm during a longer pulse-length. According to this embodiment, the laser source is operated in a quasi-continuous mode.

It will be appreciated that the above described embodiments are given by way of example only and that various modifications thereto may be made without departing from the scope of the invention.

8

What is claimed is:

1. A medical laser device comprising:

an introducer sheath having a proximal end and a distal end, a portion of said introducer sheath being insertable into a blood vessel, said introducer sheath having graduated markings along said portion thereof, said graduated markings being exposed as said introducer sheath is withdrawn from the blood vessel;

an optical fiber having a proximal end and a distal tip, said optical fiber being insertable into and movable along said introducer sheath; and

a first indicator on said optical fiber that indicates a position of said distal tip of said optical fiber relative to said introducer sheath when said optical fiber has been inserted into said introducer sheath;

wherein location of said first indicator adjacent said proximal end of said optical fiber sheath indicates to a user that said distal tip of said optical fiber does not project beyond said distal end of said introducer sheath; and

wherein said introducer sheath may be withdrawn from the blood vessel at a desired rate by controlling exposure of said graduated markings.

2. The medical laser device of claim 1, wherein said introducer sheath is attachable to said optical fiber so that said introducer sheath and said optical fiber are withdrawable together.

3. The medical laser device of claim 2, wherein said introducer sheath and said optical fiber are attachable by a friction seal.

4. The medical laser device of claim 1, further comprising a laser source.

5. The medical laser device of claim 4, wherein said laser source comprises a quasi-continuous laser source.

6. The medical laser device of claim 4, wherein said laser source is a continuous laser source.

7. The medical laser device of claim 4, wherein said laser source is a pulsed laser source.

8. The medical laser device of claim 1, further comprising a timing indicator wherein exposure of one or more of said graduated markings may be synchronized with said timing indicator.

9. The medical laser device of claim 8, wherein said timing indicator is a visual indicator.

10. The medical laser device of claim 8, wherein said timing indicator is an audible indicator.

11. The medical laser device of claim 8, further comprising a laser source and wherein said timing indicator is associated with said laser source.

12. The medical laser device of claim 1, further comprising a second indicator on said optical fiber that indicates a second position of said distal tip of said optical fiber relative to said distal end of said introducer sheath when said optical fiber has been inserted into said introducer sheath;

wherein location of said second indicator adjacent said proximal end of said introducer sheath indicates that said distal tip of said optical fiber projects a predetermined distance beyond said distal end of said introducer sheath.

13. The medical laser device of claim 12, wherein said introducer sheath comprises a tube and said proximal end of said introducer sheath is provided with a friction seal for forming a seal with said optical fiber and wherein said friction seal and said second indicator are adapted to interact with each other to temporarily attach said introducer sheath to said optical fiber.

US 6,981,971 B2

9

10

**14.** The medical laser device of claim **12**, wherein said predetermined distance is 2–4 cm.

**15.** The medical laser device of claim **1**, wherein said graduated markings are uniformly spaced.

**16.** The medical laser device of claim **15**, wherein said graduated markings have a 1 cm spacing.

**17.** The medical laser device of claim **1**, wherein said optical fiber is movable relative to said introducer sheath so that said distal tip of said optical fiber is extendible beyond said distal end of said introducer sheath.

**18.** The medical laser device of claim **1**, wherein said distal tip of said optical fiber is introducible into said introducer sheath after said introducer sheath has been introduced into the blood vessel.

**19.** The medical laser device of claim **1**, wherein said introducer sheath comprises a tube and said proximal end of said introducer sheath is provided with a friction seal for forming a seal with said optical fiber.

**20.** The medical laser device of claim **1**, wherein said introducer sheath is attachable to said optical fiber so that said introducer sheath is movable along the blood vessel without altering alignment of said distal tip of said optical fiber relative to said introducer sheath.

*  *  *  *  *

# EXHIBIT B

Uniquely
Committed
To Advancing Vein Care

**COMPANY INFO    PRODUCTS    PATIENTS    PHYSICIANS    INVESTORS    INTERNATIONAL**

INVESTOR HOME

CORPORATE
OVERVIEW

STOCK INFO

INVESTOR FAQS

NEWS

EVENTS

SEC FILINGS

FINANCIAL
REPORTS

INFO REQUEST

CORPORATE
GOVERNANCE

EMAIL ALERTS

HOME

## News Release

🖶 View printer-friendly version

<< Back

**Diomed Receives Notice of Allowance for Key U.S. EVLT Patent**

ANDOVER, Mass., Jul 26, 2005 (BUSINESS WIRE) -- Diomed, Inc., a subsidiary of Diomed Holdings, Inc. (AMEX: DIO), a leading developer and marketer of minimally invasive medical technologies, today announced that it has received a Notice of Allowance from the U.S. Patent and Trademark Office allowing a patent encompassing a proprietary marked introducer sheath for use with its patented EVLT(R) laser treatment for varicose veins.

The new patent, which includes both product and method claims, covers use of an introducer sheath that has graduated markings to aid a physician in moving the laser fiber through the vein at a desired rate during the procedure. Diomed introduced this technical innovation to the market in the fourth quarter of 2003. Currently, all EVLT(R) procedure kits sold by Diomed contain the marked introducer sheath covered by the patent.

"This Notice of Allowance is a significant accomplishment for Diomed," stated James A. Wylie, President and Chief Executive Officer of Diomed Holdings, Inc. "Complementing our pioneering U.S. Patent No. 6,389,777, which covers intraluminal laser vein treatment procedures, the new patent will provide Diomed with yet another competitive tool by further strengthening our existing patent portfolio."

Diomed is currently pursuing patent suits in federal court in Boston against Vascular Solutions, Inc., AngioDynamics, Inc., Total Vein Solutions, LLC, and CoolTouch, Inc. for infringement of Diomed's U.S. Patent Number 6,398,777 covering intraluminal laser treatment of varicose veins. The AngioDynamics and Vascular Solutions patent suits are in the discovery stage which is scheduled to be concluded in September. The other cases are earlier in the legal process.

In a separate suit unrelated to the U.S. Patent 6,398,777 infringement lawsuits, Diomed is taking action against Vascular Solutions and one of its former employees for trade secret misappropriation related to their introduction and sale of a marked sheath.

Diomed declined to comment on how the new patent may impact its litigation strategy to protect its intellectual property including patents and trade secrets.

About Diomed

Diomed develops and commercializes minimally invasive medical procedures that use its proprietary laser technologies and disposable products. Diomed focuses on EndoVenous Laser Treatment (EVLT(R)) for use in varicose vein treatments, photodynamic therapy (PDT) for use in cancer treatments, and dental and general surgical applications. The EVLT(R) procedure and the Company's related products were cleared by the United States FDA in January of 2002. Along with lasers and single-use procedure kits for EVLT(R), the Company provides its customers with state of the art physician training and practice development support. Additional information is available on the Company's website, www.evlt.com. EVLT(R) is a registered trademark of Diomed, Inc., Andover, MA.

Safe Harbor statements under the Private Securities Litigation Reform Act of 1995: Statements in this news release looking forward in time involve risks and uncertainties, including the risks associated with trends in the products markets, reliance on third party distributors in various countries outside the United States, reoccurring orders under OEM contracts, market acceptance risks, technical development risks and other risk factors. These statements relate to our future plans, objectives, expectations and intentions. These statements may be identified by the use of words such as "may," "will," "should," "potential," "expects," "anticipates," "intends," "plans," "believes" and similar expressions. These statements are based on our current beliefs, expectations and assumptions and are subject to a number of risks and uncertainties. Our actual results could differ materially from those discussed in these statements. Our Annual Report on Form SEC 10-KSB (the "Annual Report") contains a discussion of certain of the risks and uncertainties that affect our business. We refer you to the "Risk Factors" on pages 22 through 37 of the Annual Report for a discussion of certain risks, including those relating to our business as a medical device company without a significant operating record and with operating losses, our risks relating to our commercialization of our current and future products and

applications and risks relating to our common stock and its market value. Diomed disclaims any obligation or duty to update or correct any of its forward-looking statements.

SOURCE: Diomed, Inc.

Diomed Holdings, Inc.
Christopher J. Geberth, 877-434-6633 or 978-824-1816
investor-relations@diomedinc.com
 OR
Investor Relations:
Cameron Associates
Al Palombo, 212-554-5488
al@cameronassoc.com

Site Map                    Copyright ©2005 Diomed, Inc.                    Designed and devel