IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANGIODYNAMICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIOMED HOLDINGS, INC, <br><br> Defendant. | C. A. No. 06-002 (GMS) |

## OPENING BRIEF IN SUPPORT OF DIOMED'S MOTION TO DISMISS

OF COUNSEL:

Michael A. Albert
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

Dated: January 31, 2006

Frederick L. Cottrell III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger.
One Rodney Square
920 North King St.
Wilmington, DE 19801
(302) 651-7700

*Counsel For Defendant
Diomed Holdings, Inc.*

## Table of Contents

Table of Authorities ............................................................................................... ii

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................2

I.  THE COURT LACKS DECLARATORY JUDGMENT
    JURISDICTION OVER ANGIODYNAMICS' CLAIMS .....................................2

    A.  Legal Standards for Declaratory Judgment Jurisdiction ..............................2

    B.  Diomed Never Threatened AngioDynamics on the Patents-in-Suit ............4

    C.  The Totality of the Circumstances Shows
        No Reasonable Apprehension of Suit .........................................................7

II. EVEN IF THE COURT HAD JURISDICTION, IT SHOULD
    NEVERTHELESS DISMISS THIS CASE IN THE EXERCISE OF ITS
    DISCRETION UNDER THE DECLARATORY JUDGMENT ACT .................13

III. ANGIODYNAMICS' PLEADING IS FATALLY
     DEFICIENT IN SEVERAL ADDITIONAL WAYS ..........................................14

    A.  This Case Must Be Dismissed as a Matter of Law Because
        Diomed Holdings, Inc. Does Not Own the Patents-in-Suit ......................14

    B.  The Inequitable Conduct Claims Fail Rule 9(b) ......................................16

    C.  The Patent Invalidity Claims Fail Rule 8(a) ...........................................18

CONCLUSION ..................................................................................................20

## Table of Authorities

**Cases:**

Advanced Cardio. Sys., Inc. v. Medtronic, Inc.,
    41 U.S.P.Q. 2d 1770 (N.D. Cal. 1996) ........................................................17, 19

Allen-Bradley Co. v. Autotech Corp.,
    1990 WL 16453 (N.D. Ill. Feb. 8, 1990) .............................................................17

AT&T Corp. v. Excel Communications, Inc.,
    172 F.3d 1352 (Fed. Cir. 1999)..........................................................................19

Bausch & Lomb Inc. v. CIBA Corp.,
    39 F. Supp. 2d 271 (W.D.N.Y. 1999)................................................................14

Biovail Labs., Inc. v. Torphram, Inc.,
    2002 WL 31687610 (N.D. Ill. Nov. 26, 2002) ...................................................15

Bonterra Am., Inc. v. Bestmann,
    907 F. Supp. 4 (D.D.C. 1995)........................................................................5, 13

Boss Prods. Corp. v. Tapco Int'l Corp.,
    2001 WL 135819 (W.D.N.Y. 2001) .............................................................16, 18

Breitigan v. New Castle County,
    350 F. Supp. 2d 571 (D. Del. 2004)...................................................................14

BriteSmile, Inc. v. Discus Dental, Inc.,
    2005 WL 3096275 (N.D. Cal. Nov. 18, 2005) .............................................10, 13

Burlington Indus. v. Dayco Corp.,
    849 F.2d 1418 (Fed. Cir. 1988)..........................................................................18

Catalina Mktg, Int'l, Inc. v. Coolsavings.com, Inc.,
    2003 WL 21542487 (N.D. Ill. July 3, 2003).......................................................17

Cygnus Therapeutics Sys. v. Alza Corp.,
    92 F.3d 1153 (Fed. Cir. 1996)............................................................................12

Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,
    70 F. Supp. 2d 944 (N.D. Iowa 1999), reversed in aprt on other grounds by
    272 F.3d 1365 (Fed. Cir. 2001)..........................................................................12

Diamond v. Chakrabarty,
    447 U.S. 303 (1980)............................................................................................19

RLF1-2976045-1

DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc.,
   148 F. Supp. 2d 412 (D. Del. 2001)............................................................8, 10, 13

EMC Corp. v. Norand Corp.,
   89 F.3d 807 (Fed. Cir. 1996)....................................................................2, 7, 14

EMC Corp. v. Storage Tech. Corp.,
   921 F. Supp. 1261 (D. Del. 1996).................................................................16

EMS-Am. Grilon, Inc. v. DSM Resins U.S., Inc.,
   15 U.S.P.Q. 2d 1472 (D.N.J. 1989) .............................................................16

Ferguson Beauregard/Logic Controls v. Mega Sys., LLC,
   350 F.3d 1327 (Fed. Cir. 2003)...................................................................16

GAF Building Materials Corp. v. Elk Corp. of Dallas,
   90 F.3d 479 (Fed. Cir. 1996).......................................................................20

Gamesa Eolica SA v. Gen. Elec. Co.,
   71 U.S.P.Q. 2d 1379 (W.D. Wis. 2004)....................................................11, 12

Gen-Probe, Inc. v. Vysis, Inc.,
   359 F.3d 1376 (Fed. Cir. 2004), cert. dismissed, 543 U.S. 941 (2004) ...............2

Hunter Douglas, Inc. v. Harmonic Design, Inc.,
   153 F.3d 1318 (Fed. Cir. 1998), overruled on other grounds,
   Midwest Indus., Inc. v. Karavan Trailers, Inc.,
   175 F.3d 1356 (Fed. Cir. 1999).....................................................................9

Hydrofoil Int'l, Inc. v. Doelcher Prods., Inc,
   18 U.S.P.Q. 2d 1791 (S.D.N.Y. 1991)...........................................................16

Indium Corp. v. Semi-Alloys, Inc.,
   781 F.2d 879 (Fed. Cir. 1985).....................................................................3, 9

Intex Recreation Corp. v. Team Worldwide Corp.,
   390 F. Supp. 2d 21 (D.D.C. 2005)...............................................................17

Kustom Signals, Inc. v. Applied Concepts, Inc.,
   41 U.S.P.Q. 2d 1048 (D. Kan. 1996) .................................................5, 9, 10, 12

Lans v. Digital Equip. Corp.,
   252 F.3d 1320 (Fed. Cir. 2001)...................................................................15

Moore U.S.A., Inc. v. Standard Register Co.,
   139 F. Supp. 2d 348 (W.D.N.Y. 2001) .........................................................18

Moore U.S.A., Inc. v. Standard Register Co.,
   2001 WL 34076423 (W.D.N.Y Aug. 28, 2001) ...................................................7

Nokia Corp. v. Interdigital Comms.,
   2005 WL 3525696 (D. Del. Dec. 21, 2005)........................................................12

N. Telecom, Inc. v. Wang Labs., Inc.,
   543 F. Supp. 1026 (D. Mass. 1982) ...................................................................16

O'Hagins, Inc. v. M5 Steel Mfg, Inc.,
   276 F. Supp. 2d 1020 (N.D. Cal. 2003) .........................................................7, 13

Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,
   57 F.3d 1051 (Fed. Cir. 1995).................................................................5, 6, 10

Qarbon.com Inc. v. eHelp Corp.,
   315 F. Supp. 2d 1046 (N.D. Cal. 2004) .......................................................18, 19

Samsung Elec. Co., Ltd. v. Tex. Instruments, Inc.,
   39 U.S.P.Q. 2d 1673 (N.D. Tex. 1996).............................................................17

Shell Oil Co. v. Amoco Corp.,
   970 F.2d 885 (Fed. Cir. 1992)................................................................. passim

Smith & Nephew, Inc. v. Surgical Solutions, Inc.,
   353 F. Supp. 2d 135 (D. Mass. 2004) ...............................................................18

TecSec, Inc. v. Protegrity, Inc.,
   2001 WL 802064 (E.D. Va. June 27, 2001) ......................................................19

Teva Pharms. USA, Inc. v. Pfizer,
   395 F.3d 1324 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 473 (2005) ....................... passim

Torpharm, Inc. v. Pfizer, Inc.,
   2004 WL 1465756 (D. Del. June 28, 2004), vacated as moot by Apotex, Inc. v.
   Pfizer, Inc., 125 Fed. Appx. 987 (Fed. Cir. 2005) ...............................................10

Vermeer Mfg. Co. v. Deere & Co.,
   379 F. Supp. 2d 645 (D. Del. 2005)..........................................................7, 8, 13

Wilton v. Seven Falls Co.,
   515 U.S. 277 (1995).......................................................................................14

**Statutes and Other Authorities**

28 U.S.C. § 2201.........................................................................................1, 2
Fed. R. Civ. P. 15.........................................................................................19
Chisum on Patents § 21.03[4]...........................................................................15

RLF1-2976045-1

## INTRODUCTION

This declaratory judgment action was improperly filed and should be dismissed.

The very day that Diomed, Inc.'s U.S. Patent No. 6,981,971 ("the '971 patent") issued, AngioDynamics filed a complaint seeking a declaratory judgment thereon – even though Diomed had never so much as mentioned the '971 patent to AngioDynamics, let alone issued a threat of litigation that would support declaratory judgment jurisdiction. Indeed, Diomed never sent a letter, made a telephone call, held a meeting or had a contact of any kind with AngioDynamics in which it referred to the '971 patent in any way.

Two weeks later, AngioDynamics amended its complaint to add a subsequently-issued Diomed, Inc. patent to the case (U.S. Patent No. 6,986,766 or "the '766 patent") – again without Diomed ever having mentioned it (let alone issued a threat on it).

In its haste to sue, AngioDynamics filed a fatally deficient complaint that should be dismissed on several independent grounds.

**First and foremost,** AngioDynamics does not (and cannot) allege facts supporting an objectively reasonable apprehension that a lawsuit from Diomed on the '971 and '766 patents was imminent, as required for jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. The facts pled by AngioDynamics amount to nothing more than the existence of an adverse patent held by a competitor. As a matter of law, this is insufficient to establish declaratory judgment jurisdiction.

**Second,** in its sprint to the courthouse, AngioDynamics filed a deficient pleading that impermissibly asserts patent unenforceability (i.e., inequitable conduct), as well as non-infringement and patent invalidity, "upon information and belief" with *no* supporting facts. The pleading fails to satisfy even Rule 8(a), let alone the more stringent standard applicable to inequitable conduct claims under Rule 9(b).

**Third,** bypassing a fundamental pleading requirement, AngioDynamics sued the wrong party. The Defendant, Diomed Holdings, Inc., does not own the patents-in-suit, and thus cannot be subject to a declaratory judgment proceeding on them as a matter of law. For this additional reason, the case must be dismissed in its entirety.

## ARGUMENT

## I.     THE COURT LACKS DECLARATORY JUDGMENT JURISDICTION OVER ANGIODYNAMICS' CLAIMS.

### A.     Legal Standards for Declaratory Judgment Jurisdiction

Consistent with Article III of the Constitution, the Declaratory Judgment Act ("the Act") provides jurisdiction to federal courts only in cases of "actual controversy." 28 U.S.C. § 2201; Gen-Probe, Inc. v. Vysis, Inc., 359 F.3d 1376, 1379 (Fed. Cir. 2004), cert. dismissed, 543 U.S. 941 (2004).

The Act seeks to strike a balance – enabling accused infringers to resolve uncertainty created by real threats from patentees, while at the same time "protect[ing] quiescent patent owners against unwarranted litigation." Teva Pharms. USA, Inc. v. Pfizer, 395 F.3d 1324, 1333 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 473 (2005). See also Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed. Cir. 1992) ("The Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening patentee into court."). In other words, courts must draw a "line between cases in which the parties have adverse interests and cases in which those adverse interests have ripened into a dispute that may properly be deemed a controversy." EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996).

Accordingly, "[m]ore is required for an actual controversy than the existence of an adversely held patent...." Teva, 395 F.3d at 1333. In determining whether an actual controversy exists, courts are to focus on "whether the patentee manifested the intention

to enforce the patent, and would be reasonably expected to enforce the patent against the declaratory plaintiff." Id.

The apprehension of suit must be *objectively* reasonable. A "subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement." Indium Corp. v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985).

The Federal Circuit has developed a two-part test for determining whether an objectively reasonable apprehension of suit exists.[1]  There must be both:

> (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and
>
> (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity.

Teva, 395 F.3d at 1332.  Determination of the legal effect of the parties' conduct under this test is a matter of law for the Court to decide. Shell, 970 F.2d at 888.

Only the first prong of the test is at issue here.[2]  On that prong, the Federal Circuit recently clarified that, when a declaratory judgment claim is filed, the claimant must have a reasonable apprehension not just that the patentee will sue it for infringement, but also that the lawsuit is "*imminent.*" Teva, 395 F.3d at 1333 (emphasis original).

An explicit threat by the patentee to sue can create an objectively reasonable apprehension.  Absent an explicit threat, jurisdiction is evaluated based on the "totality of the circumstances." Id.; Shell, 970 F.2d at 885 ("Since Amoco's conduct falls short of an express charge of infringement, we must look to the totality of the circumstances.").

---

[1] Federal Circuit law, not the law of the regional circuit, applies to the issue of declaratory judgment jurisdiction. Shell, 970 F.2d at 888 n.4.

[2] Diomed does not dispute AngioDynamics' contention that the second prong is met.

It is the declaratory judgment claimant's burden to establish the existence of an objectively reasonable apprehension of suit. Id. at 887.

In summary, to demonstrate that this Court has declaratory judgment jurisdiction, AngioDynamics must identify specific acts by Diomed that would have led an objective observer to the reasonable conclusion that a lawsuit by Diomed on the '971 and '766 patents was *imminent* at the time that AngioDynamics launched its preemptive strike. The facts of this case plainly do not meet that legal threshold.

### B.     Diomed Never Threatened AngioDynamics on the Patents-in-Suit.

AngioDynamics cites three acts by Diomed in support of its allegation that it feared an infringement suit on the '971 and '776 patents when it filed this case: (1) On July 26, 2005, Diomed issued a press release announcing that it had received a "notice of allowance" from the PTO on the application that later matured into the '971 patent; (2) On July 28, 2005, Diomed's CEO Jim Wylie observed, in a conference call directed to Diomed's own investors, that AngioDynamics was offering a product "embraced by the now allowed Diomed patent" (i.e., the '971 patent); and (3) Diomed is engaged in litigation with AngioDynamics over a different and unrelated Diomed patent in the District of Massachusetts. (D.I. 4 at ¶¶ 19-24, 31 & Ex. C).[3]

None of these three acts come close to being an "explicit threat," Teva, 395 F.3d at 1332, to sue AngioDynamics on the '971 patent, let alone on the '766 patent (which was never even mentioned).

*The press release.* Diomed's press release merely informed the public that it had received a notice of allowance on its '971 patent application. It indicated no intention to

_____

[3]   The press release is attached as Exhibit C to AngioDynamics' pleading. AngioDynamics incorrectly stated that it is attached as Exhibit B. (D.I. 4 at ¶ 23).

enforce that patent (when it later issued) against anyone – let alone AngioDynamics – and focused instead on *Diomed's own sales* of the patented products. (D.I. 4 at Ex. C).

It is well-established that informing others that a patent is about to issue does not constitute a threat to sue triggering declaratory judgment jurisdiction. E.g., <u>Kustom Signals, Inc. v. Applied Concepts, Inc.</u>, 41 U.S.P.Q. 2d 1048, 1052 (D. Kan. 1996) (dismissing complaint: "The letter … does no[thing] more than announce the allowance of ACI's patent…."); <u>Bonterra Am., Inc. v. Bestmann</u>, 907 F. Supp. 4, 7 (D.D.C. 1995) (letter informing competitors "that the '131 patent existed and advising them that they could seek a non-exclusive license" was *not* an actionable threat to sue).

Diomed's press release, which was not even a direct communication to AngioDynamics, is even farther removed from being an actionable threat than the letters in <u>Kustom</u> and <u>BonTerra</u>, both of which were sent directly to the declaratory plaintiff.[4]

***The conference call.*** Mr. Wylie's passing remark during the July 28 conference call likewise did not constitute a threat to sue AngioDynamics. The conference call was a report to Diomed's own investors about Diomed's business. It included mention of the company's assets, one of which was the recently-allowed '971 patent. Merely observing, to an audience of Diomed's own investors, that another company in the market was offering a product "embraced by" that patent falls far short of a threat to sue.

The Federal Circuit holds that even a *direct communication* to an accused infringer that its activities "fall within" or are "covered by" a patent does not constitute an actionable threat, absent a specific reference to the specter of litigation. <u>Shell</u>, 970 F.2d at 888 (such language "falls short of an express charge of infringement."); <u>Phillips</u>

---

[4] Diomed's press release concerned only the '971 patent application and made no reference to the '776 patent. It therefore cannot support jurisdiction over Count II.

Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051 (Fed. Cir. 1995) (direct communication that Phillips' fasteners were "covered by" patent was not a threat to sue).

Indeed, the patentees in both Shell and Phillips, were trying to convince the infringers to pay royalties. Shell, 970 F.2d at 888; Phillips, 57 F.3d at 1053-54. Statements made in this context are inherently susceptible to being perceived as direct threats because the natural alternative to an accused infringer taking a patent license is the filing of an infringement lawsuit. Shell, 970 F.2d at 889 ("A reasonable apprehension of intent to initiate an infringement lawsuit may be found from statements made during licensing negotiations, since the possibility of litigation may objectively appear to compel acceptance of offered terms.").

Even so, the Federal Circuit held in both Shell and Phillips that there was no threat to sue. *A fortiori*, there was no threat here, based on a passing remark made by Mr. Wylie to Diomed's shareholders that a third party was practicing technology "embraced by" a Diomed patent. To hold that a company's internal discussions, destined for the ears of its own investors, constitute a "threat" directed to *another* company would be unprecedented.[5]

***The Massachusetts action.***    In the Massachusetts action, filed two years ago, Diomed accused AngioDynamics of infringing a *different* patent. Prior or pending litigation on one patent obviously is not a threat to sue on another patent. If it was, any

---

[5] Like the press release, Mr. Wylie's reference to the "now allowed patent" during the investor conference call concerned only the '971 patent. See D.I. 4 at ¶ 12 (notice of allowance from the PTO concerned '971 patent only) and ¶¶ 22, 23 (press release and conference call referred to the same notice of allowance). Mr. Wylie never mentioned the '776 patent (nor does AngioDynamics allege that he did). Thus, the conference call – like the press release – cannot contribute to jurisdiction over Count II. This provides an independent reason why Count II should be dismissed.

patent suit between two companies would be a license to bring each party's entire patent portfolio into the fray. Courts have repeatedly recognized that this does not make sense. See, e.g., O'Hagins, Inc. v. M5 Steel Mfg, Inc., 276 F. Supp. 2d 1020, 1025 (N.D. Cal. 2003) (in infringement suit brought on one patent, court dismissed defendant's declaratory judgment counterclaims directed to other patents, finding "not a hint that O'Hagins has threatened to sue M5 for infringement of" the other patents); Moore U.S.A., Inc. v. Standard Register Co., 2001 WL 34076423, *1 (W.D.N.Y Aug. 28, 2001) (aggressive enforcement of one patent was not a threat to sue on a second patent: "[I]t is clear that Moore issued no explicit threat against SRC in regard to the '944 patent.") See also Indium, 781 F.2d at 883 (Federal Circuit found no threat to sue, or even reasonable apprehension of suit, despite patentee's infringement lawsuits against other parties).

In short, none of the three acts identified by AngioDynamics constituted a threat by Diomed to sue AngioDynamics on the '971 or '766 patents. This is a case in which two parties' adverse interests simply have not "ripened into a dispute that may properly be deemed a controversy." EMC, 89 F.3d at 811.

Indeed, even taken together on the "totality of the circumstances," the acts identified by AngioDynamics fall far short of establishing an objectively reasonable apprehension of suit as required for the Court to exercise jurisdiction in this case.

### C.    The Totality of the Circumstances Shows No Reasonable Apprehension of Suit.

Absent an explicit threat to sue, this District has conisdered two factors in evaluating whether an objectively reasonable apprehension of suit exists: (1) a pattern of suit by the patentee *on the specific patent at issue in the declaratory action*; and (2) conduct by the patentee that has interfered with the declaratory plaintiff's customer relations. Vermeer Mfg. Co. v. Deere & Co., 379 F. Supp. 2d 645, 649-50 (D. Del. 2005);

DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc., 148 F. Supp. 2d 412, 415 (D. Del. 2001). AngioDynamics has alleged neither of these things (nor could it).

AngioDynamics cannot and does not allege that Diomed has a "pattern" of suing on the '971 or '776 patents. Indeed, Diomed has *never* sued on either of them. The only other lawsuit referred to in AngioDynamics' pleading, the Massachusetts litigation between the parties, concerns a different and unrelated Diomed patent.

AngioDynamics also does not allege that any of Diomed's actions interfered with its customer relations. As noted above, neither the press release nor the conference call were directed to AngioDynamics or its customers. Indeed, the intended audience of the conference call consisted of *Diomed's shareholders*.

Accordingly, AngioDynamics had no objectively reasonable apprehension of imminent suit on the '971 or '776 patents when it filed its complaint in this case, and dismissal is in order. Vermeer, 379 F. Supp. 2d at 649 (dismissing declaratory judgment action: "In the absence of either an express threat to sue, a pattern of suing on the '682 patent [the patent-in-suit], or conduct which has interfered with Vermeer's customer relations, the court concludes that Vermeer has not demonstrated a reasonable apprehension of suit.").

Case law from the Federal Circuit and other courts confirms that the acts pled by AngioDynamics could not have caused an objectively reasonable apprehension of imminent suit as required for declaratory judgment jurisdiction. AngioDynamics in fact did not even plead that it had such an objectively reasonable apprehension.[6]

---

[6] Although AngioDynamics alleges that it appreciated the possibility of a lawsuit (D.I. 4 at ¶ 31), it does not claim that the circumstances gave rise to an *objectively* reasonable apprehension of an *imminent* suit as required. Teva, 395 F.3d at 1332-33. Even a genuine fear of suit is irrelevant if it does not meet the standards of objectiveness and imminence.

*The press release.* As noted above, Diomed's press release merely stated that the '971 patent had been allowed. Diomed made no mention of any intention to enforce the patent against anyone, let alone against AngioDynamics. Moreover, the press release does not even mention AngioDynamics or otherwise allude to AngioDynamics in any way. In fact, the release specifically "declined to comment on how the new patent may impact" Diomed's intellectual property strategy. (D.I. 4 at Ex. C). This is the *opposite* of a threat, and certainly is not "directed" at AngioDynamics, let alone in an "imminent" fashion as required for jurisdiction.

Courts have repeatedly held that this type of generic announcement about a company's patent rights does not create an objectively reasonable apprehension of suit. E.g., Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1326 (Fed. Cir. 1998) ("The most that Hunter Douglas has alleged is that the Defendants own the Harmonic patents and that they have publicized them."), overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999); Kustom, 41 U.S.P.Q. 2d at 1052 ("The letter … does no more than announce the allowance of ACI's patent, suggest that competitors using the technology covered by the patent obtain a license, and invite licensing negotiations.").

Naturally, companies are free to publicize their patent rights in the marketplace without fear of being hauled into court on a declaratory judgment suit. Indeed, it is permissible to do far more, such as stating publicly that one's patent rights are being infringed and emphasizing general efforts at patent enforcement, so long as one does not explicitly threaten suit or materially interfere with a particular competitor's business.

---

See Indium, 781 F.2d at 883 ("Although the apprehension may have been real, we do not agree that it was reasonable on the present record.").

E.g., Teva, 395 F.3d at 1332 (no reasonable apprehension of suit despite Pfizer's public representation that its patent "could reasonably be asserted" against generic drug); Torpharm, Inc. v. Pfizer, Inc., 2004 WL 1465756, *12 (D. Del. June 28, 2004) ("[D]efendants' press release statement that they 'will continue aggressively to defend challenges to [their] intellectual property' is not sufficient to instill a reasonable apprehension of suit."), vacated as moot by Apotex, Inc. v. Pfizer, Inc., 125 Fed. Appx. 987 (Fed. Cir. 2005).

Notifying the public about one's patent rights and expressing an intention to protect those rights are standard business practices that simply are not actionable.

*The conference call.*    As noted above, in the single sentence cited by AngioDynamics from the investor conference call, Diomed's CEO observed that AngioDynamics was offering a product "embraced by the now allowed Diomed patent" (i.e., the '971 patent). (D.I. 4 at ¶ 22).

Statements just like this (and considerably stronger than this) have repeatedly been found *not* to cause a reasonable apprehension of suit, absent some expression that the patentee will act on the infringement by suing. Phillips, 57 F.3d at 1052 (statement that accused products were "covered by" patent); Shell, 970 F.2d at 886-87 (statement that accused product "fell within" and was "covered under" patent); BriteSmile, Inc. v. Discus Dental, Inc., 2005 WL 3096275, *1 (N.D. Cal. Nov. 18, 2005) (statement to declaratory plaintiff's customers that their use of plaintiff's products "infringes valuable intellectual property rights of BriteSmile"); Dupont, 148 F. Supp. 2d at 413 (statement that declaratory plaintiff "may be infringing" patent); Kustom, 41 U.S.P.Q 2d at 1049 (statement that issuance of patent "may put [plaintiff] "in an infringement situation").

In short, "[a]lthough an express threat is not the only conduct that may create a reasonable apprehension ... an implied belief of infringement means little *unless there is some indication that the [declaratory] defendant will act on that belief.*" Gamesa Eolica SA v. Gen. Elec. Co., 71 U.S.P.Q. 2d 1379, 1382 (W.D. Wis. 2004) (emphasis added).

This makes eminent sense and comports with the letter and spirit of the Declaratory Judgment Act. The Act is not intended to prevent patentees from evaluating and commenting upon the extent to which others practice their patented technologies. This is a natural and expected corollary to obtaining a patent in the first place.

Mere recognition that a third party infringes a patent does not necessarily result in litigation (indeed, it rarely does). Before an infringement controversy is ripe for declaratory adjudication, the patentee must somehow convey to a reasonable, objective observer that it will sue if the infringer does not strike first. Shell, 970 F.2d at 889 (The Declaratory Judgment Act is intended "to protect *threatened* parties, not to drag a non-threatening patentee into court.") (emphasis added).

Mr. Wylie's quoted statement during the conference call conveys no intention whatsoever to file a patent infringement action. Indeed, in a portion of the conference call that AngioDynamics conspicuously did *not* quote in its pleading, Mr. Wylie emphasized that the patent covers Diomed's *own* product, and *declined to comment on whether Diomed would do anything whatsoever* regarding any other company (such as AngioDynamics) who was making a competing product:

**Caller:**   Regarding the last patent issued, I guess it was this past week, in the marked introducer sheath, I believe, can you run down which of your competitors are infringing on the patent?

**Wylie:**   Well, we really don't want to get into a discussion on the call relative to infringement. I think it's important for us to state that we have received allowances on a marked sheath patent that has been thoroughly reviewed by the patent office, and today Diomed has in place marked sheaths and two

- 11 -

> principal competitors have marked sheaths – one is AngioDynamics and the
> other is Vascular Solutions, which we discussed. But beyond that, I do not
> want to comment on what we potentially will or will not do with this patent.

See conference call (attached hereto as Ex. A),[7] at timestamp 35:32.

No objective listener would conclude from this statement that Diomed was threatening – imminently or otherwise – to sue AngioDynamics on the '971 patent. This was simply a company emphasizing a new asset to investors, and expressly turning down an invitation to say anything about infringement at all. Cf. Kustom, 41 U.S.P.Q. 2d at 1053 (boasting by patentee's sales representatives about patent "more strongly evidences an intent to impress potential customers and sell more units than to pursue litigation").

What is more, the conference call does not provide a reasonable apprehension of suit for the additional reason that it was directed solely to third parties (i.e., Diomed shareholders) rather than to AngioDynamics. Comments to third parties carry little weight, and rarely if ever support declaratory judgment jurisdiction. E.g., Cygnus Therapeutics Sys. v. Alza Corp., 92 F.3d 1153, 1160 (Fed. Cir. 1996) (no declaratory judgment jurisdiction despite CEO's statement at investor conference that products were "covered by our patents"); Nokia Corp. v. Interdigital Comms., 2005 WL 3525696 (D. Del. Dec. 21, 2005) (no declaratory judgment jurisdiction despite CEO's statement in investor conference call that company had "leverage" over declaratory plaintiff); Gamesa, 71 U.S.P.Q. 2d at 1382 (public statement "cannot reasonably create the same sense of apprehension as a statement directed to a particular party that is made immediately after the speaker has accused the other party with infringement").

In sum, the statement from the conference call upon which AngioDynamics relies is far too weak and far too indirect to support declaratory judgment jurisdiction.[8]

---

[7] A CD containing an audio file of the conference call is being filed with the Court.

- 12 -

*The Massachusetts action.*  Similarly, the fact that Diomed sued AngioDynamics on a different patent – even one in the same general field – does not create declaratory jurisdiction.  As the O'Hagins court observed, "M5 has cited to no authority standing for the proposition that the mere similarity of certain patents to a patent-in-suit suffices to establish a reasonable apprehension of suit on those patents." 276 F. Supp. 2d at 1025.

This District has likewise emphasized that prior litigation is relevant only when it involves the same patent(s) at issue in the declaratory judgment case. Vermeer, 379 F. Supp. 2d at 649-50; DuPont,148 F. Supp. 2d at 415. See also Britesmile, 2005 WL 3096275 at *3-4 (no jurisdiction over five patents related to tooth-whitening technology even though the defendant had already sued plaintiff on three other patents in same field).

Here, Diomed has never sued anyone – let alone AngioDynamics – on either of the '971 or '776 patents.  What is more, during the conference call Mr. Wylie expressly distinguished the Massachusetts litigation from Diomed's other patent rights. See D.I. 4 at ¶ 22 ("[I]t is important to point out that this case is not connected to the U.S. Patent 6,398,777 infringement lawsuits.")  The Massachusetts litigation is simply irrelevant to the '971 and '776 patents.  AngioDynamics' complaint should be dismissed.

## II.     EVEN IF THE COURT HAD JURISDICTION, IT SHOULD NEVERTHELESS DISMISS THIS CASE IN THE EXERCISE OF ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT.

Even if the Court were to find subject matter jurisdiction here, it can and should dismiss this case in the exercise of its discretion under the Declaratory Judgment Act.

---

[8] The statement was also made before the '971 patent even issued.  Pre-issuance statements are entitled to even less weight. E.g., Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 70 F. Supp. 2d 944, 958-961 (N.D. Iowa 1999) ("[T]hreats before a patent issues are of no moment."), reversed in part on other grounds by 272 F.3d 1365 (Fed. Cir. 2001); Bonterra, 907 F. Supp. at 8 ("The Court is of the opinion that defendant's conduct after the issuance of the patent should carry the far greater weight in its analysis than statements allegedly made … prior even to the issuance of the patent.").

The Act provides this Court with a "unique breadth of ... discretion to decline to enter a declaratory judgment." Wilton v. Seven Falls, 515 U.S. 277, 287 (1995). See also Breitigan v. New Castle County, 350 F. Supp. 2d 571, 582 (D. Del. 2004) (The Act "confers a discretion on the courts rather than an absolute right upon the litigant.").

Courts should consider whether hearing a declaratory judgment action would further the objectives of the Act. An action evidently filed "as a tactical measure," rather than to resolve a true cloud of litigation, is an appropriate candidate for discretionary dismissal. EMC, 89 F.3d at 815 (affirming discretionary dismissal).

This case should be dismissed because AngioDynamics can point to no evidence suggesting that Diomed threatened to sue it on the '971 or '776 patents. What motive AngioDynamics may have had to file suit on the day the '971 patent issued is far from clear, but its simultaneous issuance of a press release (attached hereto as Ex. B) describing its "proactive" strike against Diomed suggests that it is seeking some business or marketing advantage. See Bausch & Lomb Inc. v. CIBA Corp., 39 F. Supp. 2d 271, 275 (W.D.N.Y. 1999) (discretionary dismissal where only plausible motive was improper "given the lack of evidence ... that CIBA was likely to bring an infringement action").

## III.    ANGIODYNAMICS' PLEADING IS FATALLY DEFICIENT IN SEVERAL ADDITIONAL WAYS.

AngioDynamics' bare bones pleading, which asserts non-infringement, patent invalidity and patent unenforceability "upon information and belief" – with *no* supporting facts – fails to state a claim under Rules 8(a) and 9(b) as a matter of law. What is more, AngioDyamics indisputably sued the wrong party.

**A.    This Case Must Be Dismissed as a Matter of Law Because Diomed Holdings, Inc. Does Not Own the Patents-in-Suit.**

The '971 and '776 patents are owned by Diomed, Inc., a subsidiary of Diomed Holdings, Inc. The named defendant, Diomed Holdings, Inc., does not own the patents-in-suit, and thus cannot be subject to a declaratory judgment proceeding on them. For this additional reason, the amended complaint must be dismissed as a matter of law.

It is axiomatic that a declaratory judgment action is only proper against a party that itself would have standing to sue for infringement of the relevant patent. See Chisum on Patents § 21.03[4] (A party is a proper declaratory defendant "if and only if [the party] has standing to sue for infringement."). AngioDynamics named the wrong party.

The assignment of the patents-in-suit to Diomed, Inc. (*not* Diomed Holdings, Inc.) is reflected on the face of each of the patents, copies of which AngioDynamics attached to its own pleading. (D.I. 4 at ¶ 1 & Ex. A, B).[9] Indeed, the very press release *cited by AngioDynamics* explained that a notice of allowance had been received by "Diomed, Inc., a subsidiary of Diomed Holdings." (Id. Ex. C).

Because it does not own the patents-in-suit, Diomed Holdings, Inc. would lack standing to sue AngioDynamics for infringement even if it wanted to do so. Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001) ("If a party lacks title to a patent, that party 'has no standing to bring an infringement action' under that patent.").

It is black letter law that Diomed Holdings, Inc. cannot be subject to a declaratory judgment action on patents that it does not own. See Chisum on Patents § 21.03[4] (supra). This case must therefore be dismissed. Biovail Labs., Inc. v. Torphram, Inc.,

---

[9] In fact, the assignment information was public on April 24, 2003, when both patent applications were published by the PTO See Pub. Nos. 20030078568 and 20030078569, available on the PTO's web site (http://appft1.uspto.gov/netahtml/PTO/srchnum.html).

2002 WL 31687610, at *3 (N.D. Ill. Nov. 26, 2002) (dismissing declaratory claim against party having "no interest in the patents ... at issue"); <u>Hydrofoil Int'l, Inc. v. Doelcher Prods., Inc,</u> 18 U.S.P.Q. 2d 1791 (S.D.N.Y. 1991) (dismissing declaratory claim against party that had granted "all substantial rights" in the patent to another); <u>EMS-Am. Grilon, Inc. v. DSM Resins U.S., Inc.,</u> 15 U.S.P.Q. 2d 1472, 1474 (D.N.J. 1989) (no case or controversy can exist between an accused infringer and a party lacking title to the patent).

The parent company of a patent owner is *not* subject to declaratory judgment jurisdiction with regard to a patent owned by its subsidiary. <u>N. Telecom, Inc. v. Wang Labs., Inc.,</u> 543 F. Supp. 1026 (D. Mass. 1982).

In sum, this case must be dismissed as a matter of law because jurisdiction over Diomed Holdings, Inc. – a non-owner of the patents-in-suit – is indisputably lacking.

### B.    The Inequitable Conduct Claims Fail Rule 9(b).

AngioDynamics' declaratory judgment claims that the '971 and '766 patents are unenforceable for inequitable conduct (D.I. 4 at ¶¶ 37, 41) should be dismissed for the independent reason that they fail to comply with Fed. R. Civ. P. 9(b).

It is well-established that unenforceability of a patent due to inequitable conduct ("fraud on the patent office") must be pled with particularly under Rule 9(b). <u>Ferguson Beauregard/Logic Controls v. Mega Sys., LLC,</u> 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("[I]nequitable conduct ... must be pled with particularity."); <u>EMC Corp. v. Storage Tech. Corp.,</u> 921 F. Supp. 1261, 1263 (D. Del. 1996) ("As the Court has previously ruled, the particularly requirement of Rule 9(b) applies to inequitable conduct charges.").

This means that AngioDynamics' pleading must give Diomed "notice of the precise misconduct alleged," identifying any prior art alleged to have been withheld from the PTO. <u>Id.</u>; <u>see also</u> <u>Boss Prods. Corp. v. Tapco Int'l Corp.,</u> 2001 WL 135819, at *4

(W.D.N.Y. Feb. 16, 2001) (Rule 9(b) requires identification of withheld prior art); Advanced Cardio. Sys., Inc. v. Medtronic, Inc., 41 U.S.P.Q. 2d 1770, 1775 (N.D. Cal. 1996) (same).

Likewise, if AngioDynamics' inequitable conduct claim is based on an alleged misrepresentation to the PTO, that misrepresentation must be identified, together with an explanation of "the way in which it was misleading to the PTO." Intex Recreation Corp. v. Team Worldwide Corp., 390 F. Supp. 2d 21, 24-25 (D.D.C. 2005).

Moreover, to survive dismissal, AngioDynamics must also allege that Diomed's alleged wrongdoing before the PTO was *intentional*. Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 2003 WL 21542487, at *1 (N.D. Ill. July 3, 2003) (dismissing inequitable conduct claim that lacked "an allegation of intent to deceive" the PTO); Medtronic, 41 U.S.P.Q. 2d at 1775 (same: no description of "the circumstances indicating ACS' intent to mislead he PTO"); Samsung Elec. Co., Ltd. v. Tex. Instruments, Inc., 39 U.S.P.Q. 2d 1673, 1676 (N.D. Tex. 1996) (same).

AngioDynamics' pleading, however, states only that the patents-in-suit are unenforceable due to *unspecified* "acts and/or emissions of Diomed and/or its predecessors in interest." Even this generic statement is made only "upon information and belief." (D.I. 4 at ¶¶ 37, 41). "Where the allegations in the complaint are based 'on information and belief,' the general rule is that such allegations do not satisfy the particularly requirements of Fed. Rule 9(b)." Allen-Bradley Co. v. Autotech Corp., 1990 WL 16453, at *1 (N.D. Ill. Feb. 8, 1990) (dismissing inequitable conduct claim).

AngioDynamics' failure to (1) identify either a single piece of withheld prior art, or a single misrepresentation to the PTO; let alone (2) explain how the PTO was misled; or (3) allege an intent to deceive, requires that its inequitable conduct claims be

- 17 -

dismissed. Intex, 390 F. Supp. 2d at 25 (dismissing inequitable conduct claim based on unspecified misrepresentation); Catalina, 2003 WL 21542487, at *1 (dismissing inequitable conduct claim that "fails to sufficiently identify the 'when' and the 'what' of the inequitable conduct"); Boss, 2001 WL 135819, at *4 (dismissing inequitable conduct claim that failed to identify withheld prior art or to allege intent to deceive); Moore U.S.A., Inc. v. Standard Register Co., 139 F. Supp. 2d 348, 359 (W.D.N.Y. 2001) (dismissing claim lacking "a single factual allegation regarding the inequitable conduct").

According to the Federal Circuit, the "habit of charging inequitable conduct in almost every major patent case has become an absolute plague," and such charges are often made on the "slenderest grounds." Burlington Indus. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988). Courts "generally disfavor" inequitable conduct claims precisely "because they are often filed without adequate factual support." Smith & Nephew, Inc. v. Surgical Solutions, Inc., 353 F. Supp. 2d 135, 140 (D. Mass. 2004).

This suit unfortunately provides a textbook example of what such courts have lamented. AngioDynamics' inequitable conduct claim, like the remainder of its case, was improperly filed and should be dismissed.

**C.    The Patent Invalidity Claims Fail Rule 8(a).**

AngioDynamics' declaratory judgment claims that the '971 and '766 patents are "invalid" (D.I. 4 at ¶¶ 36, 40) should be dismissed for the independent reason that they fail to comply with Fed. R. Civ. P. 8(a).

Under Rule 8(a), a declaratory judgment claim for patent invalidity must provide "fair notice" of its factual underpinnings sufficient to give the patentee "a basis for assessing the strength" of the invalidity allegation. Qarbon.com Inc. v. eHelp Corp., 315 F. Supp. 2d 1046, 1051 (N.D. Cal. 2004)

- 18 -

AngioDynamics pleads no factual basis whatsoever for its claims that the patents-in-suit are invalid.  Instead AngioDynamics provides a single paragraph containing the "laundry list" of statutory grounds on which patents *can* be found invalid:

> Upon information and belief, each claim of the [patents-in-suit] is invalid and of no legal effect against AngioDynamics because of its failure to meet the conditions of patentability set forth in the Patent Statute, including, but not limited to failure to comply with the requirements of Title 35 of the United States Code, 35 U.S.C. §§ 101, 102, 103, and/or 112.

(D.I. 4 at ¶¶ 36, 40).

Such a "laundry list" is insufficient to meet the Rule 8(a) standard. E.g., Qarbon, 315 F. Supp. 2d at 1050-51 (dismissing precisely such a claim and calling it "radically insufficient"); TecSec, Inc. v. Protegrity, Inc., 2001 WL 802064, at *2 (E.D. Va. June 27, 2001) (striking affirmative defense and dismissing declaratory judgment counterclaim for patent invalidity based on the same "laundry list of United States Code sections"); Boss, 2001 WL 135819, at *2 (rejecting laundry list and requiring "a more specific statement of the basis for this [invalidity] defense"); Medtronic, 41 U.S.P.Q. 2d at 1773 (same).[10]

AngioDynamics' declaratory judgment claims that the '971 and '766 patents are invalid should be dismissed.[11]

---

[10] AngioDynamics' formulaic invalidity counterclaim evidently was pled without an appropriate pre-filing investigation.  For example, the allegation that the patents-in-suit are invalid under 35 U.S.C. § 101 is frivolous.  Section 101 requires that patents be directed to a "process, machine, manufacture, or composition of matter."  The threshold for compliance with this condition is so low that the Supreme Court has articulated it as "anything under the sun that is made by man." Diamond v. Chakrabarty, 447 U.S. 303, 309 (1980). See also AT&T Corp. v. Excel Communications, Inc., 172 F.3d 1352, 1356 (Fed. Cir. 1999) (quoting Chakrabarty and reversing district court's holding that patent was invalid under Section 101).  Medical devices and methods like those disclosed and claimed in the patents-in-suit plainly constitute patentable subject matter under Section 101.  No factual basis for an assertion to the contrary is conceivable, let alone articulated in AngioDynamics' pleading.

[11] AngioDynamics' new Count II, directed at the '766 patent which issued *after* the filing of the original counterclaim, should be dismissed for another independent reason – it was

- 19 -

## CONCLUSION

Because declaratory judgment jurisdiction is lacking, and for the other reasons set

forth above, AngioDynamics' complaint should be dismissed with prejudice.


OF COUNSEL:

Michael A. Albert
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000



Dated:  January 31, 2006

Frederick L. Cottrell III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King St.
Wilmington, DE 19801

(302)651-7700

Attorneys for
Diomed Holdings, Inc.

---

improperly added without AngioDynamics first obtaining leave to amend as required by
the Federal Rules of Civil Procedure.  A party alleging events that occur after the filing
date of an original pleading is not entitled to amend its pleading as of right.  Rather, leave
of court is required.  See Fed. R. Civ. P. 15(d) (leave of court is required for an amended
pleading "setting forth transactions or occurrences or events which have happened since
the date of the pleading sought to be supplemented").  Failure to obtain such leave is
grounds for dismissal. GAF Building Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479,
483 (Fed. Cir. 1996) (district court correctly dismissed amended complaint adding patent
declaratory judgment claim regarding later-issued patent where plaintiff did not adhere to
the motion requirement of Rule 15(d)).  In its original complaint (at n.1), AngioDynamics
indicated an intention to seek such leave once the '766 patent issued.  In the end,
however, AngioDynamics once again jumped the gun, filing an amended complaint
*without* seeking (let alone obtaining) the required leave of Court as it had said it would.

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2006, I electronically filed this document with

the Clerk of Court using the CM/ECF system, which is expected to send notification of

such filing(s) to the following counsel for AngioDynamics:

**BY HAND DELIVERY**
John G. Harris, Esq.
Reed Smith, LLP
jharris@reedsmith.com
1201 North Market Street, Suite 1500
Wilmington, DE   19801-1163

_____
Frederick L. Cottrell III (#2555)
cottrell@rlf.com