# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ANGIODYNAMICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-002 (GMS) |
| v. | ) | |
| | ) | |
| DIOMED HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ANGIODYNAMICS, INC.'S ANSWERING BRIEF IN OPPOSITION TO
DIOMED HOLDINGS, INC.'S MOTION TO DISMISS AND
ANGIODYNAMICS, INC.'S BRIEF IN SUPPORT OF
ANGIODYNAMICS, INC.'S MOTION FOR LEAVE TO AMEND
ANGIODYNAMICS, INC.'S FIRST AMENDED COMPLAINT**

Dated: February 14, 2006

Respectfully submitted,

John G. Harris (DE I.D. No. 4017)
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone:   302.778.7500
Facsimile:   302.778.7557

OF COUNSEL:
Arthur Dresner
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.521.5400
Facsimile:  212.521.5450

Counsel for the Plaintiff
Angiodynamics, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................III

NATURE AND STAGE OF PROCEEDING ...............................................................1

SUMMARY OF ARGUMENT .....................................................................................2

STATEMENT OF FACTS.............................................................................................4

    I.     DIOMED AGGRESSIVELY USES ITS INTELLECTUAL
          PROPERTY TO RESTRICT COMPETITIVE ENDOVASCULAR
          LASER TREATMENT PRODUCTS ..........................................................4

    II.    DIOMED REPEATEDLY SUES PARTIES FOR PATENT
          INFRINGEMENT TO RESTRICT COMPETITIVE
          ENDOVASCULAR LASER TREATMENT PRODUCTS ......................5

    III.   DIOMED ANNOUNCES TO THE INDUSTRY THAT
          ANGIODYNAMICS AND VASCULAR SOLUTIONS ARE
          INFRINGING THE MARKED SHEATH PATENTS..............................8

    IV.   ANGIODYNAMICS SEEKS DECLARATORY JUDGMENT IN
          RESPONSE TO DIOMED'S ASSERTION OF INFRINGEMENT
          AND REPEATED AGGRESSIVENESS ..................................................9

ARGUMENT..................................................................................................................10

    I.     THE TOTALITY OF FACTS AND CIRCUMSTANCES GIVE RISE
          TO DECLARATORY JUDGMENT JURISDICTION............................10

          A.    THE FACTS MUST BE VIEWED IN A LIGHT MOST FAVORABLE TO
                ANGIODYNAMICS ..................................................................10

          B.    LEGAL STANDARDS FOR DECLARATORY JUDGMENT
                JURISDICTION..........................................................................11

                1.    Courts Review the Totality of the Circumstances when
                      Determining Subject Matter Jurisdiction............................11

                2.    The Only Legal Issue in Dispute is Whether Diomed's
                      Conduct Created a Reasonable Apprehension of Suit
                      on the Part of AngioDynamics............................................11

                3.    Prior Suits Filed by Declaratory Judgment Defendant
                      Further the Creation of a Reasonable Apprehension.........12

                  4.    Statements Made by Declaratory Judgment Defendant
                      to Customers of Declaratory Judgment Plaintiff, or the
                      Industry at Large, Further the Creation of a Reasonable
                      Apprehension ......................................................................13

C.    THE TOTALITY OF THE CIRCUMSTANCES DISPLAY THAT
ANGIODYNAMICS WAS PLACED UNDER A REASONABLE
APPREHENSION OF SUIT BY DIOMED'S ACTIONS............................14

D.    REBUTTAL OF DIOMED'S ASSERTIONS............................................16

1.    The Required Apprehension Need Not Be One of
Imminent Suit....................................................................16

2.    Prior Suits by Patentee not Involving the Declaratory
Judgment Action Patent(s) are Relevant............................18

3.    Statements Made to Third Parties are Relevant................18

4.    Statements Made After a Notice of Allowance of a
Patent are Relevant ...........................................................19

II.    THE COURT SHOULD NOT EXERCISE ITS DISCRETION
UNDER THE DECLARATORY JUDGMENT ACT AND DISMISS
THIS CASE ..........................................................................................20

III.   LEAVE SHOULD BE GRANTED TO CORRECT THE NAME OF
THE DEFENDANT TO DIOMED, INC...................................................23

IV.    PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ITS
CLAIM FOR UNENFORCEABILITY .....................................................24

V.     PLAINTIFF HAS PLED INVALIDITY WITH SUFFICIENT
SPECIFICITY TO THE LIBERAL NOTICE PLEADING
REQUIREMENT OF RULE 8(A)............................................................25

CONCLUSION ....................................................................................................26

ORAL ARGUMENT REQUESTED .......................................................................27

## TABLE OF AUTHORITIES

C<small>ASES</small>

*Agere Sys. Guardian Corp. v. Proxim, Inc.*,
   190 F.Supp.2d 726 (D. Del. 2002) .............................................................. 24

*Aralac, Inc. v. Hat Corp. of Am.*,
   166 F.2d 286 (3d Cir. 1948) ............................................................... 13, 19

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988) ................................................... 12, 17, 20, 22

*C.R. Bard, Inc. v. Schwartz*,
   716 F.2d 874 (Fed. Cir. 1983) .............................................................. 11, 12

*Capo, Inc. v. Dioptics Med. Prods.*,
   387 F.3d 1352 (Fed. Cir. 2004) ................................................................. 22

*Cygnus Therapeutics Sys. v. Alza Corp.*,
   92 F.3d 1153 (Fed. Cir. 1996) .............................................................. 18, 19

*Dr. Reddy's Labs. Ltd. v. aaiPharma Inc.*,
   66 U.S.P.Q.2d 1878 (S.D.N.Y. 2002) .................................................... 12, 13

*DuPont Merck Pharm. Co. v. Bristol-Myers Squibb Co.*,
   62 F.3d 1397 (Fed. Cir. 1995) .............................................................. 13, 19

*Elecs. for Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) ............................................................ 20, 22

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996) .................................................................... 22

*EMC Corp. v. Storage Tech. Corp.*,
   921 F.Supp. 1261 (D.Del.1996) ................................................................. 24

*Fina Oil and Chem. Co. v. Ewen*,
   123 F.3d 1466 (Fed. Cir. 1997) ................................................................. 11

*Gamesa Eolica SA v. General Elec. Co.*,
   71 U.S.P.Q.2d 1379 (W.D.Wis. 2004) ........................................................ 19

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
   824 F.2d 953 (Fed. Cir. 1987) ............................................................. passim

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ................................................................................. 10

*Nippon Electric Glass Co., Ltd. v. Sheldon*,
   489 F.Supp. 119 (S.D.N.Y. 1980) .............................................................. 13

*Nokia Corp. v. Interdigital Comms.*,
   No. Civ.A. 05-16-JJF, 2005 WL 3525696 (D.Del. Dec. 21, 2005) ..................... 19

*Owens-Ill. Glass Container Inc. v. B & H Mfg. Inc.*,
   13 U.S.P.Q.2d 2061 (E.D.Cal. 1989) .......................................................... 13

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
   57 F.3d 1051 (Fed. Cir. 1995) ................................................................. 12

*Samsung Elecs. Co., Ltd. v. Texas Instruments Inc.,*
  39 U.S.P.Q.2d 1673 (N.D. Tex. 1996)..................................................... 25

*Scheuer v. Rhodes,*
  416 U.S. 232 (1974)........................................................................... 10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
  742 F.2d 786 (3d Cir.1984) ................................................................ 24

*Shane v. Fauver,*
  213 F.3d. 113 (3d Cir. 2000) .............................................................. 24

*Super Sack Mfg Corp. v. Chase Packaging Corp.,*
  57 F.3d 1054 (Fed. Cir. 1995) ...................................................... 12, 20

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002) .......................................................................... 26

*Teva Pharm. USA, Inc. v. Pfizer, Inc.,*
  395 F.3d 1324 (Fed. Cir. 2005) .................................................... 16, 17

*Treemond Co. v. Schering Corp.,*
  122 F.2d 702, 705 (3d Cir. 1941) .................................................. 14, 15

*Vanguard Research, Inc. v. PEAT, Inc.,*
  304 F.3d 1249 (Fed. Cir. 2002) ................................................... passim

*Wembley, Inc. v. Superba Cravats, Inc.,*
  315 F.2d 87 (2d Cir. 1963) ................................................................ 21

<u>STATUTES</u>

35 U.S.C. § 101 ..................................................................................... 25

35 U.S.C. § 102 ..................................................................................... 25

35 U.S.C. § 103 ..................................................................................... 25

35 U.S.C. § 112 ..................................................................................... 25

35 U.S.C. § 282 ..................................................................................... 25

<u>RULES</u>

Fed.R.Civ.P. Rule 8(a)..................................................................... 25, 26

Fed.R.Civ.P. Rule 8(e).......................................................................... 26

Fed.R.Civ.P. Rule 9(b).......................................................................... 24

Local Rule 7.1.4 ................................................................................... 27

## NATURE AND STAGE OF PROCEEDING

This lawsuit seeks a Declaratory Judgment of noninfringement, invalidity, and/or unenforceability of two issued U.S. patents.

On January 3, 2006, AngioDynamics, Inc., Plaintiff herein, filed its Complaint seeking a declaratory judgment that Defendant's U.S. Patent No. 6,981,971 ("the '971 patent" or "Marked Sheath Product Patent") is not infringed by Plaintiff's sale of its VenaCure™ product, and is invalid and/or unenforceable. A copy of the Marked Sheath Product Patent was attached to AngioDynamics' Complaint as Exhibit A.

On January 17, 2006, Plaintiff filed its First Amended Complaint adding Defendant's U.S. Patent No. 6,986,766 ("the '766 patent" or " Marked Sheath Method Patent"). A copy of the Marked Sheath Method Patent was attached to AngioDynamics' First Amended Complaint as Exhibit B. Accordingly, the First Amended Complaint seeks a declaratory judgment that both patents (collectively referred to as "the Marked Sheath Patents") are not infringed by Plaintiff's sale of its VenaCure™ product, and are invalid and/or unenforceable. Both patents relate to endovenous laser treatment, with the Marked Sheath Product Patent containing only product claims and the Marked Sheath Method Patent containing only method claims. Both patents originate from the same provisional application filed with the United States Patent and Trademark Office ("USPTO") on March 27, 2002.

On January 31, 2006, Defendant filed and served a Motion to Dismiss, primarily for lack of declaratory judgment jurisdiction.

This is Plaintiff's answering brief to Defendant's Motion.

No Answer to the Complaint has yet been filed.

## SUMMARY OF ARGUMENT

(1)     Defendant seeks this Court's Order to dismiss Plaintiff's Complaint for a declaratory judgment, primarily for lack of declaratory judgment jurisdiction. Defendant also asserts several other objections in support of its motion to dismiss, which are peripheral to the jurisdiction issue. If this Court finds proper declaratory judgment jurisdiction, then Plaintiff asserts that the other objections in support of Defendant's motion to dismiss, even if credited at face value, are properly dealt with by amendment to the Complaint rather than dismissal.

(2)     In its opening brief, Defendant attacks the basis for declaratory judgment jurisdiction on the grounds that each of the individual facts alleged by Plaintiff in its Complaint are not individually sufficient to meet the requirement of "reasonable apprehension" of "imminent" suit from the Defendant.

(3)     There are fundamental flaws in Defendant's position. First, in determining whether or not a controversy exists, the well-established test rests on whether or not the totality of the circumstances has created a reasonable apprehension on the part of the Plaintiff that the Defendant will initiate suit if the Plaintiff continues the allegedly infringing activity. Defendant skirts the requirement of considering the totality of the circumstances. Rather, Defendant has taken the facts cited by Plaintiff in its Complaint and argues that none of them alone constitute a threat to sue Plaintiff. However, when taken together and viewed objectively, the facts set forth in the Complaint, along with those set forth herein, give rise to a reasonable apprehension that Defendant will sue Plaintiff for infringement of the patents at issue in this case. This is all that is required.

(4)     Second, "imminence" of a law suit by the Defendant, contrary to Defendant's argument, is not a requirement for a finding of "reasonable apprehension".


(5)     Diomed has an extensive and current history of attempting to litigiously eliminate products that compete with its endovascular laser treatment technology: four suits (one of which is against AngioDynamics) involving U.S. Patent No. 6,398,777 ("the '777 patent" or "the Boston Patent") and one suit for theft of trade secrets, involving the special features of the Marked Sheath Patents, all of which are currently pending and actively litigated. Furthermore, Diomed has asserted that AngioDynamics infringes the Marked Sheath Patents. AngioDynamics does not argue, as Diomed would have this Court believe, that any one of these circumstances taken alone is sufficient. Rather, all of these circumstances, when viewed in totality, create a reasonable apprehension on the part of AngioDynamics that Diomed will sue AngioDynamics for infringement of the Marked Sheath Patents.


(6)     Defendant has set forth facts which satisfy the requirements to bring a declaratory judgment action. As such, this Court has subject matter jurisdiction to hear this declaratory judgment action.

## STATEMENT OF FACTS

I. **DIOMED AGGRESSIVELY USES ITS INTELLECTUAL PROPERTY TO RESTRICT COMPETITIVE ENDOVASCULAR LASER TREATMENT PRODUCTS**

AngioDynamics, Inc. ("AngioDynamics" or "Plaintiff") manufactures and sells an endovenous laser treatment system marketed under the trademark VenaCure™ Laser Vein Treatment Kit ("VenaCure™"). Declaration of William M. Appling ("Appling Dec."), ¶ 2. VenaCure™ is designed for use in vascular therapy and for the treatment of varicose veins. Appling Dec., ¶ 3. This therapy involves inserting a catheter or introducer sheath, with graduated markings on it, into a human vein to be treated. Appling Dec., ¶ 4. Laser energy is then transmitted through the sheath, by means of an optical fiber to effect the desired treatment of the vein. *Id.* The sheath and fiber are then removed, using the graduated markings to achieve a more accurate pull-back rate, so as to apply the treatment along the length of the vein. *Id.* This type of treatment is generally referred to as endovascular, or endovenous, laser treatment. *Id.*

Diomed, Inc. ("Diomed") also manufactures and sells a product relating to endovascular laser treatment under the trademark EVLT® (Endovenous Laser Treatment), which is in direct competition with AngioDynamics' VenaCure™. In September 2003, Diomed acquired exclusive rights to a first patent which it asserts covers its EVLT®. With the issuance of the two patents in suit, Diomed now either has title to, or exclusive rights in, a total of three patents that relate to endovascular laser treatment, all of which it asserts cover Diomed's EVLT®.

Diomed has emphasized in numerous statements that it has made a significant investment in the endovascular laser treatment field and that it will aggressively protect that investment. In one press release, Diomed stated that "Diomed has invested more than $20 million in the commercialization of EVLT over the last three years and we will

aggressively protect this investment." Press Release (January 7, 2004) (Exhibit A). In another press release, Diomed made clear that it "takes intellectual property rights seriously, [and] vigorously enforces its own patent rights." Diomed Press Release (July 22, 2005) (Exhibit B). Diomed has made such statements on numerous occasions. Other examples include: Press Release (March 5, 2004) (Exhibit C); Diomed Press Release (April 13, 2005) (Exhibit D); Diomed Press Release (July 13, 2005) (Exhibit E). Furthermore, Diomed has made strategic decisions to generate sufficient financial support "to enable Diomed to protect the substantial investment it has made in its patented EVLT® technology." Complaint and Jury Demand, *Diomed Inc. v. Vascular Solutions, Inc.*, 03 CV 12498 (RWZ), ¶ 17-22 (D.Mass. December 11, 2003). A copy of this complaint is attached hereto as Exhibit F. See also, Diomed Press Release (October 3, 2005) (Exhibit G) ("This financing [of $10 million] enhances our ability to accelerate the growth of our business and to continue to vigorously protect our intellectual property rights….").

As the above illustrates, Diomed has repeatedly declared in public that it will protect its EVLT® product technology. Diomed's method of protection, as shown by the facts discussed in detail below, is to sue its competitors. Moreover, Diomed's assertions of its patents rights are the primary means by which it attempts to eliminate competing products from the marketplace.

II.    **DIOMED REPEATEDLY SUES PARTIES FOR PATENT INFRINGEMENT TO RESTRICT COMPETITIVE ENDOVASCULAR LASER TREATMENT PRODUCTS**

In its aggressive efforts to restrict competitive products in the field of endovascular laser treatment technology, Diomed has repeatedly filed suit, in order to maintain a competitive advantage. In total, Diomed has filed five different lawsuits

against four distinct defendants in its zealous pursuit of protecting its intellectual property in the EVLT® technology and in an effort to keep its competitors in this field at bay.

On June 4, 2002, U.S. Patent No. 6,398,777 ("the '777 patent" or "the Boston Patent") entitled "Endovascular Laser Device and Treatment of Varicose Veins" issued to Navarro et al. Diomed obtained exclusive rights in the Boston Patent in September 2003. A copy of the Boston Patent is attached hereto as Exhibit H. The Boston Patent relates to a device and method of treating varicose veins. '777 Patent, Col 1, Lns. 7-11.

On January 6, 2004, consistent with its aggressive stance on restricting competitive endovascular laser treatment products, Diomed instituted suit in the United States District Court for the District of Massachusetts against AngioDynamics, alleging that AngioDynamics' VenaCure™ infringes the Boston Patent.[1] Appling Dec., ¶ 5. This case was filed only four months after Diomed obtained the right to enforce the patent. This case continues to be vigorously litigated by both parties. *Id.* Not once has Diomed offered to settle the case or license the Boston Patent to AngioDynamics. *Id.*

Diomed has also instituted suits in the United States District Court for the District of Massachusetts against three other competitors (Vascular Solutions, Inc.; Total Vein Solutions, LLC; and CoolTouch, Inc.) alleging that their competitive products also infringe the Boston Patent. Diomed Press Release (July 26, 2005) (Exhibit I).

This pattern of aggressive litigation (relating to endovascular laser treatment technology) is further evidenced by yet another lawsuit filed by Diomed against competitor Vascular Solutions, Inc. ("Vascular Solutions"). In this suit, Diomed charged Vascular Solutions and a former Diomed employee with trade secret misappropriation stemming from Vascular Solutions' introduction and sale of a marked introducer sheath

---

[1] VenaCure™ was originally marketed as EVLS™ (EndoVenous Laser System). AngioDynamics has subsequently changed then name from EVLS™ to VenaCure™. Except for minor details related to the introducer sheath, the two products are one and the same. Appling De., ¶ 3.

for use with its Vari-Lase endovascular treatment kit. Diomed Press Release (July 26, 2005) (Exhibit I). The Vari-Lase product at issue in that lawsuit is the same product that is being attacked by Diomed with the Boston Patent. Thus, Vascular Solutions' product, Vari-Lase, is being attacked in two different cases under two different theories of liability. Moreover, it is this same exact product, Vari-Lase, that Diomed, in a teleconference, asserted is covered by the two patents at issue in the instant law suit. Supra, Statement of Facts, § III.

The two patents at issue in the current case (the Marked Sheath Product Patent and the Marked Sheath Method Patent) issued on January 3, 2006 and January 17, 2006 respectively. Both patents (collectively referred to as "the Marked Sheath Patents") relate to endovenous laser treatment, with the Marked Sheath Product Patent containing product claims and the Marked Sheath Method Patent containing method claims related to that product. '971 Patent, Col 1, Ln. 14; Col 2, Lns. 15-16. '766 Patent, Col 1, Lns. 13-14; Col 2, Lns. 18-19. In addition, both of the Marked Sheath Patents originate from the same provisional application (No. 60/369,256), filed with the USPTO on March 27, 2002, and are therefore related.

Prior to the issuance of either of the Marked Sheath Patents, Diomed announced in a press release on July 26, 2005, that it had received a Notice of Allowance from the USPTO allowing one of the above patents encompassing a proprietary marked introducer sheath for use with its patented EVLT® laser treatment for varicose veins. Exhibit I. Diomed stated that the allowed patent application covers the use of an introducer sheath that has graduated markings to aid a physician in moving the laser fiber through the vein at a desired rate during the treatment procedure, and includes both product and method claims.

While the press release discusses the allowance of a single patent, it is in reality referring to both of the Marked Sheath Patents. This is because Diomed made clear to the entire industry that the allowed patent includes both product and method claims. As the

Marked Sheath Product Patent only contains product claims and the Marked Sheath Method Patent only contains method claims, Diomed must have been referring to the allowance of both patents.[2]

III.    **DIOMED ANNOUNCES TO THE INDUSTRY THAT ANGIODYNAMICS AND VASCULAR SOLUTIONS ARE INFRINGING THE MARKED SHEATH PATENTS**

Shortly after Diomed announced the allowance of its Marked Sheath Patents, on July 28, 2005, Diomed held one of its regular quarterly telephonic conferences to announce and discuss its financial results for the second quarter of 2005. A copy of this teleconference was attached to Diomed Holding, Inc.'s Motion to Dismiss as an audio file on a CD as Exhibit A ("Diomed's Motion to Dismiss Exhibit A"). This teleconference was announced in a July 14, 2005, press release by Diomed. A copy of this press release is attached hereto as Exhibit J. This press release invited any "interested parties" to participate in the teleconference. The press release also provided a telephone number and participant pass code for dialing into the call, as well as web address to access a webcast of the call. In addition, an audio digital replay and a web archive of the call was made available for those who were unable to participate in the call at the specified date and time. As a result of Diomed's broad advertisement, as Diomed must have reasonably anticipated, at least one representative of AngioDynamics participated in this teleconference. Declaration of David W. Doster ("Doster Dec."), ¶ 3. As such, this teleconference was not only broadcast to the general industry, including customers of AngioDynamics, but was also broadcast specifically to AngioDynamics.

---

[2] The Marked Sheath Product Patent was allowed on July 6, 2005, but a notice of allowance had already been granted on June 9, 2005 relating to the Marked Sheath Method Patent.

During the teleconference, Mr. James Wylie, President and Chief Executive Officer of Diomed, reiterated the announcement that Diomed had received a Notice of Allowance from the USPTO for the Marked Sheath Patents. Mr. Wylie went on to accuse both AngioDynamics and Vascular Solutions infringing the now allowed Diomed patents.[3] Specifically, Mr. Wylie said:

> It is important to note that on July 26, Diomed announced that it had received a Notice of Allowance from the U.S. Patent and Trademark Office for a patent on Diomed's proprietary technique of using a marked introducer sheath to control the rate of withdrawal of an optical fiber during an intravenous laser procedure. Diomed introduced a marked introducing sheath especially configured for use in the proprietary methodology in the fourth quarter of 2003. Currently, all EVLT procedure kits sold by Diomed contain a marked introducer sheath for use in the method covered by the allowed patent. Notably, both AngioDynamics and Vascular Solutions are offering marked introducer sheaths particularly for use in a technique embraced by the now allowed Diomed patent. Further, it is important to point out that this case is not connected to the U.S. Patent 6,398,777 infringement lawsuits for which I will now provide an update.

This accusation of infringement by Diomed is entirely consistent with its policy and pattern of aggressively eliminating all competitive products through litigation.

IV.    **ANGIODYNAMICS SEEKS DECLARATORY JUDGMENT IN RESPONSE TO DIOMED'S ASSERTION OF INFRINGEMENT AND REPEATED AGGRESSIVENESS**

Subsequent to the issuance of the Marked Sheath Product Patent, and operating under a reasonable apprehension that Diomed will bring suit should AngioDynamics continue to sell VenaCure™, AngioDynamics instituted a declaratory judgment action on January 3, 2006, asserting that AngioDynamics does not infringe the Marked Sheath

---

3 Although Mr. Wylie referred only to a single application, it is clear from his comments that the accusation related to both the "product" and "process" patents which make up the Marked Sheath Patents. Supra, Statement of Facts, § II. In particular, Mr. Wylie's reference to the "technique of using a marked introducer sheath" is a specific reference to a "process" and not a "product".

Product Patent, and that the Marked Sheath Product Patent is invalid and/or unenforceable.

On January 17, 2006, when the Marked Sheath Method Patent issued, AngioDynamics filed its First Amended Complaint for Declaratory Judgment adding the assertion that AngioDynamics does not infringe the Marked Sheath Method Patent, and that the Marked Sheath Method Patent is also invalid and/or unenforceable.

On January 31, 2006, Diomed brought the current motion to dismiss AngioDynamics' declaratory judgment action.

## ARGUMENT

### I. THE TOTALITY OF FACTS AND CIRCUMSTANCES GIVE RISE TO DECLARATORY JUDGMENT JURISDICTION

#### A. THE FACTS MUST BE VIEWED IN A LIGHT MOST FAVORABLE TO ANGIODYNAMICS

Before even addressing the standard for declaratory judgment jurisdiction, it should be noted that in evaluating the sufficiency of a declaratory judgment complaint, for purposes of a motion to dismiss, the factual allegations of the complaint must be accepted as true and viewed in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (must accept petitioner's allegations as true); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (allegations of declaratory judgment complaint construed favorably to the pleader). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, 467 U.S. at 73.

**B.**     **LEGAL STANDARDS FOR DECLARATORY JUDGMENT JURISDICTION**

    **1.**     **Courts Review the Totality of the Circumstances when Determining Subject Matter Jurisdiction**

The Declaratory Judgment Act requires the existence of an actual case or controversy between the parties before a federal court can constitutionally assume jurisdiction. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987); *Fina Oil and Chem. Co. v. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997). An examination of the totality of the circumstances must be made to determine whether or not there is a controversy. *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880 (Fed. Cir. 1983).

The well established test for determining whether there exists an actual case or controversy is two-pronged: (1) The defendant's conduct must have created a reasonable apprehension on the part of the plaintiff that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity; (2) The plaintiff must actually have acted, or made preparations to act, in a way that could constitute infringement. *Goodyear Tire & Rubber Co.*, 824 F.2d at 955; *Fina Oil and Chem. Co.*, 123 F.3d at 1470.

    **2.**     **The Only Legal Issue in Dispute is Whether Diomed's Conduct Created a Reasonable Apprehension of Suit on the Part of AngioDynamics**

As Diomed does not dispute AngioDynamics' contention that the second prong of the above test is met, the only issue is whether Diomed's conduct created a reasonable apprehension on the part of AngioDynamics that Diomed will initiate suit if the AngioDynamics continues to manufacture and sell VenaCure™. See, Diomed Holdings, Inc.'s Motion to Dismiss ("Motion to Dismiss"), P. 3, FN 2. AngioDynamics asserts that this first prong is also met.

The reasonableness of a party's apprehension is judged using an objective standard. *Vanguard Research, Inc.*, 304 F.3d at 1254. To meet this first prong, the courts look to the totality of the circumstances to determine whether defendant's conduct meets

the first prong. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988); *Super Sack Mfg Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995); *Goodyear Tire & Rubber Co.*, 824 F.2d at 956. A reasonable apprehension on the part of the plaintiff may be found regardless of any communication from defendant to plaintiff. In fact, such reasonable apprehension may be found even in the absence of such a communication. *Arrowhead Indus. Water, Inc.*, 846 F.2d at 736. "Conduct producing a reasonable apprehension that a patent lawsuit may be filed can be subtle." *Dr. Reddy's Labs. Ltd. v. aaiPharma Inc.*, 66 U.S.P.Q.2d 1878, 1884 (S.D.N.Y. 2002). Furthermore, the required apprehension need not be one of imminent or immediate suit. *Arrowhead Indus. Water, Inc.*, 846 F.2d at 736; *Vanguard Research, Inc.*, 304 F.3d at 1254-55 (plaintiff need not show that patentee is "poised on the courthouse steps") (quoting *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995)). It would be unreasonable to limit the required apprehension to one of imminent suit against plaintiff when defendant is exhibiting an intent to delay that suit until after defendant's extra-judicial enforcement efforts have failed and a trial date more convenient for defendant has arrived. *Arrowhead Indus. Water, Inc.*, 846 F.2d at 736.

### 3. Prior Suits Filed by Declaratory Judgment Defendant Further the Creation of a Reasonable Apprehension

Prior suits filed by a declaratory judgment defendant further the creation of a "reasonable apprehension" on the part of the declaratory judgment plaintiff. *Vanguard Research, Inc.*, 304 F.3d at 1255; *Goodyear Tire & Rubber Co.*, 824 F.2d at 953 (by suing in another case over the same technology, the patentee engaged in a course of conduct that shows a willingness to protect that technology); *C.R. Bard, Inc.*, 716 F.2d at 881 (litigation by defendant shows willingness to enforce patent rights); *Dr. Reddy's Labs. Ltd.*, 66 U.S.P.Q.2d at 1884 (that parties are engaged in litigation at time of perceived threat helps create reasonable apprehension).

A prior suit by patentee is especially relevant where the prior suit involves the commercial technology generally covered by the patents at issue in the declaratory judgment action. *Goodyear Tire & Rubber Co.*, 824 F.2d at 953. In such a case, it is immaterial that the prior suit did not involve the patents at issue in the declaratory judgment action. *Goodyear Tire & Rubber Co.*, 824 F.2d at 953. The prior suit need not even be one of patent infringement. *Vanguard Research, Inc.*, 304 F.3d at 1255 (prior suit involved trade secret misappropriation of the same technology covered by the patents at issue in the declaratory judgment action); *Goodyear Tire & Rubber Co.*, 824 F.2d at 953 (prior suit involved trade secret misappropriation of the same technology covered by the patents at issue in the declaratory judgment action).

In fact, a history of litigation between the parties may alone be enough to give rise to a reasonable apprehension of suit. *Vanguard Research, Inc.*, 304 F.3d at 1255; *Owens-Ill. Glass Container Inc. v. B & H Mfg. Inc.*, 13 U.S.P.Q.2d 2061, 2063 (E.D.Cal. 1989).

**4.  Statements Made by Declaratory Judgment Defendant to Customers of Declaratory Judgment Plaintiff, or the Industry at Large, Further the Creation of a Reasonable Apprehension**

Statements made by the patentee also help to create a "reasonable apprehension", even if they are general and not made to the declaratory plaintiff directly. *DuPont Merck Pharm. Co. v. Bristol-Myers Squibb Co.*, 62 F.3d 1397, 1401 (Fed. Cir. 1995) (general threat to bring patent infringement suits against generic drug manufacturers was found relevant); *Aralac, Inc. v. Hat Corp. of Am.*, 166 F.2d 286, 292 (3d Cir. 1948) (statement need not be made directly to plaintiff to give "reasonable apprehension").

In fact, a statement made to the industry at large may be sufficient on its own to create a reasonable apprehension. *Dr. Reddy's Labs. Ltd.*, 66 U.S.P.Q.2d at 1884-85 (threats against entire product industry can create reasonable apprehension); *Nippon Electric Glass Co., Ltd. v. Sheldon*, 489 F.Supp. 119, 121 (S.D.N.Y. 1980) (accusation may be made to customers of declaratory judgment plaintiff or to industry at large). Advertisements in trade journals have even been held sufficient to create a reasonable

apprehension. *Treemond Co. v. Schering Corp.*, 122 F.2d 702, 705 (3d Cir. 1941). (only purpose of notice listing what "our patent covers" was to make a threat of infringement and intimidate would-be purchasers into buying its own product rather than the plaintiff's).

**C.** **THE TOTALITY OF THE CIRCUMSTANCES DISPLAY THAT ANGIODYNAMICS WAS PLACED UNDER A REASONABLE APPREHENSION OF SUIT BY DIOMED'S ACTIONS**

Diomed aggressively protects its investment in endovascular laser treatment technology, and has stated as much on many occasions. Supra, Statement of Facts, § I. In its aggressiveness, Diomed sues any competitor it can, including AngioDynamics, to eliminate competitive endovascular laser treatment products. Supra, Statement of Facts, § II. In furtherance of Diomed's aggressive elimination policy, it has even instigated a theft of trade secret suit over the very subject matter of the Marked Sheath Patents when it sued Vascular Solutions over its Vari-Lase product. Furthermore, Diomed has publicly asserted to the entire industry that AngioDynamics infringes the Marked Sheath Patents. As detailed below, all of this creates a reasonable apprehension on the part of AngioDynamics that Diomed will initiate suit if the AngioDynamics continues to manufacture and sell VenaCure™.

Diomed's earlier suit against AngioDynamics for infringement of the Boston Patent, involving AngioDynamics' VenaCure™, adds to the creation of a reasonable apprehension of suit. While the Boston Patent is not directly related to either of the Marked Sheath Patents, all three patents relate to the same technology: endovascular laser treatment. More importantly, all three patents are alleged to be infringed by the same product: AngioDynamics' VenaCure™. As such, by suing AngioDynamics for infringement of the Boston Patent, Diomed has engaged in a course of conduct that shows a willingness to assert its intellectual property against AngioDynamics in order to protect this endovascular laser treatment technology. *Vanguard Research, Inc.*, 304 F.3d

at 1255 (prior suit related to technology of declaratory judgment patent created a "course of conduct"); *Goodyear Tire & Rubber Co.*, 824 F.2d at 953. Furthermore, this course of conduct is reinforced by the fact that Diomed has also sued three other companies (Vascular Solutions, Total Vein Solutions, LLC, and CoolTouch, Inc.) for infringement of the Boston Patent.

In addition, Diomed's suit against Vascular Solutions and a former Diomed employee for trade secret misappropriation also enhances the creation of a reasonable apprehension of suit. *See, Vanguard Research, Inc.*, 304 F.3d at 1255 (suit involving trade secret misappropriation); *Goodyear Tire & Rubber Co.*, 824 F.2d at 953 (suit involving trade secret misappropriation). As with the aforementioned four suits by Diomed, this litigation is yet another attempt by Diomed to eliminate a competitive product in the endovascular laser treatment field. Furthermore, the suit against Vascular Solutions relates to the very same marked sheath that Diomed asserted infringes the Marked Sheath Patents in its July 28, 2005, teleconference. This suit not only demonstrates Diomed's willingness to enforce its rights in order to protect its endovascular laser treatment technology generally, but shows Diomed's willingness to enforce the specific features of the Marked Sheath Patents and its inclination to use all possible litigation weapons to stop competitive products. *See, Vanguard Research, Inc.*, 304 F.3d at 1255; *Goodyear Tire & Rubber Co.*, 824 F.2d at 953.

Another cause for AngioDynamics' reasonable apprehension of suit is the public accusation made by Mr. Wylie that "both AngioDynamics and Vascular Solutions are offering marked introducer sheaths particularly for use in a technique embraced by the now allowed Diomed patent[s]." This was not a reflexive or obligatory statement. The only purpose of this statement was to make a threat of infringement and intimidate would-be purchasers into buying Diomed's product rather than AngioDynamics' or Vascular Solutions'. *See, Treemond Co.*, 122 F.2d at 705 (dealing with advertisement in a trade journal specifying products that "our patent covers"). In addition, this statement

directly links Diomed's suit against Vascular Solutions on the technologies of the Marked
Sheath Patents to AngioDynamics. Since Diomed has already engaged in litigation
against Vascular Solutions to protect its investment to develop the marked sheath
technology, it stands to reason that it will not hesitate to undertake litigation in order to
protect that same technology as against another company it believes infringes its patents
on this same feature, AngioDynamics.

Diomed has an extensive and current history of attempting to litigiously eliminate
products that compete with its endovascular laser treatment technology: four suits
involving the Boston Patent (one of which is against AngioDynamics) and one suit
involving the special features of the Marked Sheath Patents, all of which are currently
pending and actively litigated. Furthermore, Diomed has publicly asserted that
AngioDynamics infringes the Marked Sheath Patents. AngioDynamics does not argue, as
Diomed would have this Court believe, that any one of these circumstances taken alone is
sufficient. Rather, all of these circumstances, when viewed in totality, create a reasonable
apprehension on the part of AngioDynamics that Diomed will sue AngioDynamics for
infringement of the Marked Sheath Patents. As such, this court has subject matter
jurisdiction to hear this declaratory judgment action.

**D.    REBUTTAL OF DIOMED'S ASSERTIONS**

**1.    The Required Apprehension Need Not Be One of Imminent
Suit**

Defendant Diomed insists that the suit be imminent for a "reasonable
apprehension" to exist, and cites to *Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324,
1333 (Fed. Cir. 2005) . The *Teva* case is distinguishable from the instant case because it
involved a pharmaceutical drug application that was subject to compliance with
provisions of the Hatch-Waxman Amendments to the Federal Food, Drug and Cosmetic
Act. *Teva Pharm. USA, Inc.*, 395 F.3d at 1326. In complying with the Hatch-Waxman
provisions, Teva filed an Abbreviated New Drug Application ("ANDA") that disclosed

its intention to market a generic version of the drug sertraline hydrochloride. However, Pfizer had previously identified one of its patents as covering that drug as part of its own compliance with the Hatch-Waxman provisions. As a result of that previous identification, Pfizer had the ability to sue for patent infringement as soon as Teva filed the ANDA.

Thus, when the *Teva* Court stated that the suit must be imminent for "reasonable apprehension", it was addressing the unique situation that arises in Hatch-Waxman cases. The ability to sue upon filing of an ANDA is unique to Hatch Waxman cases because the ANDA filer is usually not making, using, selling, or offering to sell the drug at the time of the ANDA application, which is a requirement of typical patent infringement cases. In fact, the *Teva* Court noted that Teva was not going to be able to market the drug until after it received FDA approval, which could not occur until approximately four years later. *Teva Pharm. USA, Inc.*, 395 F.3d at 1334. In addition, the *Teva* Court specifically declined to hold that Pfizer's compliance with the Hatch-Waxman provisions demonstrated an intent to sue to support the finding of a reasonable apprehension. *Teva Pharm. USA, Inc.*, 395 F.3d at 1333. Furthermore, there was no history of litigation between the two parties relating to the product in question, nor had Pfizer ever accused Teva of infringement.

Thus, Diomed's citation of the *Teva* case as relevant to the issue presented to this Court is untenable. In the present case, the Hatch-Waxman provisions are not applicable. In contrast to a Hatch-Waxman ANDA filer where the drug is not being made at the time of filing the ANDA, Angiodynamics is currently making its VenaCure™ product. In addition, Diomed has previously sued AngioDynamics over its VenaCure™ product, and has accused that same product of infringing the Marked Sheath Patents. The controversy between the parties is real and immediate, which satisfies the jurisdictional requirements for a declaratory judgment action. *Arrowhead Indus. Water, Inc.*, 846 F.2d at 735 ("The sole requirement for jurisdiction under the Act is that the **conflict** be real and immediate,

i.e., **that there be a true, actual "controversy" required by the Act."**)(emphasis added).

### 2.    Prior Suits by Patentee not Involving the Declaratory Judgment Action Patent(s) are Relevant

Diomed has a pattern of suing any competitor of its EVLT® technology whenever it has the opportunity to do so. This pattern includes suing four different competitors of Diomed's EVLT® on five separate occasions.

Diomed asks the Court to ignore this aggressive pattern of competitor litigation, and asserts that this behavior on its part is irrelevant and that prior litigation is only relevant when it involves the same patent(s) at issue in the declaratory judgment case. Motion to Dismiss, P. 13. This is simply incorrect. As discussed above, the Court of Appeals for the Federal Circuit has made it clear that when prior litigation involves the same technology as that covered by the patent(s) at issue in the declaratory judgment case, the prior litigation need not specifically involve the same patent(s) at issue in the declaratory judgment case. *Vanguard Research, Inc.*, 304 F.3d at 1255; *Goodyear Tire & Rubber Co.*, 824 F.2d at 953. Such a ruling is not at odds with any of the federal district court cases cited by Diomed.

### 3.    Statements Made to Third Parties are Relevant

Diomed has accused both AngioDynamics and Vascular Solutions of infringing its Marked Sheath Patents. However, Diomed asserts that this accusation is irrelevant because it was made to a party other than declaratory judgment plaintiff, and therefore carries little weight and rarely if ever supports declaratory judgment jurisdiction. Motion to Dismiss, P. 12. None of the cases Diomed cites to, however, support the claim that an assertion of infringement made to a third party is irrelevant or carries little weight.

The Court in *Cygnus Therapeutics Sys. v. Alza Corp.* never discusses the issue of the statement being made to a party other than the plaintiff. 92 F.3d 1153 (Fed. Cir.

1996). Nor does the Court in *Cygnus* ever discuss the relevancy of the "covered by our patents" statement as intimated by Diomed. *Cygnus Therapeutics Sys.*, 92 F.3d at 1160.

In *Nokia Corp. v. Interdigital Comms.*, the Court found the statement irrelevant not because it was made to a third party, but because the statement was "reflexive and obligatory." No. Civ.A. 05-16-JJF, 2005 WL 3525696, at *4 (D.Del. Dec. 21, 2005).

The public statement in *Gamesa Eolica SA v. General Elec. Co.*  was that the patentee would protect its rights in general, and was not even remotely an assertion of infringement. 71 U.S.P.Q.2d 1379, 1382 (W.D.Wis. 2004)

In fact, as discussed above, the Court of Appeals for the Federal Circuit has explicitly stated that the statement need not be made to the declaratory judgment plaintiff. *DuPont Merck Pharm. Co.*, 62 F.3d at 1401. See, Supra, Argument, § I.B.4. *See also*, *Aralac, Inc.*, 166 F.2d at 292 (3d Cir. 1948). As such, Diomed's assertion that the Court ignore Diomed's accusations of infringement cannot be sustained.

### 4.    Statements Made After a Notice of Allowance of a Patent are Relevant

Diomed further argues that its assertion that AngioDynamics and Vascular Solutions infringe the Marked Sheath Patents should be given little weight because it was made before the issuance of either of the Marked Sheath Patents. Motion to Dismiss, P. 13, FN 8. This, however, ignores the fact that Diomed had previously announced that it had received a Notice of Allowance from the USPTO allowing one of Marked Sheath Patents. July 26, 2005, Press Release (Exhibit I).

As discussed above, while the press release discusses the allowance of a single patent, the Marked Sheath Product Patent, it is in reality referring to both of the Marked Sheath Patents (the Marked Sheath Method Patent had previously been allowed). Supra, Statement of Facts, § II. As a result of Diomed's announcement of allowance, the entire industry knew, before Diomed's accusation of infringement by AngioDynamics, that these patents would soon issue. As such, not only were the issuances of the Marked

Sheath Patents imminent at the time the accusation was made, but Diomed made sure the entire industry knew about it.

Furthermore, none of the cases cited by Diomed deal with a fact pattern similar to the one here. In fact, in circumstances similar to those here, the Federal Circuit has found pre-issuance statements quite relevant in finding there was a right to bring a declaratory action. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1343-1344 (Fed. Cir. 2005) (finding plaintiff was entitled to bring declaratory judgment action as a result of statements made a few months before issuance). Because of the Notice of Allowances, Diomed was able to lord the Marked Sheath Patents over AngioDynamics head like a black cloud just as effectively as if the Marked Sheath Patents had been issued. *Elecs. for Imaging, Inc.*, 394 F.3d at 1347 (defendant's pre-issuance statements "created a cloud" over plaintiff and plaintiff's customers, and plaintiff's liability increased as it continued to sell the allegedly infringing products). Therefore, Diomed's assertion that the Marked Sheath Patents had not yet been issued is of no moment in this case.

## II.    THE COURT SHOULD NOT EXERCISE ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT AND DISMISS THIS CASE

Diomed asserts that this case should be dismissed for the sole reason that AngioDynamics can point to no evidence suggesting that Diomed threatened to sue it on either of the Marked Sheath Patents. However, as stated above, a direct threat to sue is not required. *Arrowhead Indus. Water, Inc.*, 846 F.2d at 736; *Super Sack Mfg Corp.*, 57 F.3d at 1058; *Goodyear Tire & Rubber Co.*, 824 F.2d at 956. As such, this is not a reason to dismiss AngioDynamics' declaratory judgment action.

In fact, the Court should hear AngioDynamics' declaratory judgment action if only to prevent Diomed from holding the Marked Sheath Patents over AngioDynamics' head like a black cloud. Such is in keeping with the liberal construction of the declaratory

judgment remedy. *See, Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 89 (2d Cir. 1963).

It has been said that the availability of declaratory relief has destroyed the "racket" by which patentees gained manifold advantages by the device of threatening alleged infringers or their customers with lawsuits that might never be brought or, if brought, could always be dismissed without prejudice. *Wembley, Inc.*, 315 F.2d at 89. This device denied alleged infringers and their customers the possibility of taking steps to ascertain the validity of the patentee's claims. *Wembley, Inc.*, 315 F.2d at 89. "Because of the public policy in breaking this 'racket,' and in preventing an invalid patent from remaining in the art 'as a scarecrow', **the declaratory remedy should be construed with liberality in the patent field** as in general." *Wembley, Inc.*, 315 F.2d at 89 (emphasis added) (internal citations omitted).

It is no surprise that Diomed seeks to dismiss AngioDynamics declaratory judgment action. Diomed's ultimate goal is to prevent AngioDynamics from marketing VenaCure™ because it is in direct competition with Diomed's EVLT®. To achieve that goal, Diomed has sued AngioDynamics, as well as three other competitors, for infringement of the Boston Patent. In that suit, which is still pending, Diomed alleges that AngioDynamics' VenaCure™ infringes the Boston Patent. However, Diomed's EVLT® is not only covered by the Boston Patent, but it is also covered by the Marked Sheath Patents as well. Furthermore, Diomed now asserts that AngioDynamics' VenaCure™ is also covered by the Marked Sheath Patents.

Should Diomed be victorious, it will have succeeded in preventing AngioDynamics from continuing to market VenaCure™ as it currently exists. However, should Diomed lose that case, it will still have another bomb to drop on AngioDynamics by alleging that VenaCure™ infringes the Marked Sheath Patents. Thus, by delaying any suit relating to infringement of the Marked Sheath Patents, Diomed can conceivably embroil AngioDynamics in litigation over VenaCure™ for years to come, and can

strategically institute suit on the Marked Sheath Patents when it is convenient for Diomed.

Therefore, should the Court dismiss AngioDynamics' declaratory judgment action, it would allow Diomed to hang the Marked Sheath Patents over AngioDynamics' head like a black cloud. It is unreasonable to allow Diomed to delay suit until after defendant's extra-judicial efforts at enforcement of the Marked Sheath Patents have failed and a date for suit more convenient for defendant has arrived. *See, Arrowhead Indus. Water, Inc.*, 846 F.2d at 736. Allowing Diomed to delay suit on the Marked Sheath Patents is patently unfair to AngioDynamics, and goes against the grain of the policy behind the Declaratory Judgment Act, since Diomed has made it clear that there is a current contention between VenaCure™ and the Marked Sheath Patents. Thus there is every reason to hear AngioDynamics' declaratory judgment action and remove any cloud over the marketability of VenaCure™ with alacrity.

While it is within the Court's discretion to dismiss the case, such discretion is not unfettered. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996). "[W]ell founded reasons" must be given when a court uses its discretion to dismiss a declaratory judgment claim. *Elecs. for Imaging, Inc.*, 394 F.3d at 1345 (Citing *Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004)). *See, EMC Corp. v. Norand Corp.*, 89 F.3d at 813-14 (courts must act in accordance with the purposes of the Declaratory Judgment Act). It is insufficient to dismiss the suit as a matter of personal disinclination. *EMC Corp. v. Norand Corp.*, 89 F.3d at 813. Diomed has listed no valid reason to dismiss this suit. As such, the Court should decline to exercise its discretion under the Declaratory Judgment Act to dismiss the case.

### III.    LEAVE SHOULD BE GRANTED TO CORRECT THE NAME OF THE DEFENDANT TO DIOMED, INC.

In addition to its jurisdictional arguments, Diomed has asserted several other objections in support of its motion to dismiss. AngioDynamics submits that these other objections, even if credited at face value, are properly dealt with by amendment rather than dismissal.

The naming of Diomed Holdings, Inc. as Defendant instead of Diomed, Inc. in this case was purely a ministerial error. As such, AngioDynamics should be permitted to correct this misnomer and name Diomed, Inc. as the defendant. Such correction is effected in the Second Amended Complaint, which is submitted as an attachment to AngioDynamics, Inc.'s Motion for Leave to Amend AngioDynamics, Inc.'s Complaint, concurrently submitted herewith.

No prejudice has inured to Diomed, Inc. due to the inadvertent error in the complaint as filed. Diomed Holdings, Inc. and Diomed, Inc. are closely related entities. Diomed, Inc. is a wholly owned subsidiary of Diomed Holdings, Inc. The Diomed entities knew from the time the Complaint was served that the naming of Diomed Holdings, Inc. instead of Diomed, Inc. was a mere clerical misnomer. In fact, on January 3, 2006, Diomed Holdings Inc. announced to the press that AngioDynamics had filed this complaint for declaratory judgment against "Diomed, Inc., a subsidiary of the Company." Exhibit K.

The cases cited by Defendant in support of its motion to dismiss are distinguishable, in that they all involve multiple defendants where dismissal was sought only as to one of such defendants. Here, there is a single named defendant.

Dismissing the complaint as to Diomed Holdings, Inc. and requiring Plaintiff to add Diomed, Inc. as a new defendant differs only in form from what is proposed herein. AngioDynamics will amend its complaint in this fashion if it pleases the Court. When a

complaint's deficiency can be cured by an amendment, leave to amend must be given. *Shane v. Fauver*, 213 F.3d. 113, 115 (3d Cir. 2000).

## IV.    PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ITS CLAIM FOR UNENFORCEABILITY

The Complaint and Amended Complaint in this matter did not allege inequitable conduct explicitly, but rather, unenforceability, which encompasses inequitable conduct and other equitable defenses which are not subject to the higher standards of particularity of Fed.R.Civ.P. Rule 9(b). Thus pleading with particularity was not believed to be required. However, Plaintiff would now amend this claim to plead inequitable conduct specifically, and with particularity. Plaintiff's proposed Second Amended Complaint contains facts sufficient to meet the particularity requirements of Fed.R.Civ.P. Rule 9(b) relating to specific allegations of inequitable conduct.

The facts as pled in Plaintiff's proposed Second Amended Complaint specify the time, place, and content of the misrepresentations made to the PTO or otherwise "give the defendant[ ] notice of the precise misconduct alleged." *EMC Corp. v. Storage Tech. Corp.*, 921 F.Supp. 1261, 1263 (D.Del.1996) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir.1984)).

Plaintiff's claim of inequitable conduct as proposed in the Second Amended Complaint renders moot Diomed's objections regarding AngioDynamics' prior claim for unenforceability. It meets the Fed.R.Civ.P. Rule 9(b) requirement of particularity and must be given a chance to succeed on the merits. Only where it is clear to the court that a claim has no possibility of succeeding on the merits should the court disallow it by denying leave to amend. *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F.Supp.2d 726, 736 (D. Del. 2002). Discovery will permit Plaintiffs to ascertain the facts pled on information and belief, and to adduce additional facts in support of this claim.

-24-

V.     **PLAINTIFF HAS PLED INVALIDITY WITH SUFFICIENT SPECIFICITY TO THE LIBERAL NOTICE PLEADING REQUIREMENT OF RULE 8(A)**

Diomed alleges that AngioDynamics has not pled invalidity with sufficient specificity. This allegation must fail. AngioDynamics has alleged invalidity of two specific patents – the Marked Sheath Patents – for failure to meet the specific conditions set forth for patentability in the Patent Statute in Title 35 of the United States Code, 35 U.S.C. §§ 101, 102, 103 and/or 112. Patent invalidity is frequently pled in this manner. Defendants cite no court in the Third Circuit that has held that such a plea of invalidity was insufficient to meet the liberal notice pleading requirements of Fed.R.Civ.P. Rule 8(a).

AngioDynamics has named the patents at issue and has identified the grounds upon which the Court should find them invalid.[4] This is all that Rule 8(a) requires. *See Samsung Elecs. Co., Ltd. v. Texas Instruments Inc.*, 39 U.S.P.Q.2d 1673, 1676-77 (N.D. Tex. 1996).

Furthermore, AngioDynamics' proposed Second Amended Complaint give notice of at least one reference, the VNUS system, which may invalidate the patents in suit under the Patent Statute. This goes beyond what is required to sustain a claim of invalidity at the complaint stage of the case. The Patent Statute provides, at 35 U.S.C. § 282, that notice of specific anticipatory references need only be given in writing to the adverse party at least 30 days before the trial.

Nothing in the applicable Rules or Statutes mandates that AngioDynamics provide a more specific description of the basis for its contention of invalidity than it shall have done should leave be given to file and serve the Second Amended Complaint.

---

4 AngioDynamics' Motion for Leave to Amend resolves the issue relating to the fact that the Marked Sheath Method Patent issued **after** the filing of the original complaint.

The simplified federal 'notice' pleading standard depends upon the discovery rules and summary judgment practice to define the disputed facts of the case and remove unmeritorious claims. *See, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This erects a powerful presumption against dismissing pleadings as deficient. *Swierkiewicz*, 534 U.S. at 514.

Furthermore, Fed.R.Civ.P. Rule 8(e) provides that each averment of a pleading shall be "simple, concise and direct" and that "[p]arties should set out the averments in general terms." The objected-to grounds recited in AngioDynamics' complaint meet these requirements as well.

AngioDynamics has pled its claim of invalidity of the patents in suit with simple, concise and direct terms, in a short and plain statement. This conforms precisely with the requirements of Rule 8(a) of the Fed.R.Civ.P. AngioDynamics' invalidity claims should be allowed to go forward as stated.

Should the Court deem that a more detailed statement of the claim of invalidity is required at this time, the proper remedy is not dismissal, but for the Court to direct AngioDynamics to further amend its complaint to include such specificity as it deems appropriate under Rule 8(a).

## **CONCLUSION**

Because the Court has declaratory judgment jurisdiction, and for the other reasons set forth above, AngioDynamics should be given leave to amend its complaint, and Diomed's Holdings, Inc.'s Motion To Dismiss should be denied.

## ORAL ARGUMENT REQUESTED

Pursuant to Local Rule 7.1.4, plaintiff AngioDynamics respectfully requests that the Court schedule a date and time for presentation, by the parties, of respective oral arguments.

Dated: February 14, 2006

Respectfully submitted,

REED SMITH LLP

John G. Harris (DE I.D. No. 4017)
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone:   302.778.7500
Facsimile:   302.778.7557

OF COUNSEL:
Arthur Dresner
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.521.5400
Facsimile:  212.521.5450

Counsel for the Plaintiff
Angiodynamics, Inc.