# EXHIBIT F

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

FILED
IN CLERKS OFFICE

2003 DEC 11 P 3: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIOMED INC., DIOMED HOLDINGS INC.
and DIOMED LIMITED

                        **Plaintiffs,**

          - against -

VASCULAR SOLUTIONS, INC. and
NANCY L. ARNOLD,

                        **Defendants.**

Civil Action No. _____

**COMPLAINT AND
JURY DEMAND**

**03 CV 1 2 4 9 8 RWZ**

MAGISTRATE JUDGE _Alexander_

      Plaintiffs Diomed Inc., Diomed Holdings Inc. and Diomed Limited (collectively, "Diomed" or "Plaintiffs"), for their Complaint herein allege, upon personal knowledge as to their own actions and upon information and belief as to the actions of defendants and others, as follows:

## NATURE OF ACTION

    1.    Diomed, a leading developer and exclusive owner of patent pending technology for minimally invasive laser treatment of varicose veins, and its parent company, brings this action for injunctive and other relief to redress the willful and improper conduct of defendants Vascular Solutions, Inc. ("VSI") and Nancy L. Arnold ("Arnold"), VSI's Executive Vice President of Marketing.

    2.    After learning that Diomed was not interested in retaining VSI to manufacture or distribute Diomed's Endovenous Laser Treatment products, defendants launched a deliberate campaign to usurp Diomed's market advantage through deceptive and unfair means by misappropriating Diomed's trade secrets in violation of confidentiality agreements to which Arnold remains bound; employing marketing initiatives designed to confuse consumers as to the

source of VSI's goods and thereby infringe and dilute the value of the goodwill associated with the federally registered trademark "EVLT®" Diomed has been using since at least March 2001 to market its EVLT® products and services; and falsely accusing Diomed of engaging in unlawful practices through promotional literature VSI includes in its product packaging, thereby interfering with Diomed's existing and prospective customer relationships; and engaging in defamatory and other unfair and deceptive acts and practices, as detailed herein.

## PARTIES

3.    Diomed Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at One Dundee Park, Suite 5/6, Andover, Massachusetts. Diomed Inc. has been in the business of developing and marketing products for the laser treatment of varicose veins since approximately 1999.

4.    Diomed Holdings Inc. ("Diomed Holdings") is a corporation organized and existing under the laws of the State of Delaware with its international headquarters located at One Dundee Park, Suite 5/6, Andover, Massachusetts. Diomed Holdings, the parent company of Diomed Inc., is a party to certain confidentiality agreements in which defendant Arnold, individually, and as the President of her former employer, Laser Peripherals, LLC ("Laser Peripherals") expressly agreed not to disclose to third parties, including her current employer, VSI, certain trade secrets, which Diomed representatives disclosed to her in confidence during the due diligence on a possible transaction with Laser Peripherals.

5.    Diomed Limited is a Companies Act company organized and existing under the laws of the United Kingdom with its principal place of business located at Cambridge Research Park, Beach Drive, Cambridge CB5 9TE, United Kingdom. The application for the improved patent pending technology for the laser treatment of varicose veins, which Diomed will market under the EVLT® mark, was filed in the name of Diomed Limited.

- 2 -

6.     Vascular Solutions, Inc. or VSI is a corporation organized and existing under the laws of the State of Minnesota with its headquarters located at 6464 Sycamore Court, Minneapolis, Minnesota.  Although VSI was founded in 1997, documents VSI has filed publicly indicate that it did not begin to develop products for laser treatment of varicose veins until in or about the fourth quarter of 2002, just shortly after Arnold joined VSI.  VSI is a publicly-held company which trades on the NASDAQ National Market under the symbol "VASC".

7.     Nancy L. Arnold or Arnold is a resident of Minnesota, whose last known address is 17582 Hanson Boulevard, NW, Andover, Minnesota. She currently serves as the Executive Vice President of Marketing of VSI.

## JURISDICTION AND VENUE

8.     This is a civil action arising under the laws of the United States.  This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §1331, and 28 U.S.C. § 1338(a), (b) in that this action states federal claims for trademark infringement, false designation of origin, false advertising and dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amountin controversy exceeds $75,000, exclusive of interest and costs, and this matter is between citizens of different states.   Additionally, this Court has supplemental jurisdiction over the subject matter of Diomed's trade secret misappropriation, defamation, injurious falsehood, commercial disparagement, tortious interference, breach of contract, accounting and unfair and deceptive trade practices claims under 28 U.S.C. §1367.

9.     Venue is proper in this district under 28 U.S.C. § 1391(b).

- 3 -

### III.   FACTUAL BACKGROUND

#### A.   EVLT®, Diomed's Endovenous Laser Treatment Technology

10.   Diomed is a leading provider of laser equipment and disposable laser-delivery accessory items, including laser fibers and kits, for minimally invasive laser treatment of a variety of conditions.

11.   Diomed's most successful laser treatment solution is its laser treatment of varicose veins, which has been advertised, promoted and sold to physicians and other licensed professionals extensively and continuously since January 2002, throughout the United States and in numerous foreign countriesunder the registered trademark EVLT®.

12.   Diomed's EVLT® product line currently consists of an EVLT® branded laser and an EVLT® branded disposable procedure kit (the "EVLT® Kit") that contains a vascular access needle, guidewire, introducer and laser fiber, as well as a sheath (the "EVLT® Sheath") which is used to guide the laser fiber to the targeted treatment area where the energy is delivered.

13.   The EVLT® laser, EVLT® fiber and EVLT® Kit (collectively, the "EVLT® System") afford physicians a safer, more precise alternative to the traditional surgical approach known as ligation and stripping.  Prior to Diomed's introduction of the EVLT® System in 2002, ligation/stripping and another procedure called radio-frequency ablation were the only available treatment methods for most varicose vein abnormalities that originate from "reflux" of the greater saphenous vein.

14.   Independent clinical studies of Diomed's EVLT® System document the effectiveness of various components of the EVLT® System as compared to these alternative methods (the "EVLT® Clinical Studies").   A copy of the EVLT® Clinical Studies which Diomed uses to promote its EVLT® products is annexed hereto as Exhibit 1.

- 4 -

15.    By using the EVLT® System, a practitioner is able to treat varicose veins with the EVLT® Systemat the source of the venous insufficiency by making one small incision and inserting the disposable EVLT® Sheath into the vein.  Once the EVLT® Sheath is in place, the practitioner inserts the laser fiber into the EVLT® Sheath.  The laser is activated and energy is delivered from the fiber to the vein.  The laser fiber and sheath are then slowly removed and the vein eventually closes.  After being fitted with compression hose, the patient is able to walk out of the physician's office within an hour of treatment.  The EVLT® procedure causes minimal discomfort and bruising and no scarring, and requires less recovery time than the more invasive surgical methods which require general or spinal anesthesia.  Diomed's EVLT® procedure is thus a preferable alternative treatment method in terms of lower treatment costs and costs associated with extended absences from work.

16.    Since the commercial launch of the EVLT® System in January 2002, Diomed has established itself as the market leader of minimally invasive laser treatment solutions for varicose veins, and the EVLT® System has received high praise from the medical community, patients, and industry experts through clinical studies, such as those documented in the EVLT® Clinical Studies.

### B.    Diomed Develops an Improved EVLT® System

17.    In or about January 2002, Diomed began developing improved technology and devices for the EVLT® System that would afford practitioners even greater precision and consistency in the rate at which energy is delivered as the laser fiber is removed from the vein during the procedure (the "Improved EVLT® System").  Diomed thus began researching various design options for an improved EVLT® System.

18.    By April 2002, Diomed, through additional research and scientific study and the expenditure of significant time, money and resources, had developed a design for an improved

sheath that contained interval markings enabling the practitioner to remove the sheath and laser fiber with enhanced precision and control (the "EVLT® Marked Sheath"). With this improved marking feature, the EVLT® Marked Sheath also enhances the ability to control the rate at which energy is delivered to the vein as the laser fiber is withdrawn, thus assuring a more complete closure of the vein and minimizing damage to surrounding tissues. The EVLT® Marked Sheath was designed to be marketed as part of a new, improved procedure kit (the "Improved EVLT® Kit"). Diomed's Improved EVLT® Sheath also has been specifically designed to correspond with an improved version of the EVLT® laser console.

19.    In June 2002, after over six months of research and design, Diomed filed domestic and international patent applications on its Improved EVLT® Kit.

20.    In developing the Improved EVLT® Kit, Diomed has expended well over $200,000 on internal labor costs, materials and other direct costs, capital expenditures, prosecution of the patent applications for the Improved EVLT® Kit and of the EVLT® trademarks, validation costs, prototypes and setup charges, user manuals and translations, and meeting and travel expenses associated with the development of the Improved EVLT® System.

21.    At the time Diomed invested time, expense, and labor into what was to be the development of the most advanced technology for the laser treatment of varicose veins, none of Diomed's competitors had, to the best of Diomed's knowledge, begun to develop technology comparable to (or competitive with) the Improved EVLT® System. As such, enhancing the design of its EVLT® System to include the patent pending Marked EVLT® Sheath assured Diomed that it would be well-positioned to maintain its market edge in the disposable laser accessories market for the foreseeable future.

22.    To maximize this competitive edge, Diomed developed a marketing plan which contemplated that the Improved EVLT® System would be launched in the second half of 2003,

- 6 -

so as to afford Diomed ample time to conduct user preference evaluations and to adjust the design of its Improved EVLT® System to assure effectiveness and market acceptance by practicing physicians. The proposed timing of the launch also was based upon the need to develop packaging, instructional and promotional materials for the Improved EVLT® System and the anticipated closing of an equity round of financing, the proceeds of which were intended in part to enable Diomed to protect the substantial investment it has made in its patented EVLT® technology.

23.     Throughout the concept, research and development period of the Improved EVLT® System, Diomed had in place policies and procedures to ensure that there would be no disclosure of its confidential and proprietary information other than to employees and third parties on a need-to-know basis and only after all such persons and entities had agreed to be bound by extensive and detailed confidentiality and/or non-compete agreements.

     **C.**     **Nancy Arnold Learns of Diomed's Improved EVLT® System and Marketing Plans During Due Diligence on a Potential Transaction**

24.     In early 2002, Diomed entered into discussions regarding a possible acquisition of Laser Peripherals, a manufacturer of laser fiber-optic products. In conjunction with that potential transaction, Diomed and Laser Peripherals agreed that an exchange of confidential and proprietary information was needed to assess the propriety of proceeding with the acquisition.

25.     However, before any confidential information was exchanged by either party, on or about April 2, 2002, Diomed Holdings and Laser Peripherals entered into a Mutual and Reciprocal Non-Disclosure Agreement (the "Diomed-LP NDA") "for the purpose of preventing the unauthorized disclosure of 'Confidential Information'." (Diomed-LP NDA at 1).

26.     The term "Confidential Information" as defined in the Diomed-LP NDA includes "(i) all information whether provided in written or oral form (if properly marked *or otherwise identified as "confidential"*), including formulas, patterns, compilations, programs, devices,

- 7 -

methods, techniques or processes, of either party which are in the nature of patented or patentable information, know-how, *trade secrets, proprietary information or other information that is not otherwise known to the public* as of this date, and (ii) *all information obtained by visiting the other party's facilities.*" (emphasis added).

27.    The Diomed-LP NDA further provides, in pertinent part:

All Confidential Information made available to either party by the other party shall remain the property solely of the disclosing party. The parties hereto understand and agree that disclosure of any Confidential Information of one party to the other will be made only upon the express conditions that:

(i) such Confidential Information will be received and accepted in confidence by the receiving party; and

(ii) the receiving party will not, without the prior written approval of the disclosing party (which shall be given or withheld in its sole direction), use such information for its own benefit (or for the benefit of any party other than the disclosing party), or publish or otherwise disclose any such Confidential Information to a third party.

Each party hereto agrees strictly to limit access to Confidential Information to those of its officers, directors, or employees, or the third parties described in paragraph 2 hereof, who must have Confidential Information in order to carry out the terms of any agreement made between the parties hereto.

28.    Arnold, who was then the President of Laser Peripherals and who took the lead on behalf of Laser Peripherals throughout the due diligence and ensuing negotiations, signed the Diomed-LP NDA on behalf of Laser Peripherals.

29.    During the course of due diligence, Peter Klein, who was then serving as the Chief Executive Officer of Diomed ("Klein") and Arnold had a confidential conversation in which Arnold asked Klein about various aspects of Diomed's business. In particular, Arnold asked Klein how Diomed intended to maintain its market position as the leader in the laser treatment of varicose veins.

- 8 -

30.    Before responding, Klein told Arnold that the information he was about to reveal to her was confidential and subject to the Diomed-LP NDA.  Arnold acknowledged Klein's statement by confirming her agreement to keep the disclosed information confidential.

31.    Klein then proceeded to describe the unique, proprietary enhancements that Diomed intended to introduce to the market.  Klein described the ongoing development of the EVLT® Marked Sheath design and Diomed's plans to improve its patented EVLT® System by adding markings to the sheath as a way of enhancing the accuracy of the treatment procedure through a more precise alignment and control.

32.    Arnold responded to Klein's confidential disclosure of Diomed's trade secrets by assuring Klein that she or one of her employees at Laser Peripherals had the requisite skills to manufacture laser fibers and a sheath with the required markings.

33.    During the course of due diligence, Klein also disclosed to Arnold Diomed's plans for the timing of the launch of the Improved EVLT® System and the estimated market, and projected sales for the Improved EVLT® System.

34.    Further, Klein shared with Arnold Diomed's plans to use Fibersdirect.com as the entity that would handle web-based, direct sales of Diomed's disposable laser accessory kits to endovenous professionals.  It was contemplated that Arnold would be in charge of the Fibersdirect.com segment of Diomed's business post-acquisition.

35.    On the basis of the Confidential Information disclosed to her during the due diligence, Arnold prepared and circulated a document entitled, "Fibersdirect Inc. Business Plan 2002 By Nancy L. Arnold" (the "Arnold Plan").

36.    Included in the Arnold Plan was a detailed discussion of such confidential and proprietary topics as industry and competitor information, product pricing, a financial plan, which included projections, marketing strategies and future products.  The Arnold Plan expressly

- 9 -

provided that Laser Peripherals was to "provide assistance in the development of *new* fiberoptic and related disposables needed for *new* clinical solutions being marketed and sold by Diomed Inc."

37.    Discussions between Diomed and Laser Peripherals continued with Arnold fully involved in the exchange of confidential information and development of plans for the combined company. Those plans contemplated that Arnold was to lead the product development and be part of the management team during the transition and integration period and then eventually in the newly-formed joint venture.

38.    On April 30, 2002, Diomed and Laser Peripherals entered into a letter of intent, in which the parties and the signatories thereto agreed to be bound by the Diomed-LP NDA. In doing so, the signatories reaffirmed their obligation to maintain the secrecy of all confidential information disclosed during negotiations, including but not limited to, Diomed's disclosures relating to the development and marketing of the Improved EVLT® System and EVLT® Marked Sheath.

39.    Arnold signed the letter of intent both individually and on behalf of Laser Peripherals.

40.    Although Diomed and Laser Peripherals never concluded the contemplated transaction, the obligations of Arnold concerning the treatment and use of Confidential Information expressly survived the termination of the letter of intent.

D.    **Arnold and VSI Misappropriate Diomed's Trade Secrets Regarding the Improved EVLT® System**

41.    In or about September 2002, Arnold left Laser Peripherals to join VSI as the Executive Vice President of Marketing. At that time, the principal business of VSI was the manufacture and sale of vascular sealing devices used by cardiologists and radiologists, devices

- 10 -

which are unrelated to varicose vein treatment, let alone a laser-based treatment for varicose veins. VSI had not yet entered the laser accessory market.

42.     Shortly after joining VSI, however, Arnold called Klein to pitch VSI as the manufacturer and distributor of EVLT® products in certain market segments. Klein declined the offer.

43.     Apparently dissatisfied that it would not be able to enter the laser treatment market by serving as Diomed's manufacturer/distributor, VSI thereafter began developing a "new" product for the non-surgical treatment of varicose veins. According to public statements made by the Chief Executive Officer of VSI, Howard Root ("Root"), in or about February 2003, that development first began in or about the fourth quarter of 2002, a fact that VSI confirmed in its Form 10-K filed that month and in statements Root made to the press.

44.     In none of the public statements VSI and Root made, however, did either of them ever disclose that this so-called "new" product was a disposable procedure kit for the laser treatment of varicose veins or that the kit was to contain a marked sheath substantially similar in design, purpose and function to the design, purpose and function of the EVLT® Marked Sheath that was disclosed to Arnold – in confidence – during due diligence on the Laser Peripheral transaction.

45.     Even when VSI launched a media campaign on or about June 19, 2003, announcing FDA clearance for its "new" product, described generally as a laser procedure "kit" that was to be marketed under the trademark, "Vari-Lase", VSI still did not disclose that its kit contained a marked sheath substantially similar in design, purpose and function to the design of the EVLT® Marked Sheath.

46.     The reason is obvious. Arnold knew from the information disclosed to her during due diligence that, because the Laser Peripherals-Diomed transaction had fallen through, Diomed

- 11 -

would very likely need to delay the launch of the Improved EVLT® System with the EVLT® Marked Sheath until sometime in the latter part of 2003. As such, VSI was able to increase the likelihood that it would beat Diomed to market with its copycat procedure kit by withholding the details of the "new" kit until the actual commercial launch. In this way, VSI was assured that Diomed would be foreclosed from learning of VSI's intentions and taking steps to prevent VSI from stealing Diomed's trade secrets in time to preserve Diomed's market advantage.

47.    On reports that VSI would begin selling its procedure kits the week of July 21, 2003, the price of VSI stock immediately increased by 23%.

48.    According to the Form 8-K VSI issued on October 15, 2003, VSI had generated $108,263 in net sales of VSI's procedure kits as of September 30, 2003 and it is projecting annual kit sales of $4 to 6 million in 2004.

### E.    Diomed's Exclusively-Owned "EVLT®" Trademark

49.    In anticipation of the commercial launch of the EVLT® System and disposable EVLT® Kits in January 2002, Diomed developed a comprehensive marketing plan for the promotion and advertising of its products under the trademark "EVLT®".

50.    As part of that plan, Diomed filed an application with the United States Patent and Trademark Office ("USPTO") on November 7, 2001 seeking protection of the goodwill associated with the EVLT® mark.

51.    The USPTO registered the EVLT® mark on May 13, 2003 under Federal Trademark Registration No. 2,715,197 in international class 10 for use with medical lasers, surgical, laser beam delivery systems consisting of laser light sources and parts for such goods and in international class 42 for service mark protection in surgical, medical and nursing services and in providing information relating to such services on-line from a computer database or a global computer network. At all times material to this action, the EVLT® mark was and is a

- 12 -

valid and subsisting trademark and service mark. Diomed is the sole and exclusive owner of the EVLT® mark.

52.     Continuously from January 2002, when Diomed first launched its EVLT® products commercially, through the present, Diomed has invested considerable effort and expense to establish its EVLT® branded products as the leading alternative to surgery for the treatment of varicose veins. As part of that initiative, Diomed has been marketing, selling and distributing its products and services for the laser treatment of varicose veins under the EVLT® mark.

53.     From January 2002 through September 30, 2003, Diomed has expended more than $4.7 million in prosecuting its EVLT® trademark and in promoting its EVLT® products through advertising, trade shows, marketing materials, sales and public relations initiatives and other promotional activities, such as the web-site through which Diomed promotes its EVLT® products, www.EVLT.com. Diomed has been selling its EVLT® products throughout the United States and in various foreign countries.

54.     As a result of Diomed's continuous and extensive use of the EVLT® mark on and in connection with its EVLT® products and services, the registered EVLT® mark has become associated by Diomed's customers and by physicians and other industry professionals and their patients with Diomed's laser equipment, optical fibers and disposable accessory products, including the EVLT® Sheath and laser fibers Diomed designed specifically for use with the Diomed laser.

55.     Diomed's use and federal registration of its EVLT® mark entitles it to a presumption, under 15 U.S.C. § 1057, of the mark's validity, of Diomed's ownership of the mark, and of Diomed's exclusive right to use the mark in commerce in connection with the products and services listed in its registration.

- 13 -

**F.    VSI Intentionally Attempts to Trade on the Goodwill Associated with Diomed's Registered "EVLT®" Trademark**

56.    VSI's Annual Report and press releases indicate that VSI would be marketing its laser procedure kit under the trademark "Vari-Lase", for which VSI had applied for trademark protection on or about February 23, 2003 in international classes 10, 26, 39 and 44.

57.    VSI, however, has instead been using the mark "ELT" and/or "Endovenous Laser Therapy" to market its laser procedure kit as a way of suggesting to consumers and insurers that Diomed was the source of the laser treatment products VSI was marketing.

58.    On or about August 20, 2003, counsel for Diomed sent a letter to Root, demanding that VSI cease and desist from using the ELT mark on the grounds that by using the ELT mark in connection with VSI's procedure kit, VSI had caused consumer confusion and was attempting to trade on the goodwill established by, and associated with, the registered EVLT® trademark of Diomed.

59.    On September 4, 2003, counsel for VSI responded by sending a letter to counsel for Diomed advising that VSI "has made the business decision to discontinue use of the abbreviation ELT of Endovenous Laser Therapy in their marketing, promotion and packaging materials."

60.    Nonetheless, included in the marketing materials VSI was handing out to the more than 200 professionals who attended the International Varicose Vein conference held in Key Biscayne, Florida on September 21-23, 2003 were copies of the "Endovenous Laser Reimbursement News", a quarterly newsletter published by VSI and its CEO, Root (the "VSI Newsletter"). A copy of the VSI Newsletter is attached hereto as Exhibit 2.

- 14 -

61.    The VSI Newsletter, which reflects a July 2003 publication date, contains, among other things, more than thirty (30) references to the ELT mark, which, VSI had assured Diomed just three weeks earlier was no longer being used to promote VSI products.

62.    Further, in the highlights found on the first page of the VSI newsletter, VSI proclaims: "New published clinical data on Endovenous Laser Therapy demonstrates excellent long-term results with large patient populations." The article, entitled, "New Published Clinical Results of Endovenous Laser Therapy (ELT)", describes in great detail "the documented clinical experience of ELT of varicose veins." (emphasis added).

63.    However, this so-called "documented clinical experience of ELT" is nothing more than a paraphrased version of the EVLT® Clinical Studies – but with all references to Diomed products and EVLT® omitted. In this disingenuous way, VSI has attempted to link ELT to the favorable results documented in the EVLT® Clinical Studies, even though the studies were based almost exclusively on Diomed's EVLT® System. Certainly, no aspect of any of the 16 studies discussed in the EVLT® Clinical Studies deal with VSI or any of VSI's products.

64.    In addition, in a discussion of the various "ELT" procedures, which is organized by reference to specific patents, VSI touts the documented success and benefits of "ELT" that have been confirmed through studies that are, in reality, those chronicled in the EVLT® Clinical Studies. The article then claims that "[t]hey concluded that ELT is a successful minimally invasive alternative for a wide group of patients that previously would have required vein ligation and stripping." (emphasis added).

65.    But nowhere does the article mention that the patented technology being described in the VSI Newsletter is the EVLT® System, which is owned exclusively by Diomed.

- 15 -

66.    What is more, although VSI has used the VSI Newsletter as part of the promotional materials for its laser procedure kit, the name "Vari-Lase", the trademark VSI publicly announced would be used to market its kit, appears nowhere in the VSI Newsletter.

67.    Nor does VSI use its "Vari-Lase" mark anywhere on its patient information website, www.veins.nu.  VSI instead repeatedly uses the name "Endovenous Laser Therapy" to describe the laser option for treating varicose veins.  Equally deceptive is the design of the website, which contains graphics, illustrations, lettering, typeset and coloring that is similar to the promotional literature and web-site (www.EVLT.com), which Diomed has been using to market its EVLT® products.

68.    VSI's strategy of using marketing materials similar to those used by Diomed also can be found in the promotional materials VSI provides to physicians and other professionals who request information concerning VSI's Vari-Lase products.  For example, the color patient information brochure, which VSI provides to its customers contains illustrations, typeset and coloring that is very similar to the patient information Diomed provides to physician who purchase the EVLT® products.  The VSI product package also contains, among other things, articles showcasing the EVLT® Clinical Studies by repeated reference to the "ELT" mark.  A copy of one such article is attached hereto as Exhibit 3.

69.    Through these deceptive, deliberate marketing ploys, VSI has been able to benefit from the more than $4.7 million Diomed has spent marketing its EVLT® products and establishing EVLT® brand recognition.

70.    Without doubt, VSI has employed these copycat marketing tactics to foster the very "confusion" concerning the name for the endovenous application of laser energy to treat varicose veins, which is the subject of an article Root wrote especially for the VSI Newsletter, entitled "Endovenous Laser—What's in a Name?"

- 16 -

71.    In that article, Root implies that EVLT would be an appropriate name for all procedures of its kind but concedes that it is the "trademarked product name by Diomed, Ltd., [and] thus not an option for the name of the procedure". (VSI Newsletter at 8).  Root goes on to suggest that "ELT – Endovenous Laser Therapy – the name used by Vascular Solutions for the procedure without trademark protection, so could be used as an industry standard."

### G.    VSI's Marketing Materials Falsely Claim that Diomed's EVLT® Warranty Violates Various Laws

72.    The literature VSI has been using to market its Vari-Lase Kit is a one-page advisory entitled, "Assurance of Compatibility" in which VSI purports to address whether use of the Vari-Lase Kit with laser consoles manufactured by other companies, such as Diomed, will damage, or void the warranty for, those laser consoles.

73.    VSI first lists by name and product number the three most recognized manufacturers of "solid state" laser consoles, the first of which is Diomed, and then claims that "[t]he use of the Vari-Lase procedure kit with any of these laser consoles will not damage the console or result in a different energy transmission or wavelength as compared to the manufacturer's original equipment laser fiber."  VSI does not, however, include any clinical data or results of compatibility testing to verify the accuracy of this claim.

74.    The Assurance of Compatibility then states that:

> If your laser console's salesperson threatens to void the warranty of your laser console or charge you for a service call because you are not using their brand of procedure kit, inform them of your rights.  You have the legal right to choose your supplier of an endovenous laser procedure kit.  *The U.S. Warranty Improvement Act, Section 2392(C) clearly states that it is illegal for the manufacturer to require or force the equipment owner to buy only the O.E.M. brand of supplies.*
>
> Show this letter to anyone who threatens to void your warranty or charge you for a service call because you were not using their brand of endovenous laser procedure kit.  Ask the salesperson to put in writing their threatened course of action, and send it to Vascular Solutions, Inc.

- 17 -

*Such a letter constitutes a clear violation of the Sherman and Clayton Anti-Trust Acts.*

Don't let anyone else make your purchasing decision for you. You have the legal right to select a professional endovenous laser procedure kit with the pricing and service that best suits your needs.

(Assurance of Compatibility, attached hereto as Exhibit 4) (emphasis added).

75.    VSI's "Assurance" is false, inaccurate and intentionally misleading in several key respects.

76.    The referenced section of the "U.S. Warranty Improvement Act" is actually found in the Magnuson-Moss Warranty Improvement Act, which, by its terms, applies only to consumer products, not to commercial products such as Diomed's EVLT® products, which, by law, can only be sold to licensed professionals.

77.    Nor is it accurate to suggest, as VSI has done, that the sales strategy Diomed employs for its EVLT® Kit is "to require or force" its customers to buy only Diomed's EVLT® laser console in "clear violation of the Sherman and Clayton Anti-Trust Acts."

78.    Nor does Diomed refuse to service EVLT® laser consoles that have been used with disposable accessories manufactured by a competitor, including those manufactured by VSI, as VSI claims.  While Diomed's limited warranty does state that it becomes invalid if, among other things, the "Product [i.e., laser console] is used with any fiber other than a new fiber distributed by Diomed", such a provision does not violate any antitrust laws. (Diomed Limited Warranty, attached hereto as Exhibit 5).  Diomed's limited warranty specifically provides that, in such cases, the customer has the option to have its EVLT® laser console repaired by Diomed at its established service rates.

79.    Diomed has specifically designed the laser fibers, sheaths and other disposable accessories in its EVLT® Kit for use with its EVLT® laser to maximize the degree of control and precision afforded the professional in the delivery of laser energy to the affected area, so as

- 18 -

to minimize the risk of damage to surrounding tissues. This risk is nowhere addressed in VSI's Assurance of Compatibility, which focuses solely on equipment usage and warranties, not patient safety.

80.    As the CEO of VSI, Root is charged with oversight responsibility for ensuring the accuracy and lawfulness of the marketing and promotional activities of VSI. As the Publisher of the VSI Newsletter, Root authorized its publication with full knowledge of the misleading content of the articles contained therein.

81.    Root is a graduate of the University of Minnesota law school.  Before joining VSI as its President and CEO, Root practiced corporate law for five years at a national law firm and served as the Vice President and General Counsel to an international medical device manufacturer.  As such, his understanding of the proscription against trademark infringement, trade secret misappropriation, false advertising and other unfair competitive practices is presumed.

**COUNT I**
**MISAPPROPRIATION OF DIOMED'S TRADE SECRETS**
**(Mass. Gen. L. ch. 93 § 42)**

82.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

83.    The confidential and proprietary information Diomed disclosed to Arnold during the course of due diligence concerning the concepts, ideas, techniques, technology, specifications, designs, and other information relating to the improvements Diomed was developing for its next generation EVLT® System, including the addition of markings to the sheath (collectively, the "EVLT® Design Secrets"), and Diomed's business plans and marketing strategies for the Improved EVLT® System, including the timing of the launch of that system

(collectively, the "Marketing Strategies") constitutes trade secret information (collectively, the "Trade Secrets").

84.     Diomed is the exclusive owner of all Trade Secrets.

85.     At all times during the period in which Diomed first conceived of the idea to improve its EVLT® System by adding calibrated markings to the EVLT® Sheath until the time when Arnold disclosed Diomed's Trade Secrets to her current employer (the "Non-Public Period"), Diomed's Trade Secrets were not generally known to persons outside of the limited group of Diomed employees and others who have been afforded authorized access to Trade Secrets for a legitimate business reason, such as Arnold and other Laser Peripheral representatives who were involved in the due diligence (collectively, the "Authorized Recipients").

86.     Each of the Authorized Recipients, including Arnold, was, at all times during the Non-Public Period, and still is, under an express and/or implied duty not to disclose or use Diomed's Trade Secrets to unauthorized recipients such as VSI.

87.     At all times during the Non-Public Period through the present, Diomed has taken reasonable steps to maintain the secrecy of its Trade Secrets and to protect against inadvertent or unauthorized disclosure to third parties, including requiring all Authorized Recipients to sign confidentiality and non-disclosure agreements before access is given.

88.     The Trade Secrets of Diomed were not readily ascertainable by proper means as is evidenced by the fact that of the three companies other than Diomed which currently sell disposable laser accessory products, VSI is the only competitor to have launched a procedure kit containing sheaths that have calibrated markings similar to those found on Diomed's EVLT® Marked Sheath, even though the other two companies had entered the endovenous laser accessory market long before VSI.

- 20 -

89.    By utilizing the Trade Secret information Diomed had disclosed to Arnold in confidence, even after Diomed's CEO had declined Arnold's unsolicited offer to provide distribution services for the EVLT® System, VSI and Arnold willfully and wrongfully misappropriated and used Diomed's Trade Secrets to their economic benefit in violation of the confidential relationship between Diomed and Arnold.

90.    As a result of the defendants' willful misappropriation of Diomed's Trade Secrets, Diomed has been deprived of the full benefits of its ingenuity and substantial investment in developing the Improved EVLT® Kit by being the first to market with its improved products and thereby maintain its competitive edge in the market for the laser treatment of varicose veins. Had Diomed known of the plans VSI has so carefully guarded through veiled public statements, Diomed could have taken action at a time when it could have preserved its competitive edge and accelerated introduction of its improved patent pending Improved EVLT® Kit.

91.    Accordingly, in the interest of promoting the public policies of trade secret protection sanctioned by the courts of the Commonwealth, VSI should be enjoined from manufacturing, selling or otherwise distributing any procedure kits containing marked sheaths until such time as the patent issues on Diomed's patent pending Improved EVLT® Kit, or at a minimum, for a period of at least nine months, as a way of eliminating the competitive advantage VSI has achieved improperly at Diomed's expense and to encourage corporate morality through an injunction's deterrent effect.

92.    Further, during the pendency of the injunction, restrictions should be imposed so that VSI cannot license similar intellectual property from a third party except upon court order.

93.    Diomed is entitled to recover from defendants actual damages in an amount sufficient to prevent defendants from reaping an unjust enrichment as a result of their wrongful actions, with the specific amount to be proven at trial, together with attorneys' fees and costs.

- 21 -

94.    Because the defendants' misappropriation of Diomed's Trade Secrets was willful and deliberate, Diomed is entitled to recover punitive damages pursuant to Mass. Gen. L. ch. 93 § 42.

## COUNT II
### FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114 *et seq.*)

95.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

96.    VSI's wrongful activities, as described above, constitute unauthorized use of a mark confusingly similar to Diomed's EVLT® trademark in interstate commerce.    Unless stopped, VSI's deceptive and unfair marketing strategies are likely to cause confusion, mistake or deception as to the source or origin of the goods, which bear or are marketed in connection with the mark ELT and/or the name "Endovenous Laser Therapy".

97.    Further, VSI's wrongful activities are intended to, and are likely to, lead Diomed's customers, physicians and other industry professionals, and their patients to conclude incorrectly that the procedure kits being offered and distributed by VSI, which bear or are marketed in connection with the infringing ELT mark, originated with, are sponsored by, or are authorized or approved by Diomed, all to the damage and harm of Diomed, its customers, physicians, clinics and other industry professionals and their patients.

98.    VSI's wrongful activities constitute willful and deliberate infringement of Diomed's federally registered EVLT® trademark in violation of 15 U.S.C. § 1114(1).

99.    VSI implemented the above-described product promotion and marketing strategy with full knowledge of Diomed's prior use and superior rights in and to the EVLT® trademark and with previous knowledge of the market reputation of Diomed's registered EVLT® trademark.    Based on the actions of VSI, it is the belief of Diomed that VSI's actions were

- 22 -

undertaken for the willful and calculated purpose of trading upon, and thereby destroying, the goodwill Diomed has established in its EVLT® trademark and for the willful and calculated purpose of distributing infringing goods in reference to the goodwill of Diomed's EVLT® trademark and business reputation in order to mislead and deceive customers, physicians, clinics and other industry professionals.

100.    VSI's wrongful conduct, and the damages resulting to Diomed, are continuing and are likely to continue as evident by VSI's refusal to cease using the ELT mark despite its written statement that it would do so.

101.    Diomed's EVLT® trademark is unique and valuable property which has no readily determinable market value. VSI's wrongful activities have caused and will continue to cause irreparable harm to Diomed, for which Diomed has no adequate remedy at law. Accordingly, Diomed is entitled to injunctive relief as prayed for herein, pursuant to 15 U.S.C. §1116(a).

102.    Diomed also is entitled to recover from VSI, pursuant to 15 U.S.C. §1117, the reasonable attorneys' fees and costs incurred by Diomed in defending its EVLT® marks.

## COUNT III
### FALSE DESIGNATION OF ORIGIN AND PALMING OFF
### (15 U.S.C. § 1125(a))

103.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

104.    By using ELT in connection with services related to goods of the kind manufactured and distributed by Diomed and by reciting results taken from the EVLT® Clinical Studies and then linking it to Endovenous Laser Therapy or ELT, the name VSI has freely admitted it has been using to market its accessory kit, VSI is attempting to induce commercial consumers and their patients to believe mistakenly that VSI's procedure kits originate from, are

- 23 -

sponsored by or are in some way associated with Diomed and its EVLT® Kit and other industry-recognized EVLT® products or that VSI's procedure kit is of the same caliber, quality and specifications of the EVLT® Kit.

105.     Such actions constitute false designations of origin or false descriptions or representations and palming off, and are likely to cause the EVLT® trademarks to lose its significance as an indicator of origin to Diomed.

106.     VSI's actions constitute unfair competition in violation of 15 U.S.C. § 1125(a). For this additional reason, Diomed is entitled to the relief requested in Count II above.

## COUNT IV
### FALSE ADVERTISING
### (15 U.S.C. § 1125(a)(1))

107.     Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

108.     As described in greater detail above, VSI's "Assurance of Compatibility" contains false and misleading statements concerning the terms and legality of the warranty Diomed provides with its EVLT® laser console. The limited warranty and related warranty services Diomed provides with its EVLT® products is a key feature to purchasers in deciding to purchase EVLT® laser consoles.

109.     Given the authoritativeness of the tone of VSI's marketing piece and the (inaccurate) references to specific statutory schemes, the statements contained in the "Assurance of Compatibility" are likely to deceive recipients into believing – incorrectly – that Diomed will not service any EVLT® lasers that have been used with laser fibers other than those sold by Diomed and that Diomed's warranty actually violates the referenced laws.

110.     It is probable that injury to the goodwill of Diomed's EVLT® registered mark and its business reputation will result and that such injury will be irreparable unless VSI is enjoined

from using its "Assurance of Compatibility" and from other false and misleading advertising intended to deceive commercial consumers concerning the products and services sold under the EVLT® mark. Accordingly, Diomed is entitled to an injunction enjoining VSI from using the "Assurance of Compatibility" in connection with the marketing or sale of its products.

## COUNT V
### DEFAMATION AND TRADE LIBEL

111.   Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

112.   The statements VSI has made in the "Assurance of Compatibility" constitute defamation and trade libel *per se*. Specifically, VSI falsely accuses Diomed of violating laws which, as a matter of law, are wholly inapplicable to the sale of commercial products such as the EVLT® System. The "Assurance" also contains false statements about the language of Diomed's limited warranty, which VSI then uses to support the false statement that Diomed has violated or intends to violate the antitrust laws.

113.   By making these false statements, VSI has intentionally prejudiced Diomed by discrediting the business reputation of Diomed and the services it provides in connection with EVLT® products, a reputation which Diomed has worked hard to establish with its customers, physicians and other industry professionals and their patients.

114.   VSI's false statements have caused and will continue to cause Diomed injury to its business reputation for which there is no adequate remedy at law, unless VSI is enjoined from continuing to include in its marketing materials the "Assurance of Compatibility" and from making similar false and intentionally disparaging statements concerning Diomed and the products and services it offers

115.   As further relief for the false statements VSI has made to date, VSI should be required to retract the false statements it made in the "Assurance of Compatibility" by issuing a

- 25 -

public statement for publication in key trade and medical journals, in the next issue of the VSI Newsletter, in VSI's accessory kit product packages, on each web-site sponsored by VSI and at the same venues and in the same manner in which VSI distributed the "Assurance", and by sending a letter to each customer that has received a shipment of VSI's laser equipment, each in a form deemed appropriate by order of this Court.

## COUNT VI
### INJURIOUS FALSEHOOD AND COMMERCIAL DISPARAGEMENT

116. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

117. When VSI decided to use the false statements in the "Assurance of Compatability" in marketing its laser procedure kits, VSI intended those statements to harm the pecuniary interests of Diomed by attempting to sabotage Diomed's established business relationships and by luring away its customers of disposable laser accessories with false accusations that Diomed is violating the law.

118. VSI's actions were undertaken willfully and in reckless disregard for the truth about the absence of any legal violation by Diomed, a fact that was or should have been well-known to VSI's CEO, a law school graduate and former corporate attorney and in-house counsel.

119. For this additional reason, Diomed is entitled to the relief requested in Count V above.

## COUNT VII
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

120. Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

121. As VSI well knows from the confidential information Diomed relayed to Arnold during the course of due diligence, Diomed has expended considerable time and resources

- 26 -

developing a sizeable network of commercial customers that purchase and use the EVLT® products worldwide. Because a large portion of these customers have become regular purchasers of EVLT® products, particularly with respect to the disposable EVLT® Kits, Diomed had a reasonable expectation that those customers would continue to purchase EVLT® products from Diomed in the future.

122.    Diomed also has expended and continues to expend considerable time and resources in marketing efforts intended to expand its existing customer base. Because of the quality and pricing of its EVLT® products, Diomed had a reasonable expectation that some of these prospective customers would purchase EVLT® products.

123.    One of the advantages of purchasing EVLT® products over the products of any competitor, is the limited warranty and related warranty services Diomed provides with its EVLT® products.

124.    At the time VSI began marketing its laser accessory kits with the "Assurance of Compatibility," VSI was well aware of existence and potential economic benefits to be derived from Diomed's existing and prospective customers of its EVLT® products. Since, at that time, VSI did not offer a laser console, it intentionally and improperly embarked on a false smear campaign regarding Diomed's warranty as a tactic for diverting Diomed customers to VSI.

125.    Accordingly, VSI should be enjoined from further interference with Diomed's customer relationships.

## COUNT VIII
### TORTIOUS INTERFERENCE WITH CONTRACT

126.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

127.    When VSI hired Arnold to head up its marketing efforts, VSI knew that that Diomed is one of the largest competitors in the disposable laser accessory kit market for the laser

- 27 -

treatment of varicose veins. As is evident from the call Arnold placed to Diomed's CEO shortly after she became heading of marketing for VSI, VSI also knew that Arnold, in her capacity as the former President of Laser Peripherals, was involved in the due diligence conducted in connection with the potential acquisition of Laser Peripherals and in that capacity, would have been given access to confidential information, such as Diomed's EVLT® Design Secrets and EVLT® Marketing Plans.

128.    VSI also knew or should have known, and in any event should be imputed to have known, that Arnold was bound by a confidentiality agreement of the type memorialized in the letter of intent and Diomed-LP NDA and of the contract of confidentiality that arose by implication from the nature of the relationship of Arnold, her former employer, and Diomed during the course of due diligence.

129.    When Diomed rejected Arnold's proposal that VSI become the distributor of Diomed's EVLT® products, VSI decided that it could achieve the same end result by intentionally and improperly interfering with the confidentiality agreement between Diomed and Arnold by soliciting and receiving information concerning Diomed's Trade Secrets and marketing plans.

130.    As a result of VSI's tortious interference with Diomed's existing and contractual relations with Diomed's customers and with Diomed's confidentiality agreement with Arnold, Diomed has suffered and will continue to suffer injury to its business relations, its property and its reputation, standing and competitive position in the marketplace. For this additional reason, Diomed is entitled to the relief set forth in Counts I and V above.

- 28 -

## COUNT IX
### BREACH OF NONDISCLOSURE AGREEMENT
### AGAINST NANCY L. ARNOLD

131.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

132.    By signing the letter of intent individually and in her representative capacity, Arnold expressly agreed to continue to observe her obligations under the Diomed-LP NDA not to make unauthorized disclosures of Diomed's Trade Secrets and to use such information solely for the purpose of assisting her former employer in assessing whether to pursue a transaction with Diomed.

133.    Once the parties decided not to proceed with the acquisition, Arnold no longer had any right to use any of the Trade Secrets Diomed had disclosed to her or to her employer in confidence.    What is more, Arnold's obligation not to make unauthorized disclosures of Diomed's Confidential Information expressly survived the termination of the letter of intent.

134.    Arnold also was bound by the agreement she made with Diomed's former CEO that she would treat as Confidential Information the highly confidential disclosures he made to her concerning Diomed's on-going development of, and marketing plans for, the Improved EVLT® System and in particular, the EVLT® Marked Sheath.    From the circumstances surrounding that disclosure, as well as the other disclosures Diomed made concerning its Trade Secrets during the course of due diligence, Arnold knew that the information was being provided to her with the expectation that it would not be disclosed to third parties.    By accepting receipt of Diomed's Trade Secrets, all of which were provided to her pursuant to the Diomed-LP NDA, were marked confidential or were provided to her with the express understanding that they would not be disclosed to third parties, Arnold manifested her agreement not to disclose any such information to third parties without Diomed's consent.

- 29 -

135.    As is evident from the actions of VSI after Arnold was told that Diomed was not interested in having VSI be a manufacturer or distributor of EVLT® products and from the similarity between the features of Diomed's EVLT® Kit and the one VSI has recently launched, Arnold breached her confidentiality agreement with Diomed by making unauthorized disclosures to VSI concerning Diomed's on-going development of, and marketing plans for, the Improved EVLT® System, including the EVLT® Marked Sheath.

136.    As a result of Arnold's breach of her duty of confidentiality, Diomed has suffered substantial injury to its business, property and standing and competitive position in the marketplace.

137.    As a corporate insider and a willing participant in the misappropriation of Diomed's Trade Secrets, Arnold, like her employer, has been unjustly enriched by their unauthorized use.  For this additional reason, Diomed is entitled to recover from Arnold, jointly and severally, the damages set forth in Count I above.

## COUNT X
### FEDERAL AND COMMON LAW UNFAIR COMPETITION

138.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

139.    Since September 2002, when Diomed declined to accept VSI's offer to manufacture and distribute Diomed's EVLT® products, VSI and Arnold have engaged in a willful and wrongful course of conduct which constitutes unfair competition under 15 U.S.C. § 1125(a) and the common law of the Commonwealth of Massachusetts by:

    a.    misappropriating Diomed's Trade Secrets and intentionally concealing that improper use until VSI was assured of being the first to market with technology similar to Diomed's EVLT® Marked Sheath;

- 30 -

    b.      infringing Diomed's registered EVLT® mark;

    c.      marketing VSI products in a way designed to confuse consumers as to the source and origin of VSI products and/or their association with Diomed's EVLT® products and services;

    d.      making false and defamatory statements about Diomed and its warranty;

    e.      tortiously interfering with Diomed's existing and prospective customer relationships; and

    f.      tortiously interfering with the confidentiality agreement between Arnold and Diomed by soliciting and using information Arnold was not authorized to disclose to VSI or any other third party.

140.    Defendants' unfair competition has directly and/or proximately caused significant foreseeable and consequential harm to Diomed as described in detail hereinabove.

141.    As a result, Diomed has been injured in its business and property. Accordingly, Diomed is entitled to the relief requested herein.

142.    Because VSI has demonstrated a willingness to proceed in disregard of the rights of Diomed and to engage in deceptive conduct designed to keep Diomed from learning of VSI's wrongful use of Diomed's Trade Secrets, an order should issue appointing a monitor to ensure compliance with this Court's order.

## COUNT XI
### ACCOUNTING

143.    Diomed repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

144.    Pursuant to 15 U.S.C. § 1117 and common law, Diomed is entitled to recover the greater of any and all profits derived by the defendants or the actual damages Diomed has sustained, as a result of defendants' wrongful acts.

145.    The amount of profits derived by defendants is unknown to Diomed and cannot be ascertained without a full accounting of all net sales of the VSI procedure kits, together the profits or other remuneration defendants have made on all such sales, including all licensing fees, and any bonus, incentive compensation or other remuneration Arnold has received or is expected to receive as a result of such sales.

## COUNT XII
### UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER MASS. GEN. L. CH. 93A

146.    Plaintiffs hereby repeat the allegations set forth in the paragraphs above as if fully set forth herein.

147.    Defendants are, and were at all relevant times, engaged in commerce.

148.    While defendants' acts and/or omissions described herein occurred in a variety of locations both nationwide and worldwide, their impact was felt on Diomed, a Massachusetts-based company, such that their center of gravity is primarily and substantially in the Commonwealth.

149.    Defendants' acts and/or omissions as described hereinabove, constituted unfair and deceptive acts and practices in violation of Mass. Gen. L. ch. 93A.

150.    Defendants' acts and/or omissions were, as described hereinabove, were willful and knowing.

### PRAYER FOR RELIEF

WHEREFORE, Diomed respectfully requests that this Court enter a judgment granting Diomed the following relief:

- 32 -

1.    Requiring defendants to provide Diomed with a full and complete accounting of all net sales of VSI procedure kits, together with an accounting of all profits and other remuneration defendants have derived, or expect to derive, from the sale of the VSI procedure kits;

2.    Directing defendants to pay, jointly and severally, damages in an amount not less than the greater of (a) the losses Diomed has suffered as a result of defendants' misappropriation of Diomed's trade secrets; or (b) the profits defendants have made from the sale of the VSI kits;

3.    Awarding Diomed punitive damages as a deterrent to future unfair and deceptive practices;

4.    Issuing an injunction enjoining VSI and each of its officers, directors, employees and other agents (collectively, the "VSI Entities") from manufacturing, marketing, selling or distributing developing, and distributing any procedure kits containing marked sheaths at least until the patent has issued on Diomed's Improved EVLT® Sheath or, at a minimum, for a period of at least nine months, as a deterrent against future unfair competitive practices (the "Injunction");

5.    During the pendency of the Injunction, prohibiting each of the VSI Entities from entering into any licensing agreement with any third party for the manufacturing, marketing, sale or distribution of a substitute procedure kit, except upon such terms and conditions as may be approved by this Court after notice to Diomed;

6.    Issuing a permanent injunction enjoining each of the VSI Entities from:

    a.    using ELT or Endovenous Laser Therapy in connection with the sale of any product or service sold or offered by VSI or otherwise linking them with EVLT® or the EVLT® Clinical Studies;

    b.    using any false designation of origin or false description which can or is likely to lead Diomed's customers, physicians or other industry professionals, or the public

- 33 -

to believe mistakenly that any product or service sold or offered by VSI has been sponsored, authorized or approved by Diomed as meeting the quality and physical properties associated with Diomed's EVLT® products, including without limitation, the use of any aspect of the EVLT® Clinical Studies in manner which suggests that the results described therein pertain in any way to VSI or any of it products;

    c.  using any false advertising in connection with any products or services offered or sold by VSI concerning Diomed, its warranty or any of Diomed's EVLT® products, including without limitation the "Assurance of Compatibility";

    d.  interfering with Diomed's existing and prospective customers; and

    e.  assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities prohibited in subparagraph a-d above;

7.    Requiring VSI to retract the false statements it made in the "Assurance of Compatability" by issuing a public statement for publication in key trade and medical journals, in the VSI Newsletter, in the accessory kit product packages, on VSI's web-site and at the same venues and in the same manner in which VSI distributed the "Assurance", and by sending a letter to each customer that has received a shipment of VSI's laser equipment, each in a form deemed appropriate by order of this Court after notice to Diomed;

7.    Appointing a monitor to ensure VSI's compliance with the foregoing;

8.    Requiring defendants to pay, jointly and severally, all reasonable attorneys' fees, expenses and costs incurred by Diomed in this action;

9.    Requiring defendants to pay Diomed multiple damages as permitted by law, including treble damages pursuant to Mass. Gen. L. ch. 93A; and

10.    Such other and further relief as the Court deems just and appropriate.

- 34 -

Dated: December 11, 2003

Respectfully submitted,

Michael A. Albert (BBO #558566)
James J. Foster (BBO #553285)
Michael N. Rader (BBO #646990)
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 720-3500

*Attorneys for Plaintiffs Diomed Inc.,*
*Diomed Holdings Inc. and Diomed Limited*

Of Counsel:

Hollis Gonerka Bart
McGuireWoods LLP
65 E. 55th Street
New York, New York 10022
(212) 421-5555

- 35 -