IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANGIODYNAMICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DIOMED HOLDINGS, INC,<br><br>Defendant. | C. A. No. 06-002 (GMS) |

**REPLY BRIEF IN SUPPORT OF DIOMED'S
MOTION TO DISMISS AND ANSWERING BRIEF IN
OPPOSITION TO ANGIODYNAMICS' MOTION TO AMEND**

OF COUNSEL:

Michael A. Albert
malbert@wolfgreenfield.com
Michael N. Rader
mrader@wolfgreenfield.com
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

Dated: February 21, 2006

Frederick L. Cottrell III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King St.
Wilmington, DE 19801
(302) 651-7700

*Counsel for Defendant
Diomed Holdings, Inc.*

## Table of Contents

Table of Authorities .................................................................................................................. ii

INTRODUCTION ...................................................................................................................... 1

UNDISPUTED FACTS .............................................................................................................. 2

I.   Diomed Never Threatened AngioDynamics on the Patents-In-Suit ......................... 2

II.  Diomed's Press Release Is Irrelevant to Declaratory Judgment Jurisdiction ........... 2

ARGUMENT ............................................................................................................................... 3

I.   AngioDynamics' Remaining Contention .................................................................. 3

II.  The Totality of the Circumstances Shows
     No Reasonable Apprehension of Suit ....................................................................... 3

III. The Motion to Amend Should Be Denied as Futile ................................................ 11

CONCLUSION .......................................................................................................................... 14

## Table of Authorities

**Cases**

Akzo N.V. v. U.S. Int'l Trade Comm'n,
    808 F.2d 1471 (Fed. Cir. 1986) ..... 12

Allen-Bradley Co. v. Autotech Corp.,
    1990 WL 16453 (N.D. Ill. Feb. 8, 1990) ..... 13

Aralac v. Hat Corp. of America,
    166 F.2d 286 (3d Cir. 1946) ..... 8

Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,
    846 F.2d 731 (Fed. Cir. 1988) ..... 8

Bayer Healthcare LLC v. Abbot Labs.,
    2004 WL 2862267 (D. Del. Dec. 10, 2004) ..... 12

Citizen Elecs. Co., Ltd. v. Osram GMBH,
    377 F. Supp. 2d 149 (D.D.C. 2005) ..... 10

Cygnus Therapeutics Systems v. Alza Corp.,
    92 F.3d 1153 (Fed. Cir. 1996) ..... 7

Dr. Reddy's Labs. Ltd. v. aaiPharma, Inc.,
    66 U.S.P.Q. 2d 1878 ..... 8

DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc.,
    148 F. Supp. 2d 412 (D. Del. 2001) ..... 5

DuPont Merck Pharm. Co. v. Bristol-Myers Squib Co.,
    62 F.3d 1397 (Fed. Cir. 1995) ..... 7

E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp.,
    383 F. Supp. 2d 642 (D. Del. 2005) ..... 10

Elecs. for Imaging, Inc. v. Coyle,
    394 F.3d 1341 (Fed. Cir. 2005) ..... 7

Foman v. Davis,
    371 U.S. 178 (1962) ..... 12

Gen-Probe, Inc. v. Vysis, Inc.,
    359 F.3d 1376 (Fed. Cir. 2004) ..... 3

Goodyear Tire & Rubber Co. v. Releasomers, Inc.,
    824 F.2d 953 (Fed. Cir. 1987) ..... 4, 5, 6

RLF1-2983134-1

Indium Corp. of Am. v. Semi-Alloys, Inc.,
    781 F.2d 879 (Fed. Cir. 1985) ................................................................................. 6

Indium Corp. of Am. v. Semi-Alloys, Inc.,
    566 F. Supp. 1344 (N.D.N.Y. 1983) ....................................................................... 6

Life Techs., Inc. v. Clontech Labs., Inc.,
    224 F.3d 1320 (Fed. Cir. 2000) ............................................................................. 12

Nippon Elec. Glass Co., Ltd. v. Sheldon,
    489 F. Supp. 119 (S.D.N.Y. 1980) ......................................................................... 8

O'Hagins, Inc. v. M5 Steel Mfg, Inc.,
    276 F. Supp. 2d 1020 (N.D. Cal. 2003) .................................................................. 9

Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,
    57 F.3d 1051 (Fed. Cir. 1995) ................................................................................. 7

Samsung Elecs. Co. v. Texas Instruments, Inc.,
    39 U.S.P.Q. 2d 1673 (N.D. Tex. 1996) ................................................................. 13

Shell Oil Co. v. Amoco Corp.,
    970 F.2d 885 (Fed. Cir. 1992) ..................................................................... 2, 6, 7, 8

Sirius Satellite Rsch., Inc. v. Acacia Rsch. Corp.,
    2006 U.S. Dist. Lexis 3900 (S.D.N.Y. Jan. 30, 2006) ..................................... 10, 11

Teva Pharms. USA, Inc. v. Pfizer,
    395 F.3d 1324 (Fed. Cir. 2005) ........................................................................ 9, 10

Treemond Co. v. Schering Corp.,
    122 F.2d 702 (3d Cir. 1941) .................................................................................... 8

True Center Gate Leasing, Inc. v. Sonoran Gate, LLC.,
    402 F. Supp. 2d 1093 (D. Ariz. 2005) ................................................................... 10

Vanguard Research Inc. v. PEAT, Inc.,
    304 F.3d 1249 (Fed. Cir. 2002) .......................................................................... 5, 6

Vermeer Mfg. Co. v. Deere & Co.,
    379 F. Supp. 2d 645 (D. Del. 2005) ........................................................................ 5

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................... 11, 13

## INTRODUCTION

AngioDynamics' answering brief has narrowed the issues before the Court.

First, the parties agree that Diomed never expressly threatened AngioDynamics with suit. Accordingly, AngioDynamics must show that Diomed's actions gave rise to an objectively reasonable apprehension of suit under the "totality of the circumstances" test that applies in the absence of any direct threat.

Second, only two of Diomed's three acts identified in AngioDynamics' complaint remain for consideration under this test. By failing to discuss the third act – Diomed's issuance of a press release merely indicating that the Patent Office had issued a notice of allowance for the '971 patent application – AngioDynamics concedes that it is irrelevant.

The remaining facts are not in dispute, and the question of declaratory judgment jurisdiction is one of law for the Court. It is AngioDynamics' burden to establish that declaratory judgment jurisdiction exists here. On the facts of this case, it cannot possibly carry that burden.

Indeed, AngioDynamics admits in its answering brief that it does *not* fear imminent litigation on the patents-in-suit as required for jurisdiction to attach. While AngioDynamics has no legitimate basis on which to fear a lawsuit on the '971 or '776 patents either now *or* in the future, the admission that – at the very least – legal action is not imminent independently requires that this case be dismissed.

In response, AngioDynamics advances an argument that is wrong as a matter of law. Namely, AngioDynamics claims that reasonable apprehension of an imminent suit is *not* required for declaratory judgment jurisdiction. Just last year, the Federal Circuit expressly rejected this argument. Numerous district courts (including this District) have done the same. This case should be dismissed.

## UNDISPUTED FACTS

I. **Diomed Never Threatened AngioDynamics on the Patents-In-Suit.**

As noted in Diomed's opening brief (D.I. 9 at 3), an explicit threat of litigation by a patentee can create an objectively reasonable apprehension of suit. Absent such a threat, jurisdiction is evaluated on the "totality of the circumstances." E.g., Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed. Cir. 1992) ("Since Amoco's conduct falls short of an express charge of infringement, we must look to the totality of the circumstances.").

In its Amended Complaint, AngioDynamics identified three acts by Diomed in support of its allegation that declaratory judgment jurisdiction exists here: (1) a press release announcing the Patent Office's allowance of the '971 patent application; (2) a passing comment in an investor conference call that AngioDynamics was offering a product "embraced by" that application; and (3) a prior lawsuit on a different and unrelated Diomed patent. (D.I. 4 at ¶¶ 19-24, 31).

In its opening brief, Diomed explained that none of these acts constitute an explicit threat to sue. (D.I. 9 at 4-7).

In its answering brief, AngioDynamics concedes the point. (D.I. 11 at 3). Accordingly, AngioDynamics must argue that Diomed's activities give rise to an objectively reasonable apprehension of suit under the "totality of the circumstances" test that applies in the absence of any direct threat.

II. **Diomed's Press Release Is Irrelevant to Declaratory Judgment Jurisdiction.**

AngioDynamics also concedes that one of the three acts identified in its Amended Complaint – the Diomed press release announcing the Patent Office's allowance of the '971 patent application – is irrelevant to the creation of any apprehension of suit.

Diomed explained this in its opening brief. (D.I. 9 at 9). Indeed, Diomed is unaware of any court that has considered such a generic announcement at all relevant to evaluating the existence of declaratory judgment jurisdiction.

Conceding the point, AngioDynamics bases its totality of the circumstances argument solely on (1) the existence of prior litigation between the parties; and (2) the comment during Diomed's investor conference call that AngioDynamics' product was "embraced by" the pending '971 patent application. (D.I. 11 at 14-16).

## ARGUMENT

### I. AngioDynamics' Remaining Contention

AngioDynamics' concessions have narrowed the issue for decision by the Court. Both parties agree that Diomed never issued an express threat, and both agree that the Diomed press release merely announcing the allowance of the '971 patent application is irrelevant to declaratory judgment jurisdiction.

The remaining question, therefore, is whether prior litigation between the parties, coupled with a passing statement to investors that AngioDynamics' product is "embraced by" one of the patents-in-suit, is sufficient to create declaratory judgment jurisdiction on the totality of the circumstances. It is not.

### II. The Totality of the Circumstances Shows No Reasonable Apprehension of Suit.

Because the declaratory judgment jurisdiction inquiry is a fact-specific exercise, it is particularly important that courts "evaluate the totality of the circumstances *in light of precedent*" to evaluate whether an objectively reasonable apprehension of suit exists. Gen-Probe, Inc. v. Vysis, Inc., 359 F.3d 1376, 1380 (Fed. Cir. 2004) (emphasis added).

Federal Circuit precedent establishes that the *sine qua non* of declaratory judgment jurisdiction is an indication not only that the patentee believes its patent has been infringed, *but that it will take legal action in light of that belief.* (D.I. 9 at 10-11).

Prior patent and trade secret litigation can sometimes be relevant to determining whether this condition is satisfied. However, the Federal Circuit has *never* found prior litigation sufficient to establish declaratory judgment jurisdiction over a new patent – no matter how aggressive or prolonged that prior litigation was – absent either (1) a threatening communication raising the specter of legal action over the new patent; or (2) interference by the patentee with the declaratory plaintiff's customer relations.

Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953 (Fed. Cir. 1987), cited by AngioDynamics, is illustrative. During negotiations related to prior litigation on the same technology, Releasomers "not only informed Goodyear of the allowance of the [new] patents, but also made innuendos that could reasonable have led Goodyear to believe that Releasomers would bring an infringement action." Id. at 956. Releasomers indicated that when the patents-in-suit issued, the parties "would have to talk about infringement of the patents by Goodyear" and "might wind up in Federal Court." Id. at 956 n.5.

Moreover, at oral argument before the Federal Circuit, Releasomers' counsel conveyed that he had "no hesitation whatsoever of bringing about a lawsuit." Id. at 956.

The passing statement by Diomed *to its own investors* that AngioDynamics' product was "embraced by" Diomed's pending '971 patent application is a far cry from a direct communication *from Releasomers to Goodyear* that Goodyear (1) infringed, and (2) had to come to terms or else "the parties might wind up in Federal Court" – let alone (3) an affirmation by Releasomers' counsel in open court that it would not hesitate to sue.

- 4 -

RLF1-2983134-1

- 5 -

Goodyear does not support the proposition that merely taking note of a technology "embraced" by a patent (let alone a pending patent application) – even in light of prior litigation – can subject the patentee to a declaratory judgment suit. Conveying the requisite intent to act on the potential infringement requires significantly more than such a passing statement. This is particularly true when a patentee makes statements to its own investors and *not* to the declaratory plaintiff or its customers.

Vanguard Research Inc. v. PEAT, Inc., 304 F.3d 1249 (Fed. Cir. 2002), is similarly unhelpful to AngioDynamics. In that case the patentee (PEAT) communicated directly to Vanguard that Vanguard "no longer had the right" to practice technology encompassed by PEAT's intellectual property. Id. at 1254-55. It also repeatedly informed Vanguard's customers that Vanguard was using PEAT's technology without a license. Id. The Federal Circuit concluded that these threats, combined with an earlier trade secret lawsuit directed to the same technology, were sufficient to create a reasonable apprehension of suit. Id.

Absent a direct threat to sue, this Court has held – consistent with Vanguard – that a patentee can trigger declaratory judgment jurisdiction *only if* it either (1) interferes with the declaratory plaintiff's customer relations, or (2) exhibits a pattern of suit *on the specific patent at issue in the declaratory judgment action*. Vermeer Mfg. Co. v. Deere & Co., 379 F. Supp. 2d 645, 649-50 (D. Del. 2005); DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc., 148 F. Supp. 2d 412, 415 (D. Del. 2001). Diomed has done neither of these things, as AngioDynamics is forced to concede through silence.[1]

---

[1] AngioDynamics' answering brief fails to address Vermeer, DuPont and the standard articulated by this Court in those cases.

It is undisputed that there has been no interference whatsoever with AngioDynamics' customer relations. Indeed, the sole statement at issue was directed to Diomed's own investors. (D.I. 9 at 8).[2] There also has been no direct communication of any sort between Diomed and AngioDynamics on the patents-in-suit, unlike Vanguard and Goodyear, both of which involved such direct communication.

Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879 (Fed. Cir. 1985), which AngioDynamics failed to address in its answering brief, presents facts considerably closer to those of this case than either Goodyear or Vanguard. The patentee Semi-Alloys had a history of asserting *the same patents at issue in the declaratory judgment action*,[3] and had sued Indium in state court for its hiring of Semi-Alloys' chief engineer, and had emphasized that Indium needed a license under the patents. Id. at 883. Statements made in the licensing context are inherently susceptible to being perceived as direct threats because the natural alternative to an accused infringer taking a patent license is the filing of an infringement lawsuit. Shell, 970 F.2d at 889.

Despite all of these factors, the Federal Circuit held that "a mere offer of a license [is] not in itself, *or taken together with the litigation history*, a sufficient basis for declaratory jurisdiction." Indium, 781 F.2d at 883 (emphasis added). *A fortiori*, Diomed's passing observation, to its own investors, that AngioDynamics' product was "embraced" by a pending patent application, is insufficient to establish declaratory judgment jurisdiction.

---

[2] Indeed, it is telling that even the proposed second amended complaint lacks *any* reference to AngioDynamics' customers.

[3] See Indium Corp. of Am. v. Semi-Alloys, Inc., 566 F. Supp. 1344, 1346 (N.D.N.Y. 1983).

Indeed, the Federal Circuit has repeatedly held that statements akin to the "embraced by" language used by Diomed's CEO in the investor conference call do *not* engender an objectively reasonable apprehension of suit as required (even when they are made directly to the declaratory judgment plaintiff, which was not the case here). E.g., Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1052 (Fed. Cir. 1995) (direct statement in letter to Phillips that accused products were "covered by" Kato's patent); Shell, 970 F.2d at 886-87 (direct statements in letters to Shell that accused product "fell within" and was "covered under" Amoco's patent). When such a statement is made in passing during an investor conference call (*not* in a communication to the declaratory plaintiff),[4] it certainly cannot support declaratory judgment jurisdiction.

AngioDynamics cites no authority to the contrary. AngioDynamics' cases involve statements far stronger than the "embraced by" language at issue here. In almost every case, moreover, the threatening statement was made directly to the declaratory plaintiff or its customers:

- Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1344 (Fed. Cir. 2005) (patentee warned that it would "bring multiple lawsuits," "drive [you] out of business," and "sue all of your customers" – and even identified specific attorneys and law firms assigned to carry out these threats).

- DuPont Merck Pharm. Co. v. Bristol-Myers Squibb Co., 62 F.3d 1397, 1401 (Fed. Cir. 1995) (noting that "Bristol-Myers has *threatened to bring patent infringement suits* against generic drug manufacturers who attempt to market their products during the Delta period" and that Bristol-Myers had specifically sent a letter to DuPont concerning the patent at issue) (emphasis added).

---

[4] AngioDynamics is wrong in claiming that, in Cygnus Therapeutics Sys. v. Alza Corp., 92 F.3d 1153 (Fed. Cir. 1996), the Federal Circuit "never discusses the issue of the statement being made to a party other than the plaintiff." (D.I. 11 at 18). To the contrary, the court specifically observed that Alza's statements "were either made in the setting of licensing discussions ... or *in response to a third party query* (the question at the Hambrecht and Quist Healthcare Conference)." Cygnus Therapeutics, 92 F.3d at 1160 (emphasis added).

- Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 733 (Fed. Cir. 1988) (Ecolochem directly accused Arrowhead of "unauthorized" practices and emphasized its willingness to engage in "*federal patent infringement litigation*"; Ecolochem's letter to Arrowhead's customer accused Arrowhead of "*direct patent infringement*") (emphasis added).

- Dr. Reddy's Labs. Ltd. v. aaiPharma, Inc., 66 U.S.P.Q. 2d 1878, 1881 (S.D.N.Y. 2002) (statement by patentee's CEO that if "generic companies refuse to pay ... *I think there is a threat of a lawsuit*") (emphasis added).

- Nippon Elec. Glass Co., Ltd. v. Sheldon, 489 F. Supp. 119, 121 (S.D.N.Y. 1980) ("[T]he parties agree that the letters of defendant's counsel to plaintiff's customers constituted *allegations of direct infringement by them of defendant's patents*.") (emphasis added).[5]

Diomed is unaware of any case – and AngioDynamics has cited none – in which a court has found a passing statement regarding patent coverage to support declaratory judgment jurisdiction.

Prior litigation between the parties does not change this, particularly where (as here) that litigation pertains to a different and unrelated patent. AngioDynamics admits that the patents-in-suit are unrelated to the patent being litigated by the parties in Massachusetts. (D.I. 11 at 14) ("[T]he Boston patent is not directly related to either of the Marked Sheath Patents.").

---

[5] AngioDynamics' two 60-year-old Third Circuit decisions are unhelpful to it. The first, Aralac, Inc. v. Hat Corp. of America, 166 F.2d 286 (3d Cir. 1948) supports Diomed. In that case the Third Circuit affirmed dismissal of the declaratory judgment claim for lack of jurisdiction *despite* threats to the declaratory plaintiff's customers. Id. at 297. The second, Treemond Co. v. Schering Corp., 122 F.2d 702 (3d Cir. 1941) is distinguishable from the case at bar because the patentee threatened the declaratory plaintiff's customers with suits for contributory infringement if they purchased the plaintiff's products. Id. at 705. Such interference with customer relations is completely absent here, as discussed above. In any event, Third Circuit authority is inapposite because Federal Circuit law, not the law of the regional circuit, applies to the issue of declaratory judgment jurisdiction. (D.I. 9 at 3) (citing Shell, 970 F.2d at 888 n.4).

- 8 -

AngioDynamics has suggested that the various Diomed patents are addressed to the same general technical field. Even if true, this is irrelevant. To paraphrase one of the decisions cited in Diomed's opening brief, AngioDynamics "has cited to no authority standing for the proposition that the mere similarity of certain patents to a patent-in-suit suffices to establish a reasonable apprehension of suit on those patents." O'Hagins, Inc. v. M5 Steel Mfg., Inc., 276 F. Supp. 2d 1020, 1025 (N.D. Cal. 2003). AngioDynamics fails to address O'Hagins in its answering brief.

In short, the facts alleged here by AngioDynamics do not approach the threshold established by Federal Circuit and district court precedent for an "objectively reasonable apprehension of suit" under the totality of the circumstances.[6]

Finally, AngioDynamics invites legal error when it repeatedly requests (D.I. 11 at 3, 12, 16, 17-18) that this Court ignore the Federal Circuit's guidance in its recent declaratory judgment decision, Teva Pharm. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324 (Fed. Cir. 2005), that a declaratory plaintiff must reasonably apprehend not just litigation, but "*imminent*" litigation. Id. at 1333 (emphasis supplied by the Federal Circuit).

In urging this Court to disregard the imminence requirement, AngioDynamics adopts the argument rejected not only by the Teva panel, see id. at 1338 (rejecting argument that the "imminent threat of suit" is unnecessary) but by the full Federal Circuit in denying rehearing and rehearing *en banc*. See, Teva, 405 F.3d at 996 (Fed. Cir. 2005) (dissent argued unsuccessfully that precedent lacks "support for a reasonable apprehension of imminent suit requirement").

---

[6] It is unclear why AngioDynamics represented in its answering brief that Diomed's opening brief "skirts the requirement of considering the totality of the circumstances" in addition to direct threats of suit. (D.I. 11 at 2). Pages 7 through 13 of Diomed's opening brief directly address that very issue in considerable detail. (D.I. 9 at 7-13).

The Federal Circuit explicitly held that imminence is a *constitutional requirement*, see Teva, 395 F.3d at 1333 ("This requirement of imminence reflects the Article III mandate."), and rejected the suggestion, advanced by AngioDynamics in its answering brief (D.I. 11 at 17), that the imminence requirement is somehow limited to ANDA pharmaceutical cases. See id. at 1338 (holding that the "reasonable apprehension of suit test ... remains in place under the Medicare Amendments").

Subsequent district courts considering the issue – including this Court – have repeatedly confirmed that the imminent suit requirement *is* the law, and is in no way limited to ANDA cases. E.g., Sirius Satellite Research, Inc. v. Acacia Research Corp., 2006 U.S. Dist. Lexis 3900, at *17 (S.D.N.Y. Jan. 30, 2006)[7] (citing Teva: "The Federal Circuit has expressly held ... that the fact that a patentee has aggressively asserted its patent rights against other alleged infringers is not sufficient to create a reasonable apprehension of imminent litigation."); True Center Gate Leasing, Inc. v. Sonoran Gate, LLC., 402 F. Supp. 2d 1093, 1097 (D. Ariz. 2005) (citing Teva: "The Federal Circuit recently has made clear that the declaratory plaintiff must have not only a reasonable apprehension of an infringement suit, but of an "imminent" infringement suit."); E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp., 383 F. Supp. 2d 642, 647 (D. Del. 2005) ("DuPont must be able to demonstrate that it has a reasonable apprehension of *imminent* suit.") (emphasis added); Citizen Elecs. Co., Ltd. v. Osram GMBH, 377 F. Supp. 2d 149, 152 (D.D.C. 2005) (citing Teva: "As recently explained by the Federal Circuit, a plaintiff must be able to demonstrate that it has a reasonable apprehension of imminent suit.").

---

[7] Unreported cases are attached hereto as Exhibit A.

- 10 -

AngioDynamics concedes that it does not expect an imminent lawsuit from Diomed on either of the '971 or '776 patents. Rather, AngioDynamics believes that Diomed is holding those patents "in reserve" in case it loses the Massachusetts litigation:

> [S]hould Diomed lose that case, it will still have another bomb to drop on AngioDynamics by alleging that VenaCure infringes the Marked Sheath patents [the patents-in-suit here]. Thus, by delaying any suit relating to infringement of the Marked Sheath Patents, Diomed can conceivably embroil AngioDynamics in litigation over VenaCure for years to come, and can strategically institute suit on the Marked Sheath Patents when it is convenient for Diomed.

(D.I. 11 at 21-22).

In point of fact, AngioDynamics has no basis on which to fear even a later suit on the '971 or '776 patents, because Diomed has never indicated any intention whatsoever to enforce them against any party, let alone AngioDynamics.

Regardless, AngioDynamics' admission that it does not fear a suit on either patent at least until the Massachusetts litigation concludes (many months from now), requires dismissal of this case for the independent reason that any apprehension of suit clearly is not imminent. See Sirius, 2006 U.S. Dist. Lexis 3900 at *20-21 (no declaratory judgment jurisdiction where declaratory plaintiff did not fear suit within the next 30 days).

### III.    The Motion to Amend Should Be Denied as Futile.

Conceding that its original complaint and first amended complaint named the wrong party and failed to meet the requirements of Fed. R. Civ. P. 9(b) for inequitable conduct, AngioDynamics requests leave to amend its complaint for a second time. The motion should be denied because amendment would be futile.

RLF1-2983134-1

**First and foremost,** for the reasons discussed above, the Court lacks declaratory judgment jurisdiction over this case. Nothing in AngioDynamics' proposed second amended complaint addresses this deficiency. It would be futile to allow the amendment because the new pleading would fail to establish jurisdiction for the same reasons. Foman v. Davis, 371 U.S. 178, 182 (1962).

**Second,** AngioDynamics' new pleading for inequitable conduct is based entirely on the discredited theory that Diomed "mischaracterized" information that *Diomed itself* brought to the Patent Examiner's attention during prosecution of the patents-in-suit (specifically, the VNUS RF Closure Catheter System).

The claim is doomed to failure. Had Diomed wished to deceive the Patent Examiner regarding the VNUS product, surely Diomed would not have brought that very product to the Examiner's attention. Diomed cannot plausibly be alleged to have "hidden the ball." See, e.g., Life Techs., Inc. v. Clontech Labs., Inc., 224 F.3d 1320, 1326 (Fed. Cir. 2000) (reversing inequitable conduct holding: "[I]n making the argument, the inventors merely advocated a particular interpretation of the teachings of the Johnson article and the level of skill in the art, which the Examiner was free to accept or reject."); Akzo N.V. v. U.S. Int'l Trade Comm'n, 808 F.2d 1471, 1482 (Fed. Cir. 1986) ("The mere fact that DuPont attempted to distinguish the Blades process from the prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion regarding the Blades process based on the art in front of him."); Bayer Healthcare LLC v. Abbot Labs., 2004 WL 2862267, at *2 (D. Del. Dec. 10, 2004) (granting summary judgment for patentee: "in cases where all the pertinent information was available to the examiner, the defendant's inequitable conduct defense may *fail as a matter of law for lack of materiality*") (emphasis added).

What is more, even AngioDynamics' revised inequitable conduct claim is pled impermissibly on information and belief. "Where the allegations in the complaint are based 'on information and belief,' the general rule is that such allegations do not satisfy the particularly requirements of Fed. Rule 9(b)." Allen-Bradley Co. v. Autotech Corp., 1990 WL 16453, at *1 (N.D. Ill. Feb. 8, 1990) (dismissing inequitable conduct claim).

Because AngioDynamics' inequitable conduct claim fails as a matter of law, it would be futile to permit the requested amendment.

**Third,** AngioDynamics' revised pleading provides no further indication of any basis whatsoever for its claim that Diomed's patents are invalid. In its opening brief, Diomed cited several cases holding that merely reciting a "laundry list" of statutory sections under which patents *can* be held invalid is insufficient. In response, AngioDynamics cites just one decision, Samsung Elecs. Co. v. Texas Instruments, Inc., 39 U.S.P.Q. 2d 1673 (N.D. Tex. 1996), and Samsung supports Diomed. That decision found insufficient a pleading that merely asked the court to declare certain patents invalid, without explaining why, and held that a patent invalidity claim must "identify the grounds upon which the Court should find them invalid." Id. at 1677.

Finally, even if AngioDynamics' revised inequitable conduct and invalidity claims were deemed sufficient to survive a motion to dismiss, this would change nothing because (as explained above) the Court lacks declaratory judgment jurisdiction to hear this case at all.

RLF1-2983134-1

## CONCLUSION

For the above reasons, AngioDynamics' complaint should be dismissed with prejudice.

Likewise, AngioDynamics' motion for leave to file a second amended complaint should also be denied.

OF COUNSEL:

Michael A. Albert
malbert@wolfgreenfield.com
Michael N. Rader
mrader@wolfgreenfield.com
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000

Dated: February 21, 2006

/s/ Kelly E. Farnan
Frederick L. Cottrell III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King St.
Wilmington, DE 19801
(302) 651-7700

*Counsel for Defendant*
*Diomed Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filings, and hand delivered, to the following:

>John G. Harris, Esquire
>Reed Smith, LLP
>Suite 1500
>1201 North Market Street
>Wilmington, DE 19801-1163

*Kelly E. Farnan*
Kelly E. Farnan (#4395)
Farnan@RLF.com