# EXHIBIT A

**H**

Only the Westlaw citation is currently available
United States District Court, N D Illinois, Eastern Division.
ALLEN-BRADLEY COMPANY, INC Plaintiff,
v
AUTOTECH CORPORATION, Microfast Controls Corp , and Shalabh Kumar, Defendants
**No. 86 C 8514.**

Feb 8, 1990

On Motion for Judgment on the Pleadings

LINDBERG, District Judge
*1 Plaintiff has moved for a judgment on the pleadings dismissing defendants' fourth, fifth, and sixth counterclaims on the ground that those counterclaims fail to state claims which would entitle defendants to relief See FRCP 12(c) and (h)(2) Such a motion should not be granted:

[U]nless it appears beyond doubt that the [opposing party] .. can prove no set of facts in support of his claim that would entitle him to the requested relief

*Horwitz v Alloy Automotive Company*, 656 F Supp 1039, 1041 (N D Ill 1987) See *Gillman v Burlington N Railroad Co*, 878 F 2d 1020, 1022 (7th Cir 1989)

In their first counterclaim, defendants allege that plaintiff procured one or more of the patents at issue by means of fraud and so, in attempting to enforce those patents, violated the Sherman Act 15 USCA § 2; *Walker Process Equipment, Inc v Food Machinery & Chemical Corp*, 382 U S 172 (1965) To prevail on such a claim, defendants must prove that: (1) The patent was obtained by fraud; (2) the patent dominates a real market; (3) the invention sought to be patented was not patentable; and (4) the patent has some colorable validity *Brunswick Corp v Riegel Textile Corp*, 752 F 2d 261, 264-65 (1984). Plaintiff contends that defendants have failed to adequately allege the first three of these elements

Pleading of the first element, that the patent was obtained by fraud, is subject to the special rules applicable to the specificity with which fraud must be pled. As was stated by Judge Aspen of this court:

The demand for greater specificity in pleading codified in Rule 9(b) serves a number of purposes Complaints alleging fraud should seek redress for a wrong rather than attempting to discover unknown wrongs .... Moreover, defendants must be protected from the harm that results from charges of serious wrongdoing ... as well as the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude..... Finally, allegations of fraud must be concrete and particularized enough to give notice to the defendants of the conduct complained of, to enable the defendants to prepare a defense.....

Nevertheless, Rule 9(b) must be read in harmony with Fed R Civ P 8..... Rule 8 requires a 'short and plain statement of the claim showing that the pleader is entitled to relief' Therefore, a complaint which alleges securities fraud must state with particularity specific fraudulent acts comprising fraud Rule 9(b), however, does not require plaintiff to plead detailed evidentiary matters

In describing the circumstances constituting fraud, the plaintiff must describe the 'time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby' .. Mere conclusory language which asserts fraud, without a description of fraudulent conduct, does not satisfy Rule 9(b).....

© 2006 Thomson/West. No Claim to Orig U S Govt Works

Where the allegations in the complaint are based ' on information and belief,' the general rule is that such allegations do not satisfy the particularity requirements of Fed.Rule 9(b).... Therefore, allegations of matters particularly within the knowledge of an adverse party must 'be accompanied by a statement of facts upon which the belief is founded ' ... In *Duane v Altenburg,* 297 F.2d 515 (7th Cir 1962), a shareholder derivative suit, the court noted that

*2 while pleading on 'information and belief' is permissible as to matters peculiarly within the adverse party's knowledge, it has also been held that allegations of fraud .. when made on 'information and belief' must be accompanied by a statement of facts upon which the belief is founded. *Id* at 518 (citation omitted).

*D & G Enterprises v Continental Illinois National Bank and Trust Company of Chicago,* 574 F Supp. 263, 266-67 (N D Ill 1983) (citations omitted)

Defendants' fourth counterclaim alleges:

12. Allen-Bradley has secured one or more of the patents enumerated in paragraph 1 above as a result of its inequitable conduct before the United States Patent and Trademark Office. Specifically, Allen-Bradley failed to discharge its duty of disclosure to the United States Patent and Trademark Office, either intentionally and willfully or through at least gross negligence, prior art which the Examiners would have considered material in deciding the allowability of the claims of each of said patents, said prior art including patents, publications, public uses and/or sales of the alleged inventions.

13. As a result of the conduct set forth in the preceding paragraph, one or more of Allen-Bradley's patents is unenforceable and/or invalid. Allen-Bradley has knowledge of the invalidity and/or unenforceability of its patents as a result of its inequitable conduct before the Patent and Trademark Office.

These paragraphs do not allege fraud with the particularity required. *See Allen Archery, Inc v Browning Manufacturing Co*, 819 F 2d 1087, 1098 (Fed.Cir 1987); *Argus Chemical Corp v Fibre Glass-Evercoat Co., Inc.*, 812 F 2d 1381, 1384-85 (Fed.Cir 1987) (allegation that patent invalid because obtained by inequitable conduct insufficient to allege fraud element of a cause of action for fraudulent procurement of a patent under *Walker Process Equipment, Inc v Food Machinery & Chemical Corp*, 382 U.S. 172 (1965)).

With respect to the second element, that the patent dominates a real market, plaintiff contends that:

The closest defendants come to pleading a relevant market in the present case is the defendants' allegation of 'the product market in which programmable controllers and their components are used and sold ' ... They are used and sold in many product markets, however. Defendants do not define programmable controllers nor do they apprise Allen-Bradley or the Court what other products, if any, also constitute 'the product market in which programmable controllers and their components are used and sold '

It is apparent that defendants' allegation with respect to this element is specific enough to give plaintiff notice of defendants' claim. In fact, plaintiff's argument claiming to the contrary indicates plaintiff's awareness of the nature of the claim and possible defenses to it. The second element has accordingly been adequately pled in the fourth counterclaim.

With respect to the third element, defendants have not alleged that the invention sought to be patented was not patentable. The fourth counterclaim is therefore deficient in this respect.

*3 The deficiencies noted above do not involve the pleading of facts inconsistent with the claim defendants have attempted to allege. Rather, they involve a lack of specificity in alleging fraud and a failure to allege an element essential to defendants' claim. It may be possible for defendants to correct these deficiencies in their fourth counterclaim. The fourth counterclaim will therefore be dismissed without prejudice.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

In the fifth counterclaim, defendants attempt to allege a claim that plaintiff has maintained this action in bad faith in an attempt to monopolize in violation of the Sherman Act 15 USCA § 2; *Handgards, Inc v Ethicon, Inc*, 601 F 2d 986, 992-96 (9th Cir 1979) Allegations of bad faith on the part of a plaintiff in commencing and maintaining a lawsuit for patent infringement may state a claim upon which relief can be granted under the Sherman Act *Handgards, Inc v Ethicon, Inc*, 601 F 2d 986, 992-96 (9th Cir 1979). Plaintiff, however, implies that the claim in this case cannot stand because it does not allege bad faith on plaintiff's part at the inception of the law suit, but at most alleges that bad faith arose during the course of the law suit. This raises the question of whether it is sufficient for this sort of claim under the Sherman Act to allege that a patent infringement action is maintained, but was not commenced, in bad faith

The *Handgards* court said:

[Patent] infringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law The district court was correct in holding, in effect, that such actions may constitute an attempt to monopolize violative of Section 2 of the antitrust law.

*Handgards, Inc v. Ethicon, Inc*, 601 F 2d 986, 993 (9th Cir 1979). A patent infringement suit commenced in good faith may become one being maintained in bad faith, and the continued prosecution of such an action contributes no more to the furtherance of the policies of either the patent law or the antitrust law than does the prosecution of an infringement action which was in bad faith from the time it was initiated. For example, information disclosed by a plaintiff's investigation or in discovery may show that the patent is invalid If the information would have been sufficient, if known by plaintiff at the commencement of the action, to find that the action was initiated in bad faith, there is no reason that information should not be sufficient to require that plaintiff either voluntarily dismiss the infringement action or be found to be maintaining it in bad faith and so potentially in violation of the Sherman Act.

In their fifth counterclaim, defendants allege:

19 Autotech and MicroFast have, in the course of this litigation, learned of numerous prior art patents, publications, sales and other forms of prior art related to the Allen-Bradley patents enumerated in paragraph 1 above. This prior art renders one or more [of] the Allen-Bradley patents-in-suit invalid under one or more sections of the patent statute, 35 U S C. § 101 *et seq*

*4 20 Autotech and MicroFast have advised Allen-Bradley of the invalidity of its patents on at least one occasion, at which time specific prior art invalidating one or more of its patents was explicitly cited to Allen-Bradley

21. In spite of good faith efforts by Autotech and MicroFast to resolve their differences with Allen-Bradley regarding the validity of said patents without further litigation, Allen-Bradley has refused to engage in a meaningful dialogue with Autotech and MicroFast and has maintained this suit with knowledge of the invalidity of its patents

22. This suit has been pursued by Allen-Bradley with an intent to monopolize the market in which programmable controllers are used and sold, throughout the United States, and to thereby gain a competitive advantage.

23. Allen-Bradley's patents have provided Allen-Bradley with substantial monopoly power in the product market in which programmable controllers and their components are used and sold. That market is distinct, and is recognized by both manufacturers and consumers of programmable controllers.

24. Autotech and MicroFast have each been injured as a direct result of Allen-Bradley's illegal and anticompetitive conduct in the enforcement of its invalid patents. Specifically, Autotech and MicroFast have each been injured in their businesses by, among other things, loss of sales of programmable controller components and goodwill related at least to those same products.

© 2006 Thomson/West. No Claim to Orig U.S. Govt. Works

In these paragraphs, defendants do not allege any prior art invalidating any of plaintiff's patents, only that such prior art was disclosed to plaintiff. Moreover, defendants do not specifically allege which patents are invalid because of which prior art. More specifics are necessary in order to give plaintiff adequate notice of the claim being made in the fifth counterclaim.

Plaintiff also contends that defendants' fifth counterclaim's pleading of the relevant market is insufficient. The discussion of that question in the context of the fourth counterclaim is sufficient to resolve this question. This court believes that the relevant market has been adequately pled in the fifth counterclaim.

It may be possible for defendants to correct these deficiencies in their fifth counterclaim. The fifth counterclaim will therefore be dismissed without prejudice.

In their sixth counterclaim, defendants allege:

29. Specifically, Allen-Bradley has without justification threatened consumers in that market with loss of substantial rights under Allen-Bradley warranties for Allen-Bradley products, if those consumers use products manufactured by persons or corporations other than Allen-Bradley in connection with Allen-Bradley's products. Allen-Bradley has specifically threatened termination of consumers' warranty rights for its programmable controller products if those consumers purchase programmable products manufactured or sold by Autotech and/or MicroFast.

Defendants argue that:

For their Sixth Counterclaim, defendants have alleged that Allen-Bradley has illegally tied the sale of its programmable controller modules to the sale of its programmable controller rack. Unlike ordinary tying cases, where the tie is accomplished through a contract or similar means, Allen-Bradley uses a substantially more insidious device: it threatens its customers with loss of warranty rights if they use fully compatible and superior MicroFast modules in their Allen-Bradley racks. *See* Exhibit D.

*5 Paragraph 29 of the Amended Complaint recites those facts, stating that Allen-Bradley threatens its customers' warranty rights for its programmable controller products (the racks, and by implication, the warranty parts) if those customers purchase programmable controller products (modules) of others. It is true that defendants do not set out the specific evidence of Allen-Bradley's illegal tying in their Sixth Counterclaim, but that is not necessary in the system of notice pleading embodied in the Federal Rules of Civil Procedure.

Moreover, since both the tying product (the Allen-Bradley rack and warranty parts) and the tied product (Allen-Bradley modules) are goods, defendants' claim under the Clayton Act is proper. Allen-Bradley blatantly and conveniently ignores the clear terms of defendants' pleading when it characterizes the tied products as services, rather than as goods. Accordingly, Allen-Bradley's motion for judgment on the pleadings fails as to this counterclaim as well.

Thus, defendants' sixth counterclaim purports to state a claim under the Clayton Act for an illegal tying arrangement because plaintiff threatens warranty rights with respect to the tying products (the racks) unless only tied products (the modules) are used with them.

The Clayton Act provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 USCA § 14. The language of this statute simply does not cover the behavior alleged in defendants' sixth counterclaim; threatening warranty rights on the tying product (the rack) if non-tied products (modules) are used with it.

Plaintiff is therefore entitled to a judgment of dismissal of the sixth counterclaim on the pleadings. Since it is apparent from the allegations that defendants cannot prove any set of facts that would entitle them to the relief sought under the sixth counterclaim, that dismissal will be with prejudice.

ORDERED: Defendants' fourth and fifth counterclaims are dismissed without prejudice. Defendants are given leave to amend the fourth and fifth counterclaims on or before March 1, 1990. Defendants' sixth counterclaim is dismissed with prejudice

N.D Ill ,1990.
Allen-Bradley Co., Inc. v. Autotech Corp
Not Reported in F Supp , 1990 WL 16453 (N.D Ill.)

END OF DOCUMENT

© 2006 Thomson/West No Claim to Orig. U.S. Govt. Works

Westlaw.



**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D Delaware
BAYER HEALTHCARE LLC, Plaintiff,
v.
ABBOTT LABORATORIES, Defendant.
**No. C.A.03-189-GMS.**

Dec 10, 2004.

Jeffrey B. Bove, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Plaintiff.
Mary B. Graham, Morris, Nichols, Arsht & Tunnell, Rudolf E. Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Defendants

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 On February 11, 2003, Bayer Healthcare LLC ("Bayer") filed a complaint against Abbott Laboratories ("Abbot") alleging infringement of several of Bayer's patents, including U.S. Patent No. 6,074,615 ("the '615 patent"), U.S. Patent No. 6,436,349 ("the '349 patent"), and U.S. Patent No. 6,498,037 ("the '037 patent"). (D.I.1.) On August 28, 2003, Bayer filed a supplemental complaint against Abbott alleging infringement of U.S. Patent No. 6,555,062 ("the '062 patent") (D.I.28.) On July 12, 2004, the court granted a request by Abbott for leave to amend its answer to Bayer's supplemental complaint to include an inequitable conduct defense (D.I. 158.) On September 9, 2004, the court granted Bayer's request for leave to file a motion for summary judgment on Abbott's inequitable conduct defense. (D.I.180.) Presently before the court is that motion. (D.I.186.) For the following reasons, the court will grant Bayer's motion.

II. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (1993).

III. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact. *See* Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmovant. *See In re Headquarters Dodge, Inc.*, 13 F.3d 674, 679 (3d Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999) The nonmoving party, however, must demonstrate the existence of a material fact supplying sufficient evidence-not mere allegations-for a reasonable jury to find for the nonmovant. *See Olson v. General Elec. Aerospace*, 101 F.3d 947, 951 (3d Cir 1996) (citation omitted). To raise a genuine issue of material fact, the nonmovant "need not match, item for item, each piece of evidence proffered by the movant but simply must exceed the 'mere scintilla' [of evidence] standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir 1993) (citations omitted). The nonmovant's evidence, however, must be sufficient for a reasonable jury to find in favor of the party, given the applicable burden of proof. *See Anderson*, 477 U.S. at 249-50

IV. DISCUSSION

Abbott contends that "Bayer and its attorneys made

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

a series of knowingly false and misleading statements and omissions to the PTO [United States Patent and Trademark Office]" during the prosecution of patent application 09/655,128 ("the '128 application"), which ultimately issued as the '349 patent (D I 201 at 4 ) For the purpose of this motion, the facts are viewed in the light most favorable to Abbott Thus, the court assumes as true all factual assertions made by Abbott in its brief

A The Single Tray Limitation

*2 Abbott's first contention is that the attorneys responsible for prosecuting the '349 patent intentionally misled the examiner by mischaracterizing the substance of pending claims 8 and 14 (Id at 4-7 ) During prosecution the examiner communicated to Bayer that pending claim 6, which contained an element referred to as the "single tray limitation," was allowable (D I 202 Ex 2 at eight ) Subsequently, Bayer proposed additional claim 15 (Id Ex 3 ) However, the examiner rejected the amendment because it did not include the single tray limitation (Id Ex 4 ) This, Abbott contends, put Bayer on notice that the single tray limitation was crucial to patentability (D I 201 at 5-6 ) Nevertheless, Bayer represented to the examiner that pending claims 8 and 14 had " limitations similar to the gear structure recited in claim[ ] 6" (D I 202 Ex 2 at 8-9), even though neither claim contained the single tray limitation In addition, Abbott points to Bayer's characterization of the amendments of claims 8 and 14 to the examiner as "selective inclusion of the specific structural elements relating to a ring gear and satellite gears . ," without stating that the single tray limitation had been removed (Id Ex 6 at 4 )

In order to defeat Bayer's motion, Abbott must present evidence from which a reasonable finder of fact could infer both prongs of inequitable conduct Specifically, "the proponent of the inequitable conduct must first establish by clear and convincing evidence that there was a material misrepresentation or omission of information, and then establish a threshold level of intent on the part of the applicant " *Akzo N V v U S Int'l Trade Comm'n,* 808 F 2d 1471, 1481 (Fed Cir 1986) However, in cases where all the pertinent information was available to the examiner, the defendant's inequitable conduct defense may fail as a matter of law for lack of materiality

This is not a bright-line rule because sometimes the information in front of the examiner is voluminous, *see, e g , Mechanical Plastic Corp v Rawplug Co ,* 14 U S P Q 2d 1058 (S D N Y Dec 7, 1989), or difficult to comprehend, *see, e g , Semiconductor Energy Lab Co v Samsung Elecs Co ,* 204 F 3d 1368, 1377-78 (Fed Cir 2000) (partial Japanese translation) But other times the information in front of the examiner is far more accessible, precluding a finding of materiality *See, e g , Fiskars, Inc v Hunt Mfg Co ,* 221 F 3d 1318, 1326-28 (Fed Cir 2000) (pamphlet describing prior art submitted to examiner, but not explained by applicant); *Akzo,* 808 F 2d at 1482 (prior art patents in front of examiner, but arguably mischaracterized by applicant); *Genzyme Corp v Transkaryotic Therapies, Inc ,* No C A 00-677, 2004 WL 2239248, at *2 (D Del Sept 27, 2004) (prior art article in front of examiner, but arguably mischaracterized by applicant) Therefore, although the court's judgment should not be a proxy for that of the jury, the court is obliged to be vigilant in its effort to prevent certain defenses from proceeding beyond summary judgment This is particularly true with regard to the defense of inequitable conduct *Cf Northern Telecom, Inc v Datapoint Corp ,* 908 F 2d 931, 939 (Fed Cir 1990) ("Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required ")

*3 In this case, the substance of pending claims 8 and 14 was directly before the examiner It is difficult to imagine a situation where the information is more accessible Were courts such as this one to hold that applicants could not rely on the examiner to read and understand all of the pending claims, the patent system would become unworkable Thus, the court does not believe Bayer's mischaracterizations, if any, were material [FN1] As such, the court also declines to address the issue of intent with regard to the single tray

© 2006 Thomson/West No Claim to Orig U S Govt Works

limitation.

FN1. Abbott may be correct that a Petition to Make Special creates a heightened duty of candor (D.I 201 at 14-15), however the court is not convinced that the duty is so heightened by such a petition that the applicant can no longer rely on the examiner to read and understand the pending claims

B. The Missing Motor

Abbott's second contention is that Bayer's attorneys misled the examiner in connection with the submission of new claim 14 to the '128 application (D.I. 201 at 7-8.) According to Abbot, new claim 14 only provided for a single motor, whereas no previous pending claim provided for a single motor. (Id.) Nevertheless, Bayer represented to the patent office that new claim 14 "contains no new matter." (D.I. 202 Ex. 9 at 7.) Abbott further contends that the patent specification contains no description as to how the invention could function properly with only one motor, as set forth in new claim 14. (D.I. 201 at 8.)

Again, since the text of new claim 14 was accessible to the examiner, the court does not believe any deception that might be inferred from Bayer's statements to the examiner were material

C. The Japanese Patent Office

Abbott's final contention is that Bayer failed in its duty to disclose to the examiner that the same invention it was prosecuting in the Japanese Patent Office also required the single tray limitation. According to Abbott, this failure is evidence of Bayer's intent to deceive the examiner. However, since the court finds Bayer's alleged mischaracterization of pending claims 8 and 14 was not material, Abbott's defense fails regardless of Bayer's intentions

V. CONCLUSION

For the aforementioned reasons, the court does not find a genuine issue of material fact, the resolution of which would permit a reasonable jury to find in Abbott's favor. Therefore, Bayer's Motion for Summary Judgment of No Inequitable Conduct, Fraud, or Unclean Hands will be granted.

*ORDER*

IT IS HEREBY ORDERED that Bayer Healthcare, LLC's Motion for Summary Judgment of No Inequitable Conduct, Fraud, or Unclean Hands be GRANTED.

D.Del.,2004
Bayer Healthcare LLC v. Abbott Laboratories
Not Reported in F.Supp.2d, 2004 WL 2862267 (D Del.)

Briefs and Other Related Documents (Back to top)

- 2005 WL 2385630 (Trial Motion, Memorandum and Affidavit) Abbott Laboratories' Reply Brief in Support of its Motion for Summary Judgment of Noninfringement by the Redesigned Architect(R) Analyzer (Aug. 01, 2005)
- 2005 WL 2385485 (Trial Motion, Memorandum and Affidavit) Defendant Abbott Laboratories' Answering Claim Construction Brief (Jul. 22, 2005)
- 2005 WL 2385629 (Trial Motion, Memorandum and Affidavit) Bayer's Answering Brief to Abbott's Opening Claim Construction Brief re Additional Claim Construction Issues (Jul. 22, 2005)
- 1:03cv00189 (Docket) (Feb. 11, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig U.S Govt. Works.

LEXSEE 2006 US DIST LEXIS 3900

**SIRIUS SATELLITE RESEARCH INC., Plaintiff, - against - ACACIA RESEARCH CORPORATION and ACACIA GLOBAL ACQUISITION CORP., Defendants.**

**05 Civ. 7495 (PAC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

***2006 U.S. Dist. LEXIS 3900***

**January 30, 2006, Decided**
**January 30, 2006, Filed**

**COUNSEL:** [*1] For Sirius Satellite Radio Inc , Plaintiff: Jonathan S. Caplan, Nicholas Lazaros Coch, Kramer, Levin, Naftalis & Frankel, LLP, New York, NY.

For Acacia Research Corporation, Acacia Global Acqisition Corp , Defendants: Jason M. Drangel, Epstein Drangel Bazerman & James LLP, New York, NY

**JUDGES:** PAUL A. CROTTY, United States District Judge

**OPINIONBY:** PAUL A. CROTTY

**OPINION:**

OPINION & ORDER

Plaintiff Sirius Satellite Radio Inc. ("Plaintiff" or "Sirius") commenced this action on August 24, 2005, seeking a declaratory judgment that a patent owned by defendants Acacia Research Corporation and Acacia Global Acquisition Corp (collectively, "Defendant" or "Acacia") is invalid or, in the alternative, that Sirius is not infringing the patent. Acacia now moves to dismiss the Complaint, pursuant to *Rules 12(b)(1)* and *12(b)(6)* of the Federal Rules of Civil Procedure, n1 on the grounds that the pre-action communications between the parties, which form the basis of plaintiff's complaint, do not create an actual controversy The Court agrees with Acacia; finds that it lacks subject matter to entertain this action; and, accordingly, dismisses the complaint

n1 Acacia bases its Federal *Rule 12(b)(6)* argument on the same failure to create an actual controversy as the Federal *Rule 12(b)(1)* argument Since the existence of an actual controversy speaks to the subject matter jurisdiction of the Court, the proper motion would be a motion to dismiss pursuant to Federal *Rule 12(b)(1)*. Therefore, the Court will treat Acacia's motion solely as a motion to dismiss pursuant to Federal *Rule 12(b)(1)* for lack of subject matter jurisdiction.

[*2]

**FACTS**

Sirius is a corporation providing digital satellite radio service throughout the United States (Compl P4.) Acacia is a corporation in the business of purchasing patents from third parties and licensing or enforcing them. (Id. P5.)

On November 5, 1991, the United States Patent and Trademark Office ("USPTO") issued *U.S. Patent No 5,063,610* (the *"610 Patent"*) to the inventor, David Alwadish. (Id. P7 ) The *610 Patent* covers a system for broadcasting material together with related program information, such as the name of the song or its artist. (Id.) Alwadish sold the *610 Patent* to Global Patent Holdings, Inc., which in turn sold it to Acacia in January 2005 (Id P8.)

Acacia immediately began enforcing, and attempting to license, the *610 patent*. By letter dated March 30, 2005, Robert Berman, the Chief Operating Officer and General Counsel of Acacia, wrote to Sirius, alleging that the *610 Patent* "covers a service being offered by Sirius." (Caplan Decl., Ex. A.) In the letter, Acacia urged Sirius to consult outside patent counsel to determine if its service infringed the *610 Patent*, expressed its desire to resolve the matter "amicably without the need for [*3] excessive legal costs," and communicated its interest in negotiating an exclusive license. n2 (Id.) Mr. Berman made himself and the company engineers available for consultation and advised that he would follow up in thirty days if he did not hear from a Sirius representative in the interim. (Id.)

n2 The exact language reads:

> I would expect that you will send this matter to outside patent counsel for review. We will make our engineers and attorneys available to you via telephone, and are also available to meet in person with you and your counsel to answer any questions and provide any additional material you may need. As before, our goal is to resolve this matter amicably without the need for excessive legal costs.
>
> If you act quickly, we are also prepared to discuss an exclusive license for Sirius . . .
>
> . . . . I will contact you in approximately 30 days to check on the status of this matter and discuss next steps.

(Id.)

Sirius immediately retained outside counsel to review [*4] the matter. n3 (Caplan Decl. PP1-3 & Exs. C-G, L.) Sirius's attorney, Mr. Jonathan D. Caplan, attempted to investigate Acacia's allegations, but discovered that filewrapper-the record of proceedings before the USPTO resulting in the issuance of the *610 Patent*-had disappeared. n4 (Id. PP4-5.) Unable to fully investigate the potential infringement without the filewrapper, Sirius refused to commence license negotiations with Acacia. (Id.)

n3 Sirius retained Mr. Jonathan Caplan, Esq., of Kramer Levin Naftalis & Frankel LLP, immediately upon receipt of the March 30, 2005 letter. (See Caplan Decl. PP1-3.) All subsequent communication between Sirius and Acacia went through Mr. Caplan, rather than through Sirius's in-house counsel, business executives, or patent specialists. (Id., Ex. C-G, L.) Acacia, on the other hand, continued to handle the matter in house, through its General Counsel. (Id.)

n4 Thorough investigation revealed that the USPTO had lost the filewrapper, neither the inventor nor his patent attorney had retained a file, and Acacia was not given a file when it obtained the patent from Global Patent Holdings. (Caplan Decl., Ex. G.)

[*5]

In an effort to facilitate license negotiations, Acacia made the inventor and his attorney available to Sirius. (Id., P6 & Exs. C-D.) Acacia limited the scope of questioning, however, to issues of patent prosecution (i.e., office actions, meetings with examiners, changes to claims, and all other proceedings directly related to the grant of the patent by the USPTO), not "general discovery." (Id., Ex. D, at 1.) After interviewing both the investor and his patent prosecution attorney, Sirius still refused to enter license negotiations. (Id. Ex. C.)

Acacia continued to press the matter. On June 17, 2005, Mr. Berman wrote another letter to Sirius stating that it expected a "substantive response to [its] infringement allegations and license request within [a] two week period." (Id.) Two weeks came and went without a definitive answer; however, Acacia took no action that would suggest an

impending infringement suit. Instead, Acacia continued to push for license negotiations. (Id., Exs. E & G.) For example, on August 4, 2005, Acacia faxed Sirius the one document it was able to locate from the filewrapper (Id., Ex. E) Rather than spur negotiations, after reviewing [*6] this document-a May 30, 1991 letter discussing the allowability of the Alwadish patent's main claim 1 in view of another pre-existing patent-Sirius concluded that it could not be infringing the *610 patent* and therefore would not negotiate a license (Id., Exs. F & L.)

Sirius communicated its position to Acacia on August 15, 2005 (Id., Ex. F.) In the letter, Sirius expressly declared: "Sirius does not, and cannot infringe the Alwadish patent . . Therefore, Sirius considers this matter closed-the Alwadish patent does not apply to Sirius." (Id.) Acacia responded the same day (Id., Ex. G.) In its response letter, Acacia challenged Sirius's interpretation of the 1991 letter, suggesting that the 1991 letter "cut the heart out of Sirius's defense," and therefore strengthens Acacia's case, and urging further discussions between the two companies, "so that [Acacia's] engineers can explain to [Sirius] how [they] believe Sirius is infringing the Alwadish patent, and [Sirius] can in turn, explain how [it] is not." n5 (Id.)

n5 The letter actually states:

> I understand your frustration in that the [1991] letter . . . seems to cut the heart out of Sirius' defense. Your contention is that the patent was invalid and should not have been issued over [the pre-existing patent]. As indicated by the letter, this argument was rejected by the examiner, for the reasons indicated.
>
> . . .
>
> We believe that the [1991] letter makes our case even stronger. If "closed" means that Sirius is no longer interested in amicably resolving this matter, please confirm that to me. Otherwise, I suggest that we have at least one more call so that my engineers can explain to you how we believe Sirius is infringing the Alwadish patent, and you can in turn, explain how they are not.

(Id.)

[*7]

Sirius was not persuaded. In an August 24, 2005 conference call, Mr. Caplan made clear that because Sirius was not infringing the *610 patent*, it was not interested in discussing the patent further or entertaining license negotiations (Id. P15.) Mr. Berman responded that Acacia understood Sirius's position and Acacia would "act accordingly." (Id.) The same day, Sirius filed this declaratory judgment action. (Compl. P1.)

**DISCUSSION**

A. Federal *Rule 12(b)(1)* Motion to Dismiss for Lack of Subject Matter Jurisdiction

A district court must dismiss a case pursuant to *Federal Rule of Civil Procedure 12(b)(1)* when it lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)*. As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears the burden of proving jurisdiction. *Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996)*; *Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)*. Thus, the Court must "refrain from 'drawing from the pleadings inferences favorable to the party [*8] asserting [jurisdiction],'" *Takeda Chem. Indus. v. Watson Pharms., Inc., 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004)* (quoting *APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003))*, and may "refer to evidence outside the pleadings." *Luckett v. Bure, 290 F.3d 493, 496-96 (2d Cir. 2002)*.

B. Subject Matter Jurisdiction Under the Declaratory Judgment Act

Through the Declaratory Judgment Act, *28 U.S.C. § § 2201* and *2202*, a litigant may file an action in federal court seeking a "declaration of its rights and other legal relations." *28 U.S.C. § 2201*. This declaration has the effect of a final judgment, and may be used by the prevailing party to stave off future litigation. Id. Since federal courts may not issue

advisory opinions, however, a litigant may seek a declaratory judgment only where an "actual controversy" exists Id "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Dataline, Inc v MCI Worldcom Network Servs, Inc, 2001 U S Dist LEXIS 950, No 00 Civ 1578, 2001 WL 102336, at *2 (S D N Y Feb 6, 2001)* [*9] "In general, the presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged, under all the circumstances, show . a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'" *Gen-Probe Inc v Vysis, Inc, 359 F 3d 1376, 1379 (Fed Cir 2004)* (quoting *EMC Corp v Norand Corp, 89 F 3d 807, 810 (Fed Cir 1996)*, and *Md Cas Co v Pac Coal & Oil Co, 312 U S 270, 273, 61 S Ct 510, 85 L Ed 826 (1941))*

The conduct required to create an "actual controversy" differs according to the subject matter of the action In the patent context, the Federal Circuit follows a two-part test, which focuses on the conduct of both the patentee and the putative infringer, to determine if a declaratory judgment plaintiff has an "actual controversy." First, there must be "an explicit threat or other action by the patentee, which creates a *reasonable apprehension* on the part of the declaratory judgment plaintiff that it will face an infringement suit" *Gen-Probe, 359 F 3d at 1380* (emphasis [*10] added) (quoting *BP Chems Ltd v Union Carbide Corp, 4 F 3d 975, 978 (Fed Cir 1993))* "Reasonableness" is judged by an objective standard, based on the conduct of the patent holder, not the subjective feelings of the potential infringer *Cygnus Therapeutic Sys v ALZA Corp, 92 F 3d 1153, 1160 (Fed Cir 1996)* The burden falls on the declaratory judgment plaintiff to prove, by a preponderance of the evidence, that its apprehension of suit was reasonable *Id at 1159*

Second, there must be a "present activity which could constitute an infringement or concrete steps taken with the intent to conduct such activity" Id The parties do not dispute that Sirius satisfies this second prong, as Sirius currently offers the allegedly infringing service in the marketplace (Caplan Decl, Ex A) This case thus turns on whether, based on Acacia's conduct and communications prior to the filing of this action, Sirius had a reasonable apprehension of imminent infringement litigation

*1 Reasonable Apprehension Created by an Express Charge of Infringement*

To create a reasonable apprehension, the patentee "must signal an intention [*11] to file suit claiming infringement" *Hunter Douglas, Inc v Harmonic Design, Inc, 153 F 3d 1318, 1326 (Fed Cir 1998)* The Federal Circuit has held that when a patentee makes an explicit threat of an infringement suit or an express charge of infringement, there is always an actual controversy See *Arrowhead Indus Water, Inc v Ecolochem, Inc, 846 F 2d 731, 736 (Fed Cir 1998)* The declaratory judgment plaintiff need not make any additional showing in order to file a declaratory judgment action Id ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more").

Sirius argues that Acacia's March 30, 2005 letter amounts to an express charge of infringement The Court does not agree; and a fair reading of the letter does not support a conclusion that there was an express threat n6 It is well settled that neither the offer of a patent license nor language in a letter stating that the declaratory judgment plaintiff's product or service is "covered by" or "falls within" defendant's patent amounts to [*12] an "express charge" of infringement See *Phillips Plastics Corp v Kato Hatsujou Kabushiki Kaisha, 57 F 3d 1051, 1053 (Fed Cir 1995)*; *Shell Oil Co v Amoco Corp, 970 F 2d 885 (Fed Cir 1992)* More explicit language is required before a court will find an express charge or threat See, e g, *Elecs for Imaging, Inc v Coyle, 394 F 3d 1341, 1344 (Fed Cir 2005)* (finding express threat where the patentee stated that it would drive the alleged infringer out of business and sue all its customers, warned that "bad things are going to happen," and even identified specific attorneys and law firms in support of his litigation threats) Acacia's March 30, 2005 letter does not expressly charge infringement of the *610 patent* or threaten infringement litigation, it merely expresses a belief that Sirius might be infringing the patent and invites discussions between the companies and their patent experts to resolve the matter The letter was carefully crafted to promote licensing negotiations between the parties, using the same "covered by" language that the Federal Circuit has previously deemed permissible This language is not sufficient [*13] to create an actual controversy

n6 The purpose of the March 30, 2005 letter was to initiate negotiations for a patent license -- a goal which is to be encouraged If every suggestion of patent coverage and request to enter license negotiations were deemed to be a "threat" sufficient to justify a declaratory judgment, there would be far fewer patent license negotiations

and far more litigation. Its character is not changed by Exhibit B, which presents a detailed claims analysis. Had Exhibit B not been included with Exhibit A, Sirius could have stated, correctly, that it would not respond until it saw the patent holder's claims analysis. Thus, Exhibit B does not provide evidence of a threat, rather, it supports the request to enter into license negotiations.

*2. Reasonable Apprehension by a Totality of the Circumstances*

In the alternative, Sirius argues that Acacia's conduct, when viewed as a whole, created a reasonable apprehension of imminent litigation, and therefore created an actual controversy. The Federal [*14] Circuit is mindful of the risk that requiring an "explicit threat" could promote manipulation by "patentee[s] who use careful phrases in order to avoid explicit threats, thus denying recourse to the courts while damages accrue." *Phillips Plastics, 57 F 3d at 1053.* Therefore, a court may find an "actual controversy" in the absence of an express charge of infringement or threat of litigation, if the totality of the circumstances create a reasonable apprehension--based on an objective test--that the patentee intended to bring an infringement suit. *Arrowhead, 846 F 2d at 736*; *Shell Oil Co. v. Amoco Corp., 970 F 2d 885, 888.*

While the "totality of the circumstances" test is a fact-specific inquiry, the Federal Circuit has identified certain factors that make a declaratory judgment plaintiff's apprehension of litigation presumptively reasonable: (1) where the allegations of infringement come from outside litigation counsel, rather than from the patentee's in-house counsel or business executives; (2) where the patentee warned the declaratory judgment plaintiff's customers of the potential infringement; (3) where the patentee has enforced the same patent or technology [*15] against other companies in prior litigation; or (4) where the patentee gave the declaratory judgment plaintiff an unfairly short period of time to respond to the infringement allegations before taking other action. See, e.g., *Arrowhead, 846 F 2d at 737-38* (finding actual controversy where all four factors present, and noting that contact of infringer's customers and prior litigation were especially strong evidence of the patentee's willingness and desire to sue); see also *Kos Pharms., Inc. v. Barr Labs., Inc., 242 F. Supp. 2d 311, at 315-16* (finding actual controversy where patentee had filed three prior lawsuits against the plaintiff to enforce similar patents); *Cargill, Inc. v. Sears Petroleum & Transp. Corp., 2002 U.S. Dist. LEXIS 20714, No. 02 Civ. 1395, 2002 WL 31426308, at *4 (S.D.N.Y. Oct. 28, 2002)* (finding reasonable apprehension of imminent litigation where letters came from patentee's outside litigation counsel, patentee told plaintiff's distributors of the patent dispute, and patentee's lawyers gave plaintiff only 10 days to respond before advising their client of its legal options); *Consac Indus., Inc. v. Nutramax Labs, Inc., 1998 U.S. Dist. LEXIS 6228, No. 97 Civ. 1155, 1998 WL 229255, at *3-4 (E.D.N.Y. Mar. 31, 1998)* [*16] (finding reasonable apprehension where letters came from patentee's attorneys and patentee had previously filed three infringement actions to enforce the patent). Conduct that would not create a reasonable apprehension of an infringement action in isolation may create a reasonable apprehension when coupled with other activities. See *Teva Pharms. USA, Inc. v. Pfizer Inc., 395 F 3d 1324, 1333 (Fed. Cir. 2005).*

Sirius argues that a number of these presumptively threatening factors are present in this case. First, Sirius points to Acacia's recommendation in the March 30, 2005 letter that Sirius "send this matter to outside patent counsel for review." Sirius argues that this reference to outside counsel created a reasonable apprehension of imminent litigation. In making this argument, however, Sirius misconstrues the case law. In all of the cases finding a reasonable apprehension of litigation based on the involvement of outside counsel, the Court focused on the patentee's decision to refer the case to its own outside counsel. See, e.g., *Cargill, 2002 U.S. Dist. LEXIS 20714, 2002 WL 31426308, at *4* (finding reasonable apprehension where all correspondence [*17] came from patentee's attorneys); *Consac Indus., 1998 U.S. Dist. LEXIS 6228, 1998 WL 229255, at *4* (same); see also *Dataline. Inc. v. MCI Worldcom Network Servs., Inc., 2001 U.S. Dist. LEXIS 950, No. 00 Civ. 1578, 2001 WL 102336, at *4 (S.D.N.Y. Feb. 6, 2001)* (finding no reasonable apprehension of litigation where initial letter came from in-house executive). In this case, on the other hand, all correspondence came from Acacia's Chief Operating Officer and General Counsel, an in-house executive. Acacia did not involve outside litigation counsel until after Sirius filed this declaratory judgment action. There is no indication that Sirius's reference to "outside patent counsel" signaled an intent to litigate. The more reasonable interpretation is that Acacia believed that Sirius could benefit from outside review of the patent before entering license negotiations.

Second, Sirius points to Acacia's history of defending its patents through infringement litigation. The Federal Circuit has expressly held, however, that the fact that a patentee has aggressively asserted its patent rights against other alleged infringers is not sufficient to create a reasonable apprehension of imminent litigation. See *Teva, 395 F 3d at 1333* [*18] (finding that history of infringement litigation unrelated to subject patent did not create reasonable

apprehension of imminent litigation); *Gen-Probe, 359 F 3d at 1381, 1382* (finding no reasonable apprehension of imminent litigation even though parties had a history of litigation over other patents) Only where the patentee has "demonstrated a readiness and inclination to sue [plaintiff] over its patents" by filing previous infringement actions to enforce the same technology is an apprehension of imminent litigation reasonable *Kos Pharms., Inc v. Barr Labs., Inc., 242 F Supp 2d 311, (S D N Y 2003)* (finding reasonable apprehension where patentee had filed three prior lawsuits against plaintiff to enforce similar patents); see *Arrowhead, 846 F 2d at 738* (finding reasonable apprehension where, in addition to other factors, the patentee had previously sued another company for infringement of the same patent); *Consac Indus., Inc v Nutramax Labs, Inc., 1998 U S Dist LEXIS 6228, No 97 Civ 1155, 1998 WL 229255, at *3 (E D N Y Mar. 31, 1998)* (finding reasonable apprehension where, in addition to the fact that the patentee had already referred [*19] the matter to outside litigation counsel, the patentee had previously filed three infringement actions against other companies to enforce the same technology).

Third, Sirius contends that Acacia's desire to "act quickly" created a reasonable apprehension of imminent litigation. To support this contention, Sirius points to Mr. Berman's March 30, 2005 letter, in which he "provided a 30-day period for response," and his June 17, 2005 e-mail, in which he "provided a '2 week' time limit for Sirius' response to Acacia's infringement charges." (Pl.'s Mem. of Law in Opp'n 15, 16.) Sirius urges the Court to find that this language is identical to the language found by other courts to create a reasonable apprehension of litigation. (Id. at 16.) Despite Sirius's urgings, however, its cases do not support the conclusion it urges Acacia's actual conduct falls well short of "deadlines" imposed by other patent holders In Sirius's cases, the patentee strongly suggested litigation if the alleged infringer did not respond within a reasonably short period of time. See *Arrowhead, 846 F 2d at 737* (demanding, within 20 days, a confirmation that all unauthorized practices were discontinued, [*20] and threatening that the patentee "had in the past not hesitated to protect its patent rights whenever appropriate"); *Cargill, 2002 U S Dist LEXIS 20714, 2002 WL 3146308, at *1* (advising, in letter sent by patentee's outside litigation counsel, that if alleged infringer did not respond within ten days the authors would "advise [their] client of their legal options"); *Comtec Info Sys., Inc v Monarch Marking Sys., Inc., 962 F Supp 15, 17 (D R I 1997)* (finding reasonable apprehension of imminent litigation where patentee threatened, in third letter from outside counsel, that if the alleged infringer did not act promptly, the patentee "will have no choice but to proceed accordingly").

No similar language is present in this case. In the March 30, 2005 letter, Mr. Berman states that he "will contact [Sirius] in approximately 30 days to check on the status of this matter and discuss next steps." (Caplan Decl., Ex. A.) Mr. Berman did not threaten legal action at the end of the 30-day period. Instead, he suggests that if he has not heard by then, he will call Sirius No reasonable observer would find this statement to create an apprehension of immediate litigation Similarly, [*21] in the June 17, 2005 e-mail, Mr. Berman requested that Sirius respond to Acacia's infringement allegations within two weeks Again, Mr. Berman did not threaten legal action if it did not hear from Sirius at the end of the two-week period. Significantly, even though the parties had not entered license negotiations by the end of the two-week period mentioned in the e-mail, Acacia did not file, or even threaten, an infringement action This course of events hardly suggests that Acacia intended to sue Sirius in the near future.

Fourth, Sirius contends that Acacia's choice of words in its communications created a reasonable apprehension of imminent litigation. Specifically, Sirius points to Acacia's reference in the March 30, 2005 letter to "excessive legal costs" and in subsequent correspondence to "contentions," "infringement allegations," "Sirius' defense" and the strength of Acacia's "case," "terms which are universally understood to refer to litigation." (Pl.'s Mem. of Law in Opp'n 16.) The Court is not persuaded by this argument; a reasonable observer would not find Acacia's use of these terms, when read in context, forewarned litigation. Instead, a contextual reading confirms that [*22] Acacia was merely "jawboning" in anticipation of license negotiations. Acacia's goal of was a license, not a lawsuit Taking a position in license negotiations is commercially acceptable behavior and does not create a reasonable apprehension of imminent litigation. See *Cygnus, 92 F 3d at 1160*; *Shell Oil, 970 F 2d at 889*.

Looking at the totality of the circumstances, the Court finds that Acacia's conduct prior to the filing of this declaratory judgment action did not create a reasonable apprehension of litigation. Acacia did not involve outside patent counsel, threaten Sirius's customers with infringement if it continued using Sirius's service, sue other alleged infringers to enforce the *610 patent*, or use language that would suggest imminent litigation. To the contrary, Acacia repeatedly signaled an intent to avoid litigation in favor of discussions between the parties. Admittedly, Acacia pressed for license negotiations, but "the reasonable apprehension of suit test requires more than the nervous statement of mind of a possible infringer; it requires that the objective circumstances support such an apprehension" *Cygnus, 92 F 3d at 1160* [*23] (internal quotation marks omitted). The Court finds no such circumstances in this case. Acacia's mere attempts to

license the *610 patent* to Sirius, however persistent, did not create a reasonable apprehension of litigation sufficient to invoke the jurisdiction of this Court under the Declaratory Judgment Act.

CONCLUSION

The Court finds that Acacia's conduct prior to the filing of this declaratory judgment action did not create a reasonable apprehension of imminent litigation. Since no actual controversy existed, the Court does not have subject matter to entertain this action pursuant to the Declaratory Judgment Act. Accordingly, Acacia's motion to dismiss the complaint for lack of subject matter jurisdiction is GRANTED. The Clerk of Court is directed to enter judgment and close out this case.

Dated: New York, New York

January 30, 2006

SO ORDERED

PAUL A. CROTTY

United States District Judge