IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANGIODYNAMICS, INC., | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 06-02 GMS |
| DIOMED HOLDINGS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM

### I. INTRODUCTION

On January 3, 2006, AngioDynamics, Inc. ("AngioDynamics") brought this declaratory judgment action against Diomed Holdings, Inc. ("Diomed"). Presently before the court are Diomed's Motion to Dismiss (D.I. 8), and AngioDynamics' Motion to Amend (D.I. 10). For the following reasons, the court will grant Diomed's motion to dismiss and deny AngioDynamics' motion to amend.

### II. BACKGROUND

A subsidiary of Diomed, Diomed Inc., owns U.S. Patent Nos. 6,981,971 (the "'971 patent") and 6,986,766 (the "'766 patent") (collectively, the "patents-in-suit"). The patents-in-suit are directed to product features, which include markings along an introducer sheath, of a system for delivering laser energy to the walls of a vein, and a method directed to the use of a product with those features. (D.I. 4 ¶¶ 13, 16-17.) The method of delivering laser energy to the walls of a vein is known as endovenous laser treatment. (D.I. 11, at 4.) Both Diomed and AngioDynamics offer

products relating to endovenous laser treatment. Diomed, however, has the exclusive rights in three patents, including the patents-in-suit, that relate to endovenous laser treatment.

AngioDynamics alleges that the issuance of the patents-in-suit, as well as Diomed's conduct, including the filing of a lawsuit against it and other companies for infringement of a different patent and the making of certain statements regarding the patents-in-suit, have given it a reasonable apprehension that Diomed would sue it for patent infringement. (D.I. 4 ¶ 31.) Accordingly, AngioDynamics has filed a declaratory judgment action, asking the court to declare all claims of the patents-in-suit invalid, non-infringed, and unenforceable. (Id. at Prayer for Relief.)

On January 31, 2006, Diomed filed a motion to dismiss for lack of subject matter jurisdiction. On February 14, 2006, AngioDynamics filed a motion to amend its first amended complaint.

## III. DISCUSSION

Diomed contends that the court should dismiss both counts of the declaratory judgment action because AngioDynamics had no objectively reasonable apprehension of imminent suit on the '971 and '776 patents and, therefore, AngioDynamics' claim is premature. In other words, Diomed contends the court lacks subject matter jurisdiction over AngioDynamics' declaratory judgment action.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of the Court to address the merits of a plaintiff's complaint. Such a challenge may present either a facial or a factual challenge to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would be insufficient to establish the Court's jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.

2000). The present motion presents a facial challenge to the complaint because the jurisdictional facts are not in dispute. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiff's favor. *See id.* Additionally, the court must test the existence of jurisdiction as of the time the complaint was filed. *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990).

The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy . . . [a court of competent jurisdiction] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Thus, before a court may exercise jurisdiction over a declaratory judgment action, the Act requires an "actual controversy between the parties." *Medimmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378-79 (Fed. Cir. 2005) (citing *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1331 (Fed. Cir. 2005)). "In general, the presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)).

However, a district court does not have jurisdiction to hear the action when there is no actual controversy. *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991), *cert. denied*, 112 S. Ct. 658 (1991). Moreover, "even assuming [the existence of] an actual controversy, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary." *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1526 (Fed. Cir. 1992) (citations omitted).

In the patent context, the Federal Circuit has developed a two-part test for determining whether the declaratory judgment action is justiciable: (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity. *See Goodyear Tire & Rubber Co. v. Releasomers Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987) (citations omitted). In addition, the declaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy. *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984).

Here, neither party disputes that the second element has been satisfied. Thus, the court's determination turns on whether AngioDynamics has a reasonable apprehension of suit. "When the defendant's conduct, including its statements falls short of an express charge [or threat], one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) (quoting *Goodyear*, 824 F.3d at 955). AngioDynamics, therefore, must be able to demonstrate that it has a reasonable apprehension of imminent suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (this requirement of imminence reflects the mandate in Article III of the U.S. Constitution that the injury in fact be "concrete," and "actual or imminent, not conjectural or hypothetical"); *see Teva Pharms. v. Pfizer, Inc.*, 395 F.3d 1324, 1333

(Fed. Cir. 2005); *E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp.*, 383 F. Supp. 2d 642, 647 (D. Del. 2005).[1]

In the present case, AngioDynamics contends that the following facts, when viewed in their totality, create a reasonable apprehension of an infringement suit by Diomed: (1) Diomed's history of defending its patents, as demonstrated by its lawsuits against AngioDynamics and other companies for infringement of U.S. Patent No. 6,398,777 (the "'777patent"); (2) Diomed's lawsuit against Vascular Solutions, Inc. ("Vascular Solutions") and a former Diomed employee for trade secret misappropriation; and (3) a statement made by James Wylie ("Wylie"), Diomed's President and Chief Executive Officer, at a July 28, 2005 conference call set up to review the company's second quarter financial results.

After having considered these facts in the context of the relevant case law, the court is unpersuaded that AngioDynamics has demonstrated a reasonable apprehension of imminent suit. First, although AngioDynamics has shown that Diomed brings lawsuits for patent infringement to

---

[1] AngioDynamics maintains that the suit does not have to be imminent for a reasonable apprehension to exist and attempts to distinguish *Teva Pharms. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005), a recent case in which the Federal Circuit stated that an "actual controversy" exists between parties when there is a reasonable apprehension of *imminent* suit. 395 F.3d at 1333 (emphasis in original). AngioDynamics contends that *Teva* is distinguishable from the case at bar because it "involved a pharmaceutical drug application that was subject to compliance with provisions of the Hatch-Waxman Amendments to the Federal Food, Drug and Cosmetic Act." (D.I. 11, at 16.) According to AngioDynamics, "when the *Teva* Court stated that the suit must be imminent for 'reasonable apprehension,' it was addressing the unique situation that arises in Hatch-Waxman cases." (Id. at 17.) The court cannot agree with AngioDynamics' position. While it is true that the declaratory judgment subject matter jurisdiction issue in *Teva* arose as a result of a pharmaceutical drug application, that fact was not critical to the court's statement regarding imminency of suit. Indeed, the court set forth the imminency requirement for reasonable apprehension in the context of discussing the standard that it must apply to determine whether the suit was fit for judicial review. Moreover, the court did not, as AngioDynamics suggests, single out or distinguish Hatch-Waxman cases as "unique" during its discussion of the reasonable apprehension element of the two-part test.

protect its investments, it has not argued that Diomed has sued any party for infringement of either of the patents-in-suit. Thus, while relevant to the court's analysis, Diomed's lawsuits for infringement of the '777 patent do not lead the court to a finding of reasonable apprehension. *See DuPont Dow Elastomers, L.L.C. v. Green Tweed of Delaware*, 148 F. Supp. 2d 412, 415 (D. Del. 2001) (granting motion to dismiss declaratory judgment action based, in part, on the fact that the defendant did not have a pattern of suing on the patent-in-suit).

Likewise, Diomed's lawsuit against Vascular Solutions and a former Diomed employee for trade secret misappropriation does not lend credence to AngioDynamics' contention of a reasonable apprehension. To support its contention, AngioDynamics cites to *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002) and *Goodyear Tire & Rubber Co. v. Releasomers Inc.*, 824 F.2d 953 (Fed. Cir. 1987), two cases in which the Federal Circuit concluded that the plaintiff had a reasonable apprehension of suit, based partly on prior litigation involving trade secret misappropriation. What AngioDynamics fails to mention in its briefing, however, is the fact that the prior lawsuits for trade secret misappropriation in both *Vanguard* and *Goodyear* were lawsuits filed by the patentee against the declaratory judgment plaintiff. *See Vanguard*, 304 F.3d at 1255; *Goodyear*, 824 F.2d at 954. Here, in contrast, Diomed filed its trade misappropriation lawsuit against another company and one of its own former employees.

Additionally, the Federal Circuit did not just look at the prior lawsuit against the declaratory judgment plaintiffs in *Vanguard* and *Goodyear*. In *Vanguard*, the patentee also had informed the plaintiff's customers that the plaintiff was using patented technology without a license. *See Vanguard*, 304 F.3d at 1255. In the present case, AngioDynamics has neither alleged nor presented evidence regarding conduct on the part of Diomed directed to its customers. *See DuPont Dow*, 148

6

F. Supp. 2d at 415 (dismissing case for lack of declaratory judgment jurisdiction based, in part, on the absence of conduct interfering with the plaintiff's customer relations). In *Goodyear*, the patentee had told the plaintiff's representative that, when the patents-in-suit issued, the parties "would have to talk about infringement of the patents by Goodyear and possible licensing since Goodyear might be liable for past patent infringement," and that "the parties might wind up in Federal Court on these issues." *Goodyear*, 824 F.2d at 956 n.5. Here, as will be discussed below, Diomed did not directly discuss the newly issued patents with AngioDynamics, and did not use any language in statements about the patents that would give AngioDynamics a reasonable apprehension of suit. As such, Diomed's present lawsuit for trade secret misappropriation does not support of finding of reasonable apprehension, even when considered together with its lawsuits for infringement of the '777 patent.

Finally, AngioDynamics points to Wylie's statement during Diomed's second quarter 2005 earnings conference call. According to the amended complaint, Wylie stated the following:

> It is important to note that on July 26, Diomed announced that it had received a Notice of Allowance from the U.S. Patent and Trademark Office for a patent on Diomed's proprietary technique of using a marked introducer sheath to control the rate of withdrawal of an optical fiber during an intravenous laser procedure. Diomed introduced a marked introducing sheath especially configured for use in the proprietary technology in the fourth quarter of 2003. Currently, all EVLT procedure kits sold by Diomed contain a marked introducer sheath for use in the method covered by the allowed patent. Notably, both AngioDynamics and Vascular Solutions are offering marked introducer sheaths particularly for use in a technique *embraced by* the now allowed Diomed patent. Further, it is important to point out that this case is not connected to the U.S. Patent 6,398,777 infringement lawsuits for which I will now provide an update.

(D.I. 4 ¶ 22.) (emphasis added). The Federal Circuit, on many occasions, has addressed statements made by the patentee to either potential infringers or third parties. On the one hand, the Federal Circuit has stated that the test for finding a controversy "cannot turn on whether the parties used

polite terms in dealing with one another." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996). That is, "'in light of the subtleties in lawyer language,' *Arrowhead*, 846 F.2d at 736, the Federal Circuit has not required . . . 'magic words' to create a justiciable controversy." *DuPont Dow*, 148 F. Supp. 2d at 415. On the other hand, "the 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995). Indeed, the court has determined that a patentee does not create a reasonable apprehension when the patentee states directly to the potential infringer that its activities "fall within," "are covered by," and are "operations under" the patent. *Shell Oil v. Amoco*, 970 F.2d 885, 889 (Fed. Cir. 1992). Additionally, the Federal Circuit has held that a "patentee's statement that it intend[s] to enforce [its] patent [does] not . . . create a reasonable apprehension of suit." *Phillips Plastics*, 57 F.3d at 1054.

In the present case, the court is not convinced that Wylie's statement that AngioDynamics' products are "embraced by" the patents-in-suit was sufficient to give rise to a reasonable apprehension of suit. The statement was not made to AngioDynamics directly; rather, it was made during a conference call that Diomed utilized to announce and discuss its financial results with investors and other interested third parties.[2] Moreover, the statement is consistent with the types of

---

[2] According to AngioDynamics, Diomed "must have reasonably anticipated" that at least one representative of AngioDynamics would have participated in the conference call because it was "broad[ly] advertise[d]" in a Diomed press release inviting any "interested parties" to participate. (D.I. 11, at 8.) Thus, AngioDynamics asserts that Wylie's statement was made to the general industry, including its customers, and "broadcast specifically to [it]." (Id.) AngioDynamics; assertion is of no moment, however, because the court concludes that the statement "embraced by" is not one which would trigger a reasonable apprehension of suit. The court's conclusion is confirmed by the fact that AngioDynamics has neither alleged nor argued that the statement has interfered with its customer relations. *See, e.g.*, *Arrowhead*, 846 F.3d at

statements that the Federal Circuit has already determined do not create a reasonable apprehension on the part of the potential infringer. *See, e.g.*, *Shell*, 970 F.2d at 889; *Phillips Plastics*, 57 F.3d at 1054. Lastly, while AngioDynamics contends that the "embraced by" language used in the conference call was enough to create a reasonable apprehension on its part, it ignores the remainder of the call, during which Wylie, in response to a question from a caller, stated that he did not "want to get into a discussion on the call relative to infringement" and did not "want to comment" on what Diomed would do with the patent. (D.I. 9, Ex. A at 35:32-36:35.) These statements could not have created any apprehension of an imminent suit in AngioDynamics, much less an objectively reasonable apprehension.

Essentially, the facts of the present case boil down to the following: Diomed has sued AngioDynamics and other companies for infringement of a patent "not directly related to" either of the patents-in-suit. (See D.I. 11, at 14.) Diomed has also sued Vascular Solutions and one of its former employees for trade secret misappropriation involving the technology that is the subject of the patents-in-suit. Additionally, Diomed's ownership of the patents-in-suit may serve as a potential roadblock to AngioDynamics' sales of its endovenous laser treatment system. However, Diomed has not expressly threatened to sue AngioDynamics, and its statements regarding the patents-in-suit were made during a 2005 second quarter earnings conference call with investors and interested third parties. Moreover, during that conference call, Wylie refused to "comment on what we [Diomed] will potentially do or not do with this [recently allowed] patent." (D.I. 9, Ex. A at 35:32-36:35.) To conclude that Diomed's conduct provided AngioDynamics with a reasonable apprehension of suit

---

737 (noting that the patentee's conduct "produced an apprehension of litigation serious enough to cause a demand for indemnification from the potential infringer's customers); *Vanguard*, 304 F.3d at 1251 (discussing patentee's interference with potential infringer's customers).

would amount to a finding that "a reasonable apprehension of suit arises when a patentee does nothing more than exercise its lawful commercial prerogatives and, in so doing, puts a competitor in the position of having to choose between abandoning a particular business venture or bringing matters to a head by engaging in arguably infringing activity," which does not meet the objective test for determining declaratory justiciability. *Cygnus Therapeutics Sys. v. ALZA Corp.*, 92 F.3d 1153, 1160 (Fed. Cir. 1996); *see Nokia Corp. v. Interditigal Commc'ns*, No. Civ. A. 05-16-JJF, 2005 WL 3525696, at *3 (D. Del. Dec. 21, 2005). Accordingly, the court will dismiss AngioDynamics' complaint.[3]

Dated: September 7, 2006                    /s/ Gregory M. Sleet
                                            UNITED STATES DISTRICT JUDGE

---

[3] AngioDynamics has filed a Motion to Amend (D.I. 10) in order to correct the name of the defendant and state with more particularity its allegations with respect to unenforceability. "[A] court should deny leave to amend if the moving party is guilty of undue delay, bad faith, dilatory motive, prejudice, or his or her amended claims are futile." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Because AngioDynamics' second amended complaint would not cure the defect in the court's jurisdiction, allowing it to amend would be futile. Thus, the court will deny AngioDynamics' motion to amend.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANGIODYNAMICS, INC., | ) |
| Plaintiff, | ) |
| | ) C.A. No. 06-02 GMS |
| v. | ) |
| DIOMED HOLDINGS, INC., | ) |
| Defendant. | ) |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss (D.I. 8) is GRANTED.

2. The First Amended Complaint (D.I. 4) shall be dismissed without prejudice.

3. The plaintiff's Motion to Amend (D.I. 10) is DENIED.

Dated: September 7, 2006         /s/ Gregory M. Sleet
                                 UNITED STATES DISTRICT JUDGE